### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

H & L FARMS, LLC;                           *
SHAUN HARRIS and AMIE HARRIS,               *
                                            *
    Plaintiffs,                             *
                                            *       CIVIL ACTION FILE
v.                                          *
                                            *       NO. 4:21-CV-00134-CDL
SILICON RANCH CORPORATION;                  *
SR LUMPKIN, LLC; INFRASTRUCTURE             *
AND ENERGY ALTERNATIVES, INC.;              *
IEA CONSTRUCTORS, LLC; and,                 *
WESTWOOD PROFESSIONAL                       *
SERVICES, INC.,                             *
                                            *
    Defendants.                             *


### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH DEFENDANT IEA'S SUBPOENA TO PLAINTIFFS' LEAD COUNSEL[1]

Plaintiffs respectfully move this Court for a protective order and an order

quashing the subpoena served by defendant IEA upon Plaintiffs' lead counsel

James E. Butler, Jr. demanding his deposition.  Plaintiffs oppose the effort to

---

[1] This is not styled as an "emergency" motion nor is any particular urgency necessary because defendants SRC and IEA stipulated on May 4, 2022 that the filing of this motion will stay those defendants' attempt to depose Mr. Butler.  The subpoena served on Mr. Butler demanded his deposition on May 24, 2022, but he is unavailable that day and those defendants have stipulated to the rescheduling of the deposition should this Court deny this motion.  The parties have also stipulated that if the Court denies this motion then if necessary the requested deposition may be taken after the close of discovery on June 21, 2022.

depose their lead counsel. This motion explains why.  Such an attempt is

disfavored by the law, as will be discussed herein.  The Court should grant the

motion in order to avoid "delay, disruption of the case, harassment, and

unnecessary distractions into collateral matters."  *Shelton v. Am. Motors Corp.*, 805

F.2d 1323 (8ᵗʰ Cir. 1986).  The facts of this case prove why it should be

particularly disfavored here.

## Introduction

Plaintiffs filed this suit on August 6, 2021.  Discovery was supposed to close

March 7, 2022.  Doc. 27.  Plaintiffs were compelled to consent to an extension,

which was granted, with discovery now to close on June 21, 2022.  Doc. 32.  Now,

defendants SRC and IEA (who are working together under a joint defense

agreement)[2] demand that they be allowed to depose Plaintiffs' lead counsel despite

having failed to depose any of the witnesses with far more information about the

---

[2] SRC and IEA are operating together under some sort of joint defense agreement.
See Plaintiffs' Exhibit ("PX") 3 (5/20/21 letter from SRC General Counsel, last
paragraph). (Plaintiffs have been numbering their trial exhibits as depositions have
been taken; all Plaintiffs' exhibits referenced herein are attached hereto.)  SRC and
IEA filed a joint "disclosure of experts" on December 30, 2021, naming the same
experts for both the SRC and IEA defendants.  During the course of this dispute
IEA has fired two law firms – clearly for supposedly not being aggressive enough.

supposed subject matter of such deposition in the nine and one-half months since this lawsuit was filed.

On October 15, 2021 defendants SRC and IEA, identified as witnesses in their Initial Disclosures both Plaintiffs' lead counsel Mr. Butler and Mr. Joel Wooten, who was at the time this lawsuit commenced a partner in Plaintiffs' lead counsel law firm.[3]  The supposed reason for that identification was that Mr. Butler and Mr. Wooten had been members of "Kawikee Two LLC," which on November 20, 2020, sold to SRC the land on which the subject Lumpkin solar facility is located – the source of the pollution of the Harris' property, and Kawikee Two LLC had harvested timber on the land owned by SRC after that sale.[4]

When defendants SRC and IEA later insisted that they intended to depose Mr. Butler and Mr. Wooten,[5]  Plaintiffs' counsel advised defense counsel that such

---

[3] Defendant Westwood, represented by the Atlanta firm of Copeland, Stair, Kingma and Lovell LLP (formerly the firm of Tom Carlock, who is now retired) did not join in that tactic.

[4] The expert witnesses hired by defense counsel acting for SRC and IEA, from "Nutter & Associates, Inc." ("Nutter"), claimed in their expert report that such logging contributed to the erosion on to the Harris property and pollution of the lake.  Yet Nutter made no attempt to calculate the percentage of the sediment that came from any logging activity. Exhibit 1, Greco Dep. Excerpts, at 50/11-21. *See also Id.* at 48/4-10.

[5] Defendant Westwood did not participate in that tactic.

attempts were objectionable, and urged defendants not to send process servers with subpoenas but to just file their motion to take such depositions with the Court.

Notwithstanding that request, on April 20, 2022 defendant SRC sent a process server to serve a subpoena on Mr. Wooten personally, commanding that he be and appear for a deposition on May 25, 2022 – without making any attempt to either (a) ask Mr. Wooten to accept service, or (b) ask Mr. Wooten or other counsel in the case whether that date was acceptable to them.[6] Starting on April 28, 2022, defendant IEA also sent process servers to serve Mr. Butler on at least four known occasions, likewise without sharing the subpoena with Mr. Butler in advance and without making any attempt to ask Mr. Butler to accept service. The attempted service on Mr. Butler was clearly calculated for harassment.[7]

The harassment is, in a sense, understandable: SRC and IEA have no defense. Their duties were spelled out in writing early on during the dispute. On

---

[6] Mr. Wooten and Plaintiffs have agreed that the May 25, 2022 deposition of Mr. Wooten will go forward.

[7] Defendants SRC and IEA sent process servers to Mr. Butler's Savannah office at a time when defense counsel knew Mr. Butler was in his Columbus office, sitting across the table from defense counsel who were deposing a Plaintiffs' expert witness. On another occasion, said defendants sent a process server to Mr. Butler's Columbus office during defendants' deposition of Plaintiffs' expert witness Bob Behar. On a day when defense counsel knew Mr. Butler was at a hearing in federal court in Macon Georgia they sent process servers to both of his offices. Ultimately at 5:54 p.m. on that day, May 2, Mr. Butler told those defense lawyers he would accept service to stop the harassment.

4

March 9, 2021, before Kawikee Refuge LLC sold the property to Mr. and Mrs. Harris on March 16, 2021, SRC Senior Vice President Paul Russell represented to the prior owners that SRC and IE would "***ensure*** that your property and lakes are being adequately protected from ***any*** runoff," and that SRC had "reiterated" to IEA that its duty was "***ensuring no impact*** to your property," and that SRC would "*undertake to **ensure** no impact to your property as a result of **our** solar development.*"  Plaintiffs' Exhibit ("PX") 1 (3/9/21 email) (emphasis added).[8] That email came in response to a March 9, 2021 letter from the prior owners.  See PX 18.

At the deposition of SRC's President and CEO, Reagan Farr, on May 9, 2022, he admitted that there was no reason for Butler and Wooten to disbelieve SRC Senior Vice President Russell, or to assume that he was lying, and that Butler and Wooten were entitled to reasonably rely on SRC's promises in PX 1.  See Exhibit 2, Farr Dep. Excerpts at 40/22-45/20.

SRC's Senior Vice President Russell and General Counsel Johnson were not the only SRC executives who made promises to "ensure" no damage to the downstream property.  SRC's Senior Project Manager John Thompson, who was in charge of the Lumpkin solar facility for SRC, warned IEA about the risk, stating

---

[8] Merriam-Webster Dictionary defines "ensure" to mean "to make sure, certain, or safe: GUARANTEE."

"you have to *ensure* that anything" going into the downstream wetlands and stream was clean, and that "IEA is going to have to be very careful and diligent about what goes on with anything on that south side [adjoining the Harris property]."  PX 20 (3/11/21 Thompson email to IEA) (emphasis added). Thompson warned in another email of the need "to *ensure* the [erosion & control measures] *will eliminate any possibility of erosion* contaminating the [downstream] owner's site."[9]  PX 124 (3/11/21 Thompson email) (emphasis added).  SRC executive Michael Baute warned IEA and SRC employees "[t]his project is sited on highly erodible soils.  The plan should reflect the high risk."  PX 123 (3/15/21 email).  The joint IEA/Westwood "ESPC" plan for the Lumpkin solar facility development specifies:  "The escape of sediment from the site *shall be prevented* . . ."  See PX 21 (note "5") (emphasis added).

The supposed subject of the depositions of Mr. Wooten and Mr. Butler is the logging done by Kawikee Two LLC of timber on the SRC property after SRC bought it.  That was SRC's idea – to avoid paying more per acre, since SRC intended to remove all trees, stumps, and vegetation to make way for its solar panel

---

[9] The response of IEA's Project Manager James Allen to Thompson's warning was telling:  he in essence told SRC that IEA would add "additional control measures" if SRC would pay for them.  PX 20.  SRC's John Thompson testified that was the end of that discussion – obviously SRC was unwilling to pay more to fulfill its promises to "ensure no impact" and be a "good neighbor."

arrays.  Exhibit A, Affidavit of Joel O. Wooten, ¶¶13, 14.  The logging had to be finished within "120 days" after the closing on November 16, 2020 so that SRC and IEA could start their mass grading of 1,014 acres. *Id.* at ¶13.  SRC was in a rush to start that mass grading.  *Id.* at ¶29.  That mass grading commenced on March 26, 2021.  PX 27.  When the next rain came, so did the pollution of the Harris property, and their once beautiful lake turned orange. Doc. 1, Complaint at ¶¶40-44.)

Given that Mr. Wooten was in charge for Kawikee Two LLC of the sale to SRC and of the timber harvesting (Ex. A. at ¶¶6, 7, 16, 18, 21, 23, 29-31), and knows that the timber harvesting did not result in any complaints from SRC or IEA about erosion (*Id.* at ¶¶26-28) despite the fact both those defendants were actively on-site on the SRC property when the logging took place (*Id.* at ¶25), and knows that the logging did not cause any erosion on to the Harris property or discoloration of the lake (*Id.* at ¶¶32-36), defendants SRC and IEA may possibly have an excuse to depose Mr. Wooten.

But even deposing Mr. Wooten is suspect and dubious.  In their October 15, 2021 Initial Disclosures Plaintiffs identified persons who have information regarding the logging on SRC's own property.[10]  In the *five months since then*

---

[10] Those persons included Scott Badcock, who for 25 years was the manager of Kawikee Refuge and also looked after the Kawikee Two property before it was

defendants have not deposed any of those persons, nor have defendants deposed the forestry consultant for Kawikee Two LLC (AFM) who was in charge of the logging, nor have defendants deposed anyone for the timber buyer (Interfor, U.S. Inc.) or from the two logging companies that actually the logging, nor have defendants deposed any of the SRC and IEA employees who were on the SRC property when the logging was done.[11]

The SRC/IEA attempt to depose Mr. Butler is another matter, because those defendants know that Mr. Butler did not handle the Kawikee Two LLC transaction with SRC or the arrangements with a forestry consultant, timber buyer, and logging companies to timber SRC's own property after the sale to SRC.  SRC and IEA have made no attempt to state, and cannot state, any basis to depose Plaintiffs' lead counsel.   In addition, the SRC/IEA attempt to divert attention from their own guilt by trying to blame others based on the logging is plainly ridiculous.

*First, the timbering was done on SRC's own property.*  Both SRC and IEA were on the property when the timbering took place.  Ex. A (Wooten Aff.) at ¶25. They knew all about it, and SRC was actively involved in dealing with those who actually did the timbering.  *See, e.g.,* PX 98 (11/23/20 email exchange – Joel

---

sold to SRC on November 16, 2020; Stephen Burdette, the forestry consultant for Kawikee Two; Sib Fort of Lumpkin whose family's property adjoins both the Harris property and the SRC property.

[11] Nobody associated with Kawikee Two LLC did any logging.  Ex. A at ¶23.

Wooten and SRC's Connor Echols).  To state the obvious, if anything was being done on the SRC property which threatened erosion damaging to the downstream property both SRC and IEA had the duty to stop it.[12]  *See* Ex. A (Wooten Aff.) at ¶24 (referring to the "Access Agreement" signed by SRC President Reagan Farr).

*Second,* neither SRC and IEA nor the expert witnesses their lawyers hired (Nutter) have any evidence – photographs or witnesses – to even attempt to prove that the logging on SRC's property caused any erosion on to the Harris' property or discoloration of the lake.

*Third,* the suggestion that logging which leaves all stumps and vegetation except the harvested tree trunks somehow contributed to the erosion on to the Harris property is belied by common sense and by photographs showing how SRC and IEA grubbed all the stumps and mass graded 1,014 acres, removing most topsoil and leaving only bare dirt:

---

[12] Incredibly, in his deposition on May 9 SRC President Reagan Farr denied that SRC had any responsibility for anything that happened on its own property (Ex. 2 - Farr Dep. Excerpts at 90/1-91/12) despite the fact Farr conceded that SRC was the developer.  *Id. at* 41/13-22, 158/4-12.  Farr claimed that only IEA had any responsibility for anything bad that happened on SRC's own property (*Id*. at 129/19-130/2)– even though IEA as the contractor for SRC cleared and graded 1,014 acres not only with SRC's knowledge and permission but pursuant to a contract between SRC and IEA to do just that, which contract was signed by the same Reagan Farr to do just that, and even though SRC representatives were on the property at least weekly, making sure construction was rushed so SRC could fulfill its commitment to Walton EMC.  Ex. 3 - Thompson Dep. Excerpts at 32/22-33/6.



PX 14, drone photo by Shaun Harris taken 4/2/21.[13]

*Fourth,* despite Plaintiffs' having identified and provided Affidavits and

expert reports from two experts in the field of forestry on November 30, 2021,[14]

who adamantly insisted the logging on SRC's property caused no pollution of the

Harris property, when SRC/IEA identified their expert witnesses on December 30,

---

[13] The SRC/IEA claims about logging on the SRC property are also belied by this fact: in the winter of 2019-2020 the Fort family clearcut over one-third of their property, which lies west of the Harris property and south of the SRC property – in the corner of those tracts.  Through the clear-cut area flows the stream that leaves the SRC property and after traversing the clearcut portion of the Fort property goes on to the Harris property and in to the lake.  There are no witnesses and no photographs to suggest that clear-cutting, which preceded any logging of the SRC property by a year, caused any erosion on to the Harris property or discoloration of the lake.

[14] Plaintiffs' forestry experts are John Britt, a registered forester and formerly Lead Forester for Mead Corporation, and Mr. Shaun Harris himself, who has been in the forestry industry since he was 16 years old (he is now 60).

2021 they named no forestry experts – despite the fact that the testifying firm,
Nutter, which defense counsel for those defendants hired, has a registered forester
on staff.

   *Fifth,* despite the fact that actual engineering consulting firms (the firm
defense counsel hired – Nutter – has no professional engineers on its staff) have
evaluated the condition of the SRC development and erosion therefrom[15] and both
SRC and IEA have engineers on their staffs, SRC and IEA did not name a single
person from any of those firms or from their own staffs as an expert witness for
this case.  (Westwood, by contrast, named as expert witnesses three professional
engineers employed by Westwood who were active with respect to the SRC
development.)

   *Sixth,* neither SRC nor IEA have produced a single document wherein any
engineer employed by SRC or IEA attributed any of the pollution of the Harris
property to the logging on the SRC property.

---

[15] Those firms include One Environmental, which did weekly inspections of the
SRC development for 18 weeks, until terminated, and wrote lengthy weekly
inspection reports devastating to SRC and IEA; S&ME, Inc., a national
engineering firm, whose report has never been produced; and Westwood itself.  In
one written memo, One Environmental's professional engineer John Caudill
referred to the SRC development as a "muddy mess." PX 67.

*Seventh*, in all those documents created by SRC executives themselves about "ensuring no impact" etc. (PX 1, 3, 20, 124, 123) not one word appears wherein they attributed any erosion, or possible erosion, to the logging that had already been completed.  Only the SRC/IEA testifiers from Nutter & Associates hired not by SRC or IEA but by defense counsel have tried to float that canard.

Despite all that, SRC/IEA insist on a 'right' to depose Plaintiffs' lead counsel, whom those defendants know had nothing to do with any logging.  To reiterate, SRC and IEA have made no attempt to state, and cannot state, any basis to depose Plaintiffs' lead counsel.[16]

---

[16] In addition to serving subpoenas upon Mr. Wooten and Mr. Butler for their depositions, SRC/IEA served notices of depositions upon Kawikee Refuge LLC and Kawikee Two LLC.  Thus do defendants apparently seek to depose Messrs. Butler and Wooten a total of four times.  ("Kawikee Refuge LLC" and "Kawikee Two LLC" have no employees, and only two members – Messrs. Wooten and Butler.) That replicates those defendants' attempt to depose Shaun Harris twice, individually and as the designee of the LLC he and his wife Amie own, H&L Farms LLC.  Plaintiffs' objected to that attempt to depose Mr. Harris twice, at the time of that attempt on March 29, 2022, and defendants have not challenged that objection.  (Defendants deposed Mr. Harris for a bit over four hours, asking whatever questions they chose to ask.)  Likewise, Plaintiffs are filing an objection to the notices of deposition whereby defendants presumably seek to depose Messrs. Butler and Wooten a total of four times.  That issue is not before the Court on this motion, however; if defendants disagree with Plaintiffs' objection, they can file a motion to seek multiple depositions of Messrs. Butler and Wooten.  At the scheduled May 25, 2022 deposition of Mr. Wooten defendants may ask him whatever questions they choose, subject to objections and Mr. Wooten's willingness to answer.  (The notices of depositions sent to Kawikee Refuge LLC and Kawikee Two LLC command that a deponent be prepared to address 17 and 22 "topics" respectfully.  The "topics" mimic subpoenas for the production of

## Legal Standard

Federal law requires the party seeking a protective order to establish "good cause" for why a protective order should be entered.  Fed. R. Civ. P. 26(c).  While protective orders prohibiting a deposition "are rarely granted absent extraordinary circumstances," the deposition of a party's counsel "calls for a special scrutiny of this general rule."  *W. Peninsular Title Co. v. Palm Beach Cty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990).  Courts recognize that "countenancing unbridled depositions of attorneys constitutes an invitation to delay, disruption of the case, harassment, and perhaps disqualification of the attorney."  *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D. N.C. Aug. 12, 1987).

The Eighth Circuit set forth factors to evaluate in determining whether the requesting party may take the deposition of the responding party's counsel in *Shelton v. American Motors Corporation*.  805 F.2d 1323 (8th Co. 1986).  While counsel is not "absolutely immune from being deposed," there are three factors to consider.  *Shelton*, 805 F.2d at 1327.  A party seeking to take the deposition of opposing counsel should show that "(1) *no other means exist* to obtain the

---

documents SRC/IEA served on those two LLCs on November 12, 2021.  On December 15, 2021, the two LLCs objected to those subpoenas for the production of documents (while producing all responsive, relevant documents).  In the six months since, neither SRC nor IEA has challenged those objections.)

information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) *the information is crucial to the preparation of the case*." *Id*. at 1327 (emphasis added). SRC and IEA have not attempted to satisfy any of those factors, and cannot do so.

The Eleventh Circuit has yet to formally adopt the *Shelton* approach, as district courts throughout the Eleventh Circuit use a mix of the *Shelton* approach and the more "flexible approach" formulated by the Second Circuit in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2nd Cir. 2003). *See Bank of America, N.A. v. Georgia Farm Bureau Mut. Ins. Co.*, 2014 WL 4851853 at *3 (M.D. Ga. Sept. 29, 2014). By not formally adopting the *Shelton* rule, courts in the Eleventh Circuit "focus [their] analyses on weighing and balancing [the moving party's] *need for* the information sought with [the subpoenaed party's interests] in its attorney-client relationship." *Bank of America*, 2014 WL 4851853, at *3 (emphasis added).

## Argument

I.     **The information sought by defendants is readily available from other witnesses and *has been available to defendants for at least seven months*.**

14

Defendants SRC and IEA know very well the witnesses who were actively involved in the logging operations - Plaintiffs listed some of them over six months ago in Plaintiffs' initial disclosures; those defendants employ other such witnesses; and those defendants know very well who the forestry consultant was for Kawikee Two LLC – AFM, and who bought the timber – Interfor, and what logging companies Interfor hired to actually harvest the timber.  Indeed, defendants subpoenaed documents from AFM six and one-half months ago (10/29/21) and from Interfor over five months ago (12/6/21).  Yet defendants have made no effort to depose any of those witnesses.  Defendants will get to depose Mr. Wooten, who knows less about the actual logging than any of the aforesaid witnesses, including the SRC and IEA employees who were on the SRC development site when the logging took place and were rushing the loggers to get off the SRC property so SRC and IEA could commence their mass grading.

The "deposition of an attorney is both necessary and appropriate" when the attorney is the person "with the best information concerning non-privileged matters relevant to a lawsuit." *N.F.A. Corp.*, 117 F.R.D. at 85 n.2.  Here, Plaintiffs' counsel James E. Butler, Jr. is clearly and obviously not the person "with the best information." *Id*.  All of the aforementioned witnesses have more information – and defendants SRC and IEA absolutely know that.  If anyone associated with Kawikee Two LLC and Kawikee Refuge LLC has any information 'needed' by

15

those defendants it would be Mr. Wooten, who was in direct contact and correspondence with defendant SRC's Connor Echols, Manager of Project Development for Silicon Ranch Corporation.  Correspondence between Mr. Wooten and Connor Echols concerned the logging and timbering operations that took place on the Silicon Ranch Corporation property after sale of the property to defendant SRC.

For these reasons, the deposition of Mr. Butler for testimony regarding logging and timbering would be "unnecessary and burdensome" for Plaintiffs.  *See McDill v. Board of Pardons and Paroles*, 2021 WL 6883424 at *3 (M.D. Ala. June 24, 2021).

## II.    The information sought is privileged by attorney-client privilege and/or the work-product doctrine.

To protect attorney's work-product as set forth in Rule 26(b)(3), courts "should exercise great care before permitting the deposition of an attorney inasmuch as even seemingly innocent questions, such as the existence or nonexistence of documents or queries concerning which documents counsel has selected in preparing a witness for deposition, may implicate opinion work product."  *N.F.A. Corp.* 117 F.R.D. at 86–87.

The *Shelton* Court explained that in preparation of a client's case, an attorney "assembles information, sifts through what the lawyer considers to be relevant facts, prepares 'legal theories and plans strategy, without undue and needless interference.'" *Shelton*, 805 F.2d at 1328, *quoting Hickman v. Taylor*, 329 U.S. at 511 (1947). The attorney work-product doctrine not only protects "from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Id*. To force Mr. Butler to discuss the facts of this case likely "would reveal counsel's mental impressions, [thought processes, opinions, and legal theories] which are protected as work product." *Id*. at 1329.

Similarly, attorney-client privilege is at risk. Mr. Butler has served as counsel to the Plaintiffs during the events that made the filing of this lawsuit necessary. Mr. Butler has also provided legal advice to Plaintiffs in anticipation of litigation, regarding legal theories, strategies, and other matters.[17] *See McDill*, 2021 WL 6883424 at *3 (The Court concluded the weighing of risk of deposing party's counsel tips against the requesting party's subpoena.). Allowing the deposition of Plaintiffs' lead counsel in the present case would likely result in compromising

---

[17] See Ex. 4 Shaun Harris Dep. Excerpts at 42/9-24. (The fact SRC was developing a solar facility on the adjoining property was well known in Stewart County, having been publicized by SRC press releases, and articles in the local newspaper and reports on Columbus television stations.)

Plaintiffs' work product, mental impressions, legal theories, and the destruction of attorney-client privilege.

### III.   Allowing the deposition of Plaintiffs' lead counsel would cause significant harm to both the clients and the Court system.

Requiring counsel to testify as a witness "has long been discouraged" and "detracts from the quality of client representation." *Shelton*, 805 F.2d at 1327. Allowing the deposition of Plaintiffs' lead counsel would result in undue hardship and prejudice to Plaintiffs. "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Shelton*, 805 F.2d at 1327. To protect Plaintiffs, their lead counsel must be "free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Id*.

### Conclusion

Plaintiffs respectfully move this Court for an order quashing defendant IEA's subpoena to Plaintiffs' lead counsel and for a protective order prohibiting the discovery from being had. Defendant IEA's unreasonable subpoenas were meant to annoy and harass Plaintiffs and Plaintiffs' counsel.

Respectfully submitted, this 16th day of May, 2022.

> */s/ James E. Butler, Jr.*
> JAMES E. BUTLER, JR.
> Georgia Bar No. 099625
> jim@butlerprather.com
> DANIEL E. PHILYAW
> Georgia Bar No. 877765
> dan@butlerprather.com
> CAROLINE E. WALKER
> Georgia Bar No. 511349
> caroline@butlerprather.com
> BUTLER PRATHER LLP
> 105 13th Street
> Post Office Box 2766
> Columbus, GA 31902
> T:  (706) 322-1990 F:  (706) 323-2962
>
> C. FREDERICK OVERBY
> Georgia Bar No. 555845
> Fredoverby@overbylaw.com
> OVERBY LAW OFFICE, P.C.
> Post Office Box 1975
> Columbus, Ga 31902
> T:  (706) 327-0300 F:  (706) 320-0053
>
> C. COOPER KNOWLES
> Georgia Bar No. 426699
> cknowles@cckfirm.com
> LAW OFFICE OF C. COOPER
> KNOWLES, LLC
> 750 Hammond Drive
> Building 12, Suite 200
> Sandy Springs, GA 30328
> T:  (770) 668-2081
>
> **ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATION OF GOOD FAITH</u>

Pursuant to Rule 26(c)(1), Plaintiffs hereby certify that Plaintiffs have in good faith conferred and attempted to confer with Defendants in an effort to resolve the dispute without court action.

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on May 16, 2022, I filed the foregoing **Plaintiffs' Motion For Protective Order And Motion To Quash Defendant IEA's Subpoena To Plaintiffs' Lead Counsel** with the Clerk of Court using the CM/ECF system, which will automatically notify counsel of record.

*/s/ James E. Butler, Jr.*