**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| H&L FARMS, LLC, | * | |
| SHAUN HARRIS and AMIE HARRIS, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CIVIL ACTION FILE |
| v. | * | |
| | * | NO. 4:21-CV-00134-CDL |
| SILICON RANCH CORPORATION, et al.; | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY**
**JAMES E. BUTLER, JR. AS COUNSEL FOR PLAINTIFFS**

Martin A. Shelton
Ryan Wilhelm
Keith M. Kodosky
LEWIS BRISBOIS BISGAARD & SMITH LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
404.476.2009
Martin.Shelton@lewisbrisbois.com
Ryan.Wilhelm@lewisbrisbois.com
Keith.Kodosky@lewisbrisbois.com
*Attorneys for IEA Constructors, LLC and*
*Infrastructure and Energy Alternatives, Inc.*


Alycen A. Moss
Danielle C. Le Jeune
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, GA  30309
404.572.2052
amoss@cozen.com
dlejeune@cozen.com
*Attorneys for Silicon Ranch Corporation*
*and SR Lumpkin, LLC*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 3

    A.   Butler's Ownership and Personal Involvement With the Properties at Issue in This Lawsuit ............................................................................... 3

    B.   Butler's Involvement with the Lake at Issue in This Lawsuit ................................ 4

    C.   Butler's Involvement with SRC's Purchase of Kawikee Two Property................. 5

    D.   Butler's Involvement With H&L Farms Purchase of the Kawikee Refuge Property................................................................................. 7

    E.   Butler's Involvement with Issues Related to the Solar Facility............................ 9

III.  LEGAL STANDARD......................................................................................... 10

IV.  ARGUMENT AND CITATION OF AUTHORITY .......................................... 11

    A.   Butler Should Be Disqualified Because He Is A Necessary Witness Under Georgia Rule of Professional Conduct 3.7, and the Exceptions in the Rule Are Not Applicable. ...................................................... 11

        1.   Butler Is a Necessary Witness................................................................. 12

        2.   The Exceptions to Rule 3.7 Are Not Applicable. .................................... 15

            a.   Butler's Testimony Relates to Contested Issues........................... 15

            b.   Butler's Testimony Will Not Relate to the Nature or Value of Legal Services............................................................ 16

            c.   There Is No Substantial Hardship on Plaintiffs. ........................... 16

    B.   Butler Should Be Disqualified Because He Presents An "Unsworn Witness" Problem. ........................................................................... 17

    C.   Butler Should Be Disqualified Because He Has A Conflict of Interest. .............. 18

V.  CONCLUSION.................................................................................................. 20

COME NOW Defendants, IEA Constructors, LLC ("IEAC") and Infrastructure and Energy Alternatives, Inc. ("IEA") (jointly, the "IEAC Defendants"), and Silicon Ranch Corporation ("SRC") and SR Lumpkin, LLC ("SR Lumpkin") (jointly, the "SRC Defendants") (collectively, "Defendants"), by counsel, and state the following in support of their Motion to Disqualify James E. Butler, Jr. ("Butler") as Counsel for Plaintiffs:

## I.     **INTRODUCTION**

This case involves 2 adjacent properties located in Stewart County, Georgia.  The more southern tract of land is known as Kawikee Refuge, which is now owned by Plaintiff H&L Farms, LLC ("H&L Farms").  Kawikee Refuge, LLC ("Refuge"), a closely held 2-member LLC of which Butler is the Managing Member, sold the Kawikee Refuge to H&L Farms.  The more northern tract of land is known as Kawikee Two, which is now owned by Defendant SRC.  Kawikee Two, LLC ("Two"), another closely held 2-member LLC of which Butler is the Managing Member, sold the Kawikee Two property to SRC.

In this lawsuit, Plaintiffs, H&L Farms, Shaun Harris ("Harris"), and Amie Harris (collectively, "Plaintiffs"), seek to recover for alleged damage to the Kawikee Refuge property – primarily involving the temporary discoloration of a lake on the property – which they claim is caused by the construction of a solar facility (the "Solar Facility") on SRC's adjoining upstream property.[1]  Plaintiffs' counsel, Butler, has specific and unique personal knowledge regarding the design of the lake at issue, the sale of the Kawikee Refuge property to H&L Farms, the sale of the Kawikee Two property to Defendant SRC, and the timbering performed by Two and/or its representatives that contributed to the discoloration of the Kawikee Refuge lake.  Additionally, Butler personally complained to SRC regarding his concerns about the work being performed at

---

[1] See [Dkt. 27, Scheduling Order], at 4.

the Solar Facility prior to both the sale of the Kawikee Refuge property to H&L Farms and the commencement of Butler's representation of Plaintiffs in the present case. Due to Butler's personal involvement and knowledge in this matter, there can be no question that he has unique personal knowledge and information relevant, material, and unobtainable elsewhere.[2]

More specifically, Butler, individually, owned the Kawikee Refuge property until he and his law partners formed Refuge, which then became the owner of the property. Butler personally designed the lake on the Kawikee Refuge property, and he has unique historical knowledge regarding the design, build, permitting, use, and prior discoloration of the lake.

Butler alone handled the sale of the Kawikee Refuge property to H&L Farms, and all of the negotiations and communications with Plaintiffs were with Butler. Additionally, it appears Butler may have sold other surrounding property to Harris at a discount, and he alone has knowledge regarding this subsequent land sale and its potential connection to this lawsuit.

Furthermore, only 1 week before the property was sold to H&L Farms, Butler wrote a letter to SRC about his concerns regarding the construction of the Solar Facility. Only Butler has knowledge regarding those concerns and whether they were relayed to Plaintiffs prior to the sale of the Kawikee Refuge property.

Butler also has unique and specific knowledge regarding the sale of the Kawikee Two property to SRC. Additionally, Two and/or its representatives performed timbering on the Kawikee Two property prior to the construction of the Solar Facility, and that timbering (Butler personally received 75% of the proceeds of which totaled nearly half of a million dollars) caused

---

[2] Defendants have sought to depose Butler, who unquestionably possesses relevant and material information, as established by his involvement as either an actor in or witness of the events forming the basis of the Plaintiffs' claims; however, Butler has refused to be deposed and has filed a motion to quash IEAC's subpoena and for a protective order, which motion remains pending. See, e.g., [Dkt. 1, Complaint for Damages], at ¶¶ 51-52, and Complaint Exhibit 9; see also [Dkt. 43], Plaintiffs' Motion for Protective Order and Motion to Quash Subpoena to Plaintiffs' Lead Counsel.

damage to H&L Farms' property. Butler has unique knowledge regarding the timbering and the damage it caused to H&L Farms' property. He also has unique knowledge regarding whether Two has sought recovery from the contractors that performed the timbering and caused damage to H&L Farms' property.

Defendants move to disqualify Butler on three grounds: (1) Butler is a "necessary witness" pursuant to Rule 3.7(a) of the Georgia Rules of Professional Conduct; (2) Butler is an "unsworn witness" regardless of whether he testifies at trial; and (3) Butler's role as Managing Member of Two, which has refused to seek an insurance recovery from Two's contractors for Plaintiffs' benefit, creates a conflict of interest in representing Plaintiffs.

## II.   STATEMENT OF FACTS

### A.   Butler's Ownership and Personal Involvement With the Properties at Issue in This Lawsuit

Butler personally bought the initial portion of the land that encompassed Kawikee Refuge in 1989.[3]   In 2002, two of Butler's law partners, Wooten and George Fryhofer ("Fryhofer"), "bought an interest in that property" and together, the three partners formed Refuge.[4]   A few years later, Butler, Wooten, and Fryhofer bought three additional neighboring parcels and formed Two.[5] Two owned approximately 2,200 acres lying north of and adjoining the Kawikee Refuge land.[6]

On September 19, 2012, Two and Refuge took out a $6.7 million loan secured by deeds to the properties.[7] Butler and Wooten were ***personal guarantors*** of the loan secured by the properties.[8]

---

[3] Exhibit A, 05/25/22 Wooten Dep. Excerpts, at 15:15-24.
[4] Id.; see also id. at 22:1-9.
[5] Id.; at 16:1-18:16.
[6] Id.
[7] Exhibit B, 09/19/2012 Deed to Secure Debt and Security Agreement.
[8] Id.

Beginning in 2014 or 2015, Two and Refuge began marketing parts of the Kawikee Two and Kawikee Refuge properties for sale, but those marketing efforts were largely unsuccessful.[9] The $6.7 million loan had its original September 15, 2017 maturity date extended first to December 15, 2017 and then subsequently to November 15, 2020, and later, to February 15, 2021.[10]   Butler appears to have been under some amount of financial pressure to sell all or some portions of the adjoining Kawikee Two and Kawikee Refuge properties.  Only Butler knows how he planned to satisfy his $6.7 million loan guaranty had the SRC and/or H&L Farms sales not occurred and his guaranty had been called upon.

Fryhofer sold his interest in Two to Butler in November 2020, and after that, Butler and Wooten were the only members of Two and Refuge.[11]   At that time, Butler became the Managing Member of both Two and Refuge.[12]

## B.   Butler's Involvement with the Lake at Issue in This Lawsuit

Butler "wanted to put a lake [on Kawikee Refuge]" since the mid to late nineties.[13]   In 2008, Butler (and 2 other individuals that were unrelated to the Kawikee Refuge property) designed the lake at issue in this lawsuit.[14]   Contrary to Plaintiffs' allegations in the Complaint, the lake was never intended to be a recreational fishing lake, but instead, was permitted as a 25-acre irrigation lake.[15]   It is unclear whether it was ever used for irrigation.  Butler has unique and specified knowledge regarding the design, build, permitting, and historical use of the lake before it was sold to H&L Farms.

---

[9] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 60:6-62:17
[10] Exhibit C, 11/06/2020 Modification and Extension Agreement.
[11] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 19:6-24; 22:10-21; 26:3-12.
[12] Id. at 22:10-23:2.
[13] Id. at 51:19-25.
[14] Id. at 48:6-15; Exhibit D, 3/9/2021 letter from J. Butler to C. Echols.
[15] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 53:2-10; Exhibit E, 02/19/07 letter from D. Pope to T. Fischer; Exhibit F, 05/01/07 letter from T. Fischer to C. Snipes.

Furthermore, discovery has revealed that the lake experienced temporary discoloration issues in the past following "massive rainstorm[s]" or whenever "remnants of a hurricane [came] through."[16]   Butler also has specified knowledge regarding the historical discoloration of the lake.

### C.      Butler's Involvement with SRC's Purchase of Kawikee Two Property

In February 2018, SRC inquired about buying the Kawikee Two land.[17]   At all times during the negotiations between SRC and Two, the only members of Two were Butler and Wooten.[18] SRC wanted to buy a portion of the property owned by Two for the purpose of developing a solar power facility.[19]   SRC ultimately purchased approximately 1,425.74 acres from Two, with the final land purchase closing on November 16, 2020.[20]

In November 2020, SRC and Two also entered into an "Access Agreement" pursuant to which Two and its contractors, agents and representatives, were granted access to Kawikee Two to conduct their timber activities.[21]   The Access Agreement contains indemnification and insurance provisions potentially providing coverage for Plaintiffs' claims.[22]

In advance of the sale to SRC, on October 14, 2020, Two entered into a "Timberland Services Agreement" with non-party American Forest Management ("AFM") pursuant to which AFM was to handle and supervise the sale of the timber on the property Two was selling to SRC.[23] On October 30, 2020, Two entered into a pair of timber cutting agreements with non-parties

---

[16] Exhibit F, 03/09/21 letter from J. Butler to C. Echols; Exh. A, 05/25/22 Wooten Dep. Excerpts, at 45:1-25. Notably, Butler, representing Plaintiffs, Two, and Refuge at Wooten's deposition, interrupted Wooten's description of the historical lake discoloration issues for "a bathroom break." Exh. A, 05/25/22 Wooten Dep. Excerpts, at 31:19-33:5 & 46:1-3.

[17] See [Dkt. 43] Plaintiffs' Motion for Protective Order and Motion to Quash Subpoena to Plaintiffs' Lead Counsel, Exhibit A, Affidavit of Joel O. Wooten ("Wooten Aff.")], ¶¶ 2-4.

[18] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 19:14-24 & 26:3-12.

[19] Wooten Aff. at ¶ 5.

[20] Exhibit G, 11/16/20 Closing Statement.

[21] Exhibit H, November 2020 Access Agreement.

[22] Id., November 2020 Access Agreement (Section 3.c. (insurance); Section 3.e. ("Neither [Two] nor any [Two's] Representative shall damage any fences, roads, firebreaks, fields, ditches, bridges or any other improvements . . . owned or held by any . . . third party."); Section 4 ("Indemnification")).

[23] Exhibit I, 10/14/20 Timberland Services Agreement.

Interfor U.S. Inc. ("Interfor") and Wayback Forestry, Inc. ("Wayback") pursuant to which the loggers were to cut, haul, and sell the timber harvested from Kawikee Two.[24]

Proceeds of the timber sale totaling nearly half of a million dollars were paid to Two, with Butler personally receiving 75% of the timber harvest proceeds and Wooten receiving the remaining 25%.[25]  Butler himself described the timbering arrangement as a "[h]elluva deal."[26]

The agreements between Two and the logging companies each contained provisions requiring the loggers to use best management practices and to meet all forestry association standards.[27]  Each agreement also included indemnification and insurance provisions to protect against claims involving, *inter alia*, any downstream damage caused to adjoining landowners' property by the logging.[28]

In fact, AFM, Interfor, and Wayback did not use best management practices or meet all forestry association standards.  The timbering operations were initiated by Two and/or its representatives on November 16, 2020, and harvesting was completed on March 15, 2021.[29]

---

[24] Exhibit J, 10/30/20 Timber Cutting Agmt. between Two and Interfor; Exhibit J, 10/30/20 Timber Cutting Agmt. between Two and Wayback; see also [Dkt. 43, Plaintiff's Motion, Exhibit A, Wooten Aff.], ¶¶ 17-18, 21-23.

[25] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 99:7-20; 108:23-109:12.

[26] Exhibit K, 02/12/21 J. Butler email to T. Perkins.

[27] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 28:10-30:22; Exh. I, 10/14/20 Timberland Services Agreement, at p. 2 ("Duties of AFM"); Exh. J, 10/30/20 Timber Cutting Agmt. between Two and Interfor, at Section 1.7; Exhibit J, 10/30/20 Timber Cutting Agmt. between Two and Wayback, at Section 1.7; Exh. H, November 2020 Access Agreement, Section 3.b., Section 10.

[28] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 30:23-35:2; 86:18-87:15; 88:2-90:23; 259:13-20; Exh. J, 10/30/20 Timber Cutting Agmt. between Two and Interfor (Section 3.1:  "[Interfor] shall hold harmless, defend and indemnify [Two], [Two's] Consultant, and their respective agents … from and against any and all claims, demands, actions, damages, liabilities, losses and expenses of any kind (including, without limitation, attorneys' fees and other professional fees) in connection with … **property damage** or other loss, injury or damage of any kind **that may in any way arise from or be related to** the negligence or willful misconduct or any other act or omission of [Interfor] or any of [Interfor's] employees, contractors, subcontractors or agents in connection with harvesting of the Timber or any operations or activities relating thereto, including but not limited to **any claim or liability arising from damage to any adjoining landowner's property**." (emphasis added); Section 3.2:  "All insurance policies maintained by [Interfor] hereunder shall be primary to any insurance available to [Two] or [Two's] Consultant."); Exh. J, 10/30/20 Timber Cutting Agreement (Section 3.1 & Section 3.2 (same)); Exh. G, 10/14/20 Timberland Services Agreement ("**Insurance Coverage**" and "**Indemnification**").

[29] See Exhibit L, Nutter + Associates Environmental Consultants Technical Memorandum No. 21054.01 dated December 30, 2021, p. 8.

6

"During these silvicultural operations, nearly 100% vegetation (trees and any understory) removal occurred and significant areas of exposed soils were evident."[30]  "By February 20, 2021, a majority of the apparent upland portions of the Lumpkin Solar facility had been cut and contained exposed soils.  Throughout this time period, elevated turbidity is evident in Kawikee Lake, especially in the headwaters."[31]  Additionally, discovery revealed that a *different* adjoining landowner complained about excessive mud issues caused by the timber harvesting activity before H&L Farms closed on its purchase from Two.[32]

The IEA and SRC Defendants have filed Notices of Non-Parties Potentially at Fault asserting that the fault of Two, AFM, Interfor and Wayback should be considered by a jury. However, Butler, as Managing Member of Two, has not submitted any claims against the timber harvesters or their insurers.

### D.     Butler's Involvement With H&L Farms' Purchase of the Kawikee Refuge Property

Butler and Plaintiff Harris "had known each other for a long time."[33]  After hearing that the Kawikee Two land had sold, Harris "contacted Butler personally to see if he was interested in selling the Kawikee Refuge property."[34]  The Kawikee Refuge property was sold to H&L Farms on March 16, 2021.  In his capacity as the Managing Member of Refuge, Butler signed the Real Estate Sales Contract between Refuge and Shaun Harris,[35] the Limited Warranty Deed between

---

[30] Id.

[31] Id.

[32] Exhibit M, 02/12/21 C. Echols email to J. Wooten and G.S. Burdette ("Mr. Viera called me this afternoon and complained that the logging trucks going in and out of the road in this wet weather are tearing the road up.  It's to the point now, he says, that FedEx and UPS have refused to come down the road to his house.  He's got a delivery coming from Lowe's next week that he's concerned about."); Exhibit N, 02/22/21 G.S. Burdette email to C. Echols (referencing logger's grading).

[33] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 84:23-86:3.

[34] Id. at 63:1-8.

[35] Exhibit O, Real Estate Sales Contract dated 1/19/2021.

Refuge and H&L Farms,[36] the Quitclaim Deed between Refuge and H&L Farms;[37] and the Certification in the Settlement Statement.[38]  Butler also promised to "help [Harris]" if Harris "had any problems with the Silicon Ranch development[.]"[39]  Only Butler knows what this promise entailed.

   ***Butler handled all of the negotiations with H&L Farms***.  In a March 11, 2021 email, Butler himself directed Jimmy Brazier (who was assisting with the closing on the Kawikee Refuge property) that "ALL communications about this are to be with me.  You can copy [Wooten] on emails, but I will be the one on phone conversations and will be copied on any emails."[40]  In fact, Butler was so involved in the sale, that he refers to the Kawikee Refuge property as being sold by "Wooten and I," as opposed to it being sold by the corporate entity, Kawikee Refuge, LLC.[41]

   Wooten, the other member of Refuge, never spoke with Plaintiffs regarding the sale of the Kawikee Refuge property to H&L Farms.[42]  He was not present during any conversation between Butler and Harris regarding the sale of Kawikee Refuge.[43]  Thus, he does not know whether Butler and Harris ever discussed the historical discoloration of the lake that Wooten himself personally observed *as many as six (6) times in ten (10) years*,[44] whether Butler ever discussed any of his concerns regarding the work being done at the SRC site with Plaintiffs, or whether Butler ever informed Plaintiffs of the indemnification and insurance provisions contained in the timbering

---

[36] Exhibit P, Limited Warranty Deed.
[37] Exhibit Q, Quitclaim Deed.
[38] Exhibit R, 03/16/21 Settlement Statement.
[39] Exhibit S, Plaintiffs' Responses to Defendant Silicon Ranch Corporation's First Interrogatories, Interrogatory No. 7.
[40] Exhibit T, 04/11/2021 email from J. Butler to J. Brazier (emphasis in original).
[41] Exhibit U, R. Farr Dep. Excerpts, 48:14-15.
[42] Exh. A, 05/25/22 Wooten Dep. Excerpts, 63:9-13.
[43] Id. at 225:15-227:21.
[44] Id. at 45:1-46:23.

companies' contracts or the Access Agreement that could potentially apply to H&L Farms' property damage claims.[45]  Only Butler would know about these communications.

Moreover, as a result of a non-party's subpoena response, Defendants recently have received emails exchanged between Harris and Butler revealing the subsequent sale of other portions of Kawikee Two's property to Harris *at a discounted price*, which were not produced or logged by Plaintiffs in response to Defendants' discovery requests.[46]  Only Butler knows whether the discount given to Harris was tied to this lawsuit, the personal guaranty on the loan, and/or H&L Farms' prior purchase from Kawikee Refuge.

     **E.**     **Butler's Involvement with Issues Related to the Solar Facility**

On or around February 25, 2021, construction commenced on the Solar Facility.[47]  On March 9, 2021 (which was only one week prior to selling the Kawikee Refuge property to H&L Farms), Butler wrote a letter to Connor Echols at SRC.[48]

In the letter, Butler stated he had designed the lake at issue in this lawsuit.  He also stated he had been "watching the extensive clearing that Silicon Ranch has been doing on the southwest portion of the tract next to Moreland Adams Road" and he saw SRC was "moving toward the gas line area that is north of Kawikee Refuge and immediately north of the new lake."  Butler said he saw SRC was "putting up silt fencing in certain areas but we are not certain your efforts are going to adequately protect Kawikee Refuge and our two lakes – and especially the new larger lake."[49]

Butler stated: "We want to be certain that Silicon Ranch instructs and requires its contractors, subcontractors, employees and agents to insure and make certain there is no erosion,

---

[45] Id. at 29:18-30:22; 83:14- 84:22; 88:2-18; 89:4-91:3; 92:14-18; 109:16-110:11; 135:19-140:2; 145:2-157:24.
[46] See, e.g., Exhibit V, emails between J. Butler, S. Harris, and J. Brazier.
[47] See Exhibit W, Lumpkin Solar Civil Drawings dated 02/25/21, WESTWOOD000016095-WESTWOOD000016119.
[48] See Exhibit D, letter from J. Butler dated 3/9/2021.
[49] Id.

sedimentation or runoff into our two lakes."[50]   Only Butler knows the specific concerns that he

had, and why he did not express those concerns to Plaintiffs prior to the purchase of the Kawikee

Refuge property.

SRC responded to Butler's letter on the same day stating that SRC would "ensure that your

property and lakes are being adequately protected from any runoff."[51]   Butler was personally

involved in the communications with SRC regarding the work being performed, so much so that

in the deposition of the CEO of SRC, Mr. Butler inquired on multiple occasions whether he

***personally*** should have believed SRC and/or relied on its statements.[52]

## III.   LEGAL STANDARD

The local rules of this Court and federal common law govern motions to disqualify.  This

Court's local rule, M.D. Ga. R. 83.2.1(A), provides that lawyers practicing in this Court "shall be

governed by this Court's Local Rules, by the Rules of Professional Conduct adopted by the

[Georgia Supreme Court], . . . [and] the American Bar Association Model Rules of Professional

Conduct."  The principle that a lawyer is to avoid testifying in a case in which he is acting as an

advocate at trial is a longstanding one, which was codified in former Directory Rule 5–102 of the

Rules and Regulations of the State Bar of Georgia, which reads:

> When a lawyer is a witness for his client, except as to merely formal
> matters, such as the attestation or custody of an instrument and the
> like, he should leave the trial of the case to other counsel.  Except
> when essential to the ends of justice, a lawyer should avoid
> testifying in court on behalf of his client.

Defendants understand that disqualification should be resorted to sparingly."[53]   However,

---

[50] Id.

[51]   Complaint Exhibit 9, 03/09/21 email from P. Russell to J. Butler.

[52] Exh. U, R. Farr Dep. Excerpts, 40:22-25; 41:1-15, 18-22, 24-25; 42:1-22; 43:1-12, 16-25; 43:6-8, 21-24; 45:9-20; 23-25; 46:11-25; 47:1-18; 22-25; 48:9, 6-17.

[53] Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982).

"'[w]hen faced with th[e] issue [of attorney disqualification] the trial judge and the attorney should resolve any doubts in favor of the lawyer testifying and against his becoming or continuing as an advocate.'"[54]

## IV.   ARGUMENT AND CITATION OF AUTHORITY

Defendants will likely call Butler as a hostile adverse witness to offer testimony that is relevant, material, and unobtainable elsewhere; therefore, he is a necessary witness.  Because Butler is a "necessary witness," and Rule 3.7's exceptions are inapplicable, the Court should disqualify him from serving as Plaintiffs' attorney.

Butler also should be disqualified as an "unsworn witness" to prevent, *inter alia*, his subtly imparting to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.

Finally, Butler's refusal, as Managing Member of Refuge and Two, to pursue an insurance recovery to benefit Plaintiffs creates a conflict of interest further justifying his disqualification.

### A.   Butler Should Be Disqualified Because He Is A Necessary Witness Under Georgia Rule of Professional Conduct 3.7, and the Exceptions in the Rule Are Not Applicable.

The Georgia Supreme Court and the ABA Model Rules employ an identical Rule 3.7 of the Rules of Professional Conduct.  Rule 3.7 specifically mandates that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" unless "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal

---

[54] Howard v. Bd. of Educ. of Memphis City Sch., 70 F. App'x 272, 278 (6th Cir. 2003) (citation omitted); Jones v. InfoCure Corp., No. 1:01CV2845, 2003 WL 22149656, at *2 (N.D. Ga. May 13, 2003) ("[A]ny doubts as to the existence of a violation of the rules should be resolved in favor of disqualification.") (citation omitted); Premium Prods., Inc. v. Pro Performance Sports, LLC, 997 F. Supp. 2d 433, 438 (E.D. Va. 2014); Spotted Cat, LLC v. Bass, No. 13-6100, *6-7 (E.D. La. Aug. 14, 2014).

services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."[55]

"In practical terms, Rule 3.7 is based on the principle that jurors, as triers of fact, may be unable to distinguish between a lawyer's testimony and his advocacy."[56]  As the Comments to Rule 3.7 explain, "[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others.  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of proof."[57]

  1. <u>Butler Is a Necessary Witness.</u>

A lawyer is a necessary witness where "the lawyer's testimony is relevant to disputed, material questions of fact and [where] there is no other evidence available to prove those facts."[58]  Considering the circumstances in which a party's lawyers are expected to be necessary witnesses, the Supreme Court of Georgia has stated:

> [T]here is "conflict inherent in counsel's dual role as advocate and witness," and for an attorney to act as both witness and advocate is a circumstance to be avoided.  Rather, "[t]he practice of trial attorneys testifying is not approved by the courts except where made necessary by the circumstances of the case." <u>McLaughlin v. Payne</u>, 295 Ga. 609, 611 (2014) (citations omitted).  <u>See also</u> <u>Mobley v. State</u>, 265 Ga. 292, 299 (1995) (holding that, when counsel also serve as witnesses, they "are forced into ethical conflicts, their credibility is improperly placed in issue, and advocacy roles are impaired"); <u>Castell v. Kemp</u>, 254 Ga. 556, 557 (1985) (noting that a lawyer who serves as both witness and advocate "'becomes more easily impeachable for interest and thus may be a less effective witness'" and "'is in the unseemly and ineffective position of arguing his [or her] own credibility'" (citation omitted)); 81

---

[55] Georgia Rules of Professional Conduct, Rule 3.7 ("Rule 3.7").

[56] <u>Bank of Am., N.A. v. Ga. Farm Bureau Mut. Ins. Co.</u>, 2014 U.S. Dist. LEXIS 119985, *2-3 (M.D. Ga. 2014).

[57] Rule 3.7 cmt. 2.

[58] <u>See</u> <u>Martin v. State</u>, 298 Ga. 259, 779 S.E.2d 342 (Ga. 2015); <u>see also</u> <u>Wyndham Vacation Ownership, Inc. v. Vacation Transfers Unlimited, LLC</u>, 2020 U.S. Dist. LEXIS 4973, *4, 2020 WL 134132 (M.D. Tenn. Jan. 10, 2020); <u>World Youth Day v. Famous Artists Merchandising Exchange</u>, 866 F. Supp. 1297, 1302 (D.Colo. 1994).

AmJur2d § 220 (2015).[59]

"Where an attorney has unique, personal knowledge of the corporation's affairs, that attorney is to be called as a witness," and "any person testifying to a contested issue is a necessary witness."[60]

Butler – as a 50% owner and Managing Member of Refuge and Two – is a necessary witness under Rule 3.7. Butler has the most knowledge of any person, including any party or expert, regarding the condition of the lake prior to the construction of the Solar Facility, which is the crux of this case. The allegations of the Complaint indicate a need for Butler's testimony as it sets forth historical information about the lake that only Butler could know. For example, the Complaint makes contentions regarding the fish that had been caught in the lake, the color of the lake, and whether it had ever looked muddy (contentions which have been directly called into question by Wooten, Butler's former law partner and co-member of Refuge and Two).[61] Butler is a necessary witness as it relates to the historical information about the lake.

Furthermore, Butler is the only individual with first-hand non-privileged unique knowledge of many other relevant and material facts at issue in this case. For example:

- Butler has first-hand, personal and unique knowledge regarding the design, build, permitting and use of the lake.

- Butler has first-hand, personal and unique knowledge regarding the sale of the Kawikee Two property to SRC.

- Butler has first-hand, personal and unique knowledge regarding the timbering performed on the Kawikee Two property which caused damage to H&L Farms' property.

---

[59] Martin, 298 Ga. at 270–271.
[60] Eon Streams, Inc. v. Clear Channel Commc'ns, Inc., No. 3:05-CV-578, 2007 WL 954181, at *4 (E.D. Tenn. Mar. 27, 2007) (citations omitted).
[61] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 45:1-46:23.

- Butler, alone, handled the sale of the Kawikee Refuge property to Plaintiffs, and he has first-hand, personal and unique knowledge regarding this sale, such as:

  ◦ Butler, alone, knows whether he disclosed to Plaintiffs that the lake had experienced temporary discoloration issues following significant weather events in the past.

  ◦ Butler, alone, knows whether he disclosed to Plaintiffs that he had written to SRC threatening litigation if SRC "muddied up" the lake just one week before Butler sold the property to H&L Farms.[62]

  ◦ Butler, alone, knows whether he disclosed to Plaintiffs that the lake was only permitted for irrigation use (and not as a recreational fishing lake).

  ◦ Butler, alone, knows whether he ever disclosed to Plaintiffs the existence of the contractual indemnity and insurance provisions that were specifically meant to protect against damage claims made by adjoining landowners as a result of the timber harvesting conducted by the former property owners, *i.e.*, the two Georgia LLCs managed by Butler and Wooten, *and if not*, why Butler chose to conceal that information from Plaintiffs.[63]

  ◦ Butler, alone, knows why no insurance claims have been submitted to date.

- Butler, alone, knows whether Harris received a discount on the subsequent property purchases as a result of Butler's promise to "help [Harris]" if Harris "had any problems with the Silicon Ranch development[.]"[64]

---

[62] Exh. D, 03/09/21 letter from J. Butler to C. Echols.
[63] Exh. A, 05/25/22 Wooten Dep. Excerpts, at 109:16-110:11 ("I mean, one of the purposes [of such contractual provisions] was to protect the property, protect Kawikee Two **and protect Kawikee Refuge downstream.**") (emphasis added).
[64] Exh. S, Plaintiffs' Responses to Defendant Silicon Ranch Corporation's First Interrogatories, Interrogatory No. 7.

- Butler, alone, knows about his personal guaranty of the $6.7 million loan, his concerns regarding satisfaction of the loan, and how he planned to satisfy the guaranty had the SRC and/or H&L Farms sales not occurred and his guaranty had been called upon.

Defendants anticipate Butler will argue he is not a necessary witness because Harris or Wooten (or others) can testify about the events underlying the allegations in the Complaint. However, the law is clear that "[w]itnesses cannot always be replicated, and [Butler is] the best (if not the only) witness[] who can competently testify about specific things that [he himself] did or did not do."[65]  Furthermore, Wooten's own deposition makes it clear there are some topics of which only Butler has knowledge.[66]   Thus, Butler is a necessary witness and he should be disqualified from representing Plaintiffs.

2.    The Exceptions to Rule 3.7 Are Not Applicable.

None of the exceptions listed in Rule 3.7(a), which would permit a "necessary witness" to serve as an advocate, apply here.  Butler's testimony relates to contested issues and will not relate to the nature and value of legal services.  Further, there is no substantial hardship on Plaintiffs as they currently have 4 other lawyers that have also been actively involved as counsel.

a.    Butler's Testimony Relates to Contested Issues.

Here, there can be no question that Butler's testimony relates to contested issues.  Butler is involved in this case on all sides.  As is stated above, he was involved in the design of the lake at issue, the sale of the property to Plaintiffs, the sale of the property to Defendant SRC, the timbering

---

[65] Wyndham, 2020 U.S. Dist. LEXIS 4973, *6, citing Armada (Singapore) Pte Ltd v. Amcol Int'l Corp., 160 F. Supp. 3d 1069, 1071 (N.D. Ill. 2016) ("Witnesses are not fungible, and thus the quality of the evidence each may provide can only be determined in retrospect."); Glanzman v. Dominicana De Aviacion, No. 89 CIV. 6360 (SWK), 1990 WL 160881, at *1 (S.D.N.Y. Oct. 19, 1990) ("At bottom, attorneys are fungible but witnesses are not.").
[66] Exh. A, 05/25/22 Wooten Dep. Excerpts, 63:9-13; 225:15-227:21.

that contributed to the discoloration of the lake, and the refusal to seek an insurance recovery from the logging companies and their insurers.  Additionally, Butler personally made complaints to SRC regarding concerns about the work being performed at the Solar Facility.

>    b.    Butler's Testimony Will Not Relate to the Nature or Value of Legal Services.

It is undisputed that Butler's testimony will not relate to the nature or value of legal services.  Therefore, this exception is inapplicable.

>    c.    There Is No Substantial Hardship on Plaintiffs.

If Butler is disqualified, Plaintiffs will still be represented by at least 4 other attorneys as Butler is not the only lawyer who has worked on this case.[67]  In fact, there are two other Butler Prather LLP attorneys (Daniel E. Philyaw and Caroline W. Walker) who also are counsel of record for Plaintiffs, and the Butler Prather LLP law firm will remain counsel of record for Plaintiffs.

Additionally, C. Frederick Overby, of Overby Law Office, P.C., and C. Cooper Knowles, of the Law Office of C. Cooper Knowles, LLC, remain as additional counsel for the Plaintiffs.[68] All of these lawyers have been actively involved in the lawsuit and have attended most depositions. For these reasons, Plaintiffs will not suffer substantial hardship if the Court disqualifies Butler.[69]

In short, because Butler appears to be a necessary witness and none of the exceptions to Rule 3.7 apply, the Court should exclude him from acting as trial counsel for Plaintiffs.[70]

---

[67] See, e.g., DP Creations LLC v. Ortiz,  2020 U.S. Dist. LEXIS 46224, *3-8 (D. Utah 2020).

[68] See USX Corp. v. Tieco, Inc., 929 F. Supp. 1455 (N.D. Ala. 1996); Draganescu v. First National Bank of Hollywood, 502 F.2d 550 (5th Cir. 1974) (interpreting an earlier version of the Code of Professional Responsibility of the Florida Supreme Court, finding that disqualification of attorney did not cause a substantial hardship even though attorney could speak to clients in their own language, Romanian, and had taken case on contingent fee); cert. denied, 421 U.S. 929 (1975); United States v. Urbana, 770 F. Supp. 1552, 1560 (S.D. Fla. 1991) (disqualification of trial counsel required due to possibility that counsel would have to testify at trial).

[69] See, e.g., Twin Spans Bus. Park v. Cincinnati Ins. Co., 2021 U.S. Dist. LEXIS 214789, *8 (D. Del. 2021).

[70] See Electronic Laboratory Supply Co., Inc. v. Motorola, Inc., No. 88-4494, 1990 WL 96202, at *2 (E.D. Pa. July 3, 1990) (explaining that denying a party the opportunity to call a necessary witness denies the party the full opportunity to present its case to the jury).

**B.**     **Butler Should Be Disqualified Because He Presents an "Unsworn Witness" Problem.**

Even if Rule 3.7 did not warrant Butler's disqualification, should this case proceed to trial, there is a distinct possibility that Butler's representation could present an "unsworn witness problem."[71]  This problem "arises when an attorney was a participant in events to be explored at trial . . . [i]n that circumstance the attorney might convey 'first-hand knowledge of the events without having to swear an oath or be subject to cross examination.'"[72]  Although this usually presents no problem for the client, he or she may gain "an unfair advantage," and the fact finding process can be compromised.[73]  Indeed, "this scenario strikes at Rule 3.7's core concern, blurring the line between an attorney's role as advocate and as a witness with personal knowledge, impairing the fact-finding process."[74]

The rule also serves the important purpose of protecting the integrity of the court proceeding.[75]  "[W]here an attorney has observed or participated in events giving rise to facts disputed at trial, a jury may misinterpret his questions or summation as testimony conveying his own version of those events."[76]  When an attorney acts as both a witness based on personal knowledge and as a trial attorney, "the Court runs the risk that a jury will assign too much, or

---

[71] See, e.g., Wyndham, 2020 U.S. Dist. LEXIS 4973, at *9; DP Creations LLC v. Ortiz, 2020 U.S. Dist. LEXIS 46224, *9 (D. Utah 2020) (an "'attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial,' enabling the attorney to 'subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.'") (citation omitted); United States v. Santiago, 916 F. Supp. 2d 602, 615 (E.D. Pa. 2013) (if the attorney has inserted herself into the situation from which the disputed facts in the case arise, her continued representation is akin to participation by an unsworn witness).

[72] United States v. Evanson, 584 F.3d 904, 909 (10th Cir. 2009) (citation omitted).

[73] Id.; see also United States v. White, 545 F. App'x 69, 71 (2d Cir. 2013) (citation omitted); Adeniyi-Jones v. State Farm Mut. Auto. Ins. Co., No. CV 14-7101, 2016 WL 3551486, at *2 (E.D. Pa. June 30, 2016) ("An attorney who acts as an unsworn witness should be disqualified as counsel, in part to prevent the attorney from 'subtly impart[ing] to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.'").

[74] Wise v. Washington Cty., No. CIV.A. 10-1677, 2013 WL 5674460, at *5 (W.D. Pa. Oct. 17, 2013) (citing Evanson, 584 F.3d at 909).

[75] Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis, 2015 WL 3505793, *20 (S.D. Ohio).

[76] Id.

possibly too little, weight to the lawyer's testimony."[77]

Some courts refer to this as "the advocate-witness rule," which prohibits an attorney from representing a party where the attorney will or "ought to" be called as a witness.[78]  Under that rule, an attorney may be disqualified from representing a client when such attorney has knowledge of the facts or has participated in some of the events giving rise to the lawsuit and who, if allowed to participate in the case as both an advocate and a witness, would jeopardize the court's interest in ensuring that the litigation is conducted fairly and in conformity with prevailing ethical rules.[79] Disqualification in such circumstances prevents parties from being forced to "choose between the attorney's testimony and his representation."[80]  "When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony."[81]

## C.    Butler Should Be Disqualified Because He Has A Conflict of Interest.

Butler should also be disqualified because he has an inherent conflict of interest.   In determining whether to disqualify counsel due to a conflict of interest, courts weigh factors such as "the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment."[82]

Butler's advocacy on behalf of Plaintiffs will require him to advocate against the interests of Two, a closely held LLC of which he is Managing Member.  Two may owe indemnification obligations to SRC, and Two may have a right to pursue insurance recovery for any damage caused

---

[77] Spotted Cat v. Bass, 2014 WL 4072024, *3 (E.D. La. Aug. 14, 2014).
[78] See Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989); Legacy Villas at La Quinta Homeowners Ass'n v. Centex Homes, 626 Fed. App'x 679, 682 (9th Cir. 2015).
[79] See Prout v. Vladeck, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018), reconsideration denied, 319 F. Supp. 3d 741 (S.D.N.Y. 2018); see also Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2nd Cir. 2009) (noting that disqualification under the advocate-witness rule is intended to prevent "harm to the integrity of the judicial system").
[80] MacArthur v. Bank of New York, 524 F. Supp. 1205, 1209 (S.D.N.Y. 1981).
[81] United States v. Kliti, 156 F.3d 150, 156 (2d Cir. 1998).
[82] Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc., 2008 WL 1994857, *2 (S.D. Fla. May 6, 2008).

to the H&L Farms' property by the timber harvesters pursuant to the parties' agreements, which Butler, as the Managing Member of the LLC, has failed to pursue.[83]  Such a conflict of interest is a serious ethical violation prohibited by Rule 1.7 and/or Rule 1.9.[84]

Furthermore, there is no prejudice to Plaintiffs if Butler is disqualified as they have 4 other able lawyers that can assist them.  In particular, Cooper Knowles' "expertise includes the specialized areas of environmental protection and complex litigation."[85]  Plaintiffs' lawyers have been involved with the matter since the inception, have attended almost every deposition, and are involved with the day-to-day activities.  Therefore, they could easily step in as lead counsel.

As for the third factor, given Butler's intimate involvement with the LLCs of which he has 50% ownership and is the Managing Member, Butler could not have been as effective in his representation of Plaintiffs.  This is illustrated by the fact that he has not sought recovery from Two for the damage done to H&L Farms' property by Two and its timbering operations.  Moreover, H&L Farms could potentially have a cause of action against Refuge and/or Butler for their failure to disclose concerns regarding the work being performed at the Solar Facility and its potential impact on the H&L Farms' property.

As it relates to the fourth factor, given the clear conflicts at hand (namely having the Managing Member of a potentially culpable party representing Plaintiffs), the public perception of the profession has been or would be damaged should the Court choose not to disqualify Butler.

---

[83] See McGriff v. Christie, 477 Fed. Appx. 673, 676 (11th Cir. 2012), citing Bernocchi v. Forcucci, 614 S.E.2d 775, 779 (Ga. 2005) (a party who is not a former client of opposing counsel nevertheless has standing to raise the issue of opposing counsel's conflict of interest if there is a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice); Kingdom Ins. Grp. LLC v. Cutler & Assocs. Inc., 2011 U.S. Dist. LEXIS 36351,*16 (M.D. Ga. 2011) (finding balance of factors under Rule 1.9 weighed in favor of disqualification).
[84] Rule 1.7(a) of the Georgia Rules of Professional Conduct provides:
A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client.
[85] See https://cckfirm.com/.

Finally, looking at the fifth factor, this Motion has been made with reasonable promptness after the party seeking the disqualification learns of the conflict of interest. Much of the information related to Butler's involvement was revealed in the recent deposition of Joel Wooten which occurred on May 25, 2022, the depositions of Wayback and AFM which occurred on June 20, 2022, and the deposition of Interfor which occurred on June 21, 2022.

Upon learning the information related to Butler's intimate and personal involvement with the lake, the sale of the Kawikee Refuge property to Plaintiffs, the sale of the Kawikee Two property to SRC, the issues related to the timbering and the failure to tender to Two and related entities, Defendants filed the instant motion. Therefore, the Motion is timely and was filed with reasonable promptness.[86] Accordingly, Butler should be disqualified due to the conflict of interest.

## V.     **CONCLUSION**

For these reasons, Defendants respectfully request that the Court disqualify Butler from serving as Plaintiffs' counsel.

This 8th day of July, 2022.

---

[86] See Cone Finan. Grp., Inc. v. Emp'r Ins. Co. of Wausau, 2010 WL 3190619, at * 3 (M.D. Ga. Aug. 11, 2010) (finding motion to disqualify was timely because it was filed less than a year after removal of the case to this court and during the discovery phase of the case); Kobarid Holding, S.A. v. Reizen, 2005 WL 1694069, *7 (S.D. Fla. July 19, 2005) (affirming Magistrate Judge's order which found that a seven-month delay in filing the motion to disqualify did not constitute a waiver); see also Spotted Cat, 2014 WL 4072024, *9-10 ("the only argument meriting discussion is Plaintiff's concern that new counsel will not have sufficient time to prepare for trial, which is less than two months away. While this may be a legitimate concern, it can be easily remedied through a continuance. Furthermore, the Court's interests in preserving the integrity of these proceedings significantly outweighs any hardship imposed on Plaintiff, especially given the Court's ability to remedy the hardship through a continuance."); McFarland v. McFarland, 2010 WL 547233 (N.D. Iowa) (granting disqualification motion and noting, "[b]ecause trial is imminent, if Piburn files a motion to continue the trial it will be granted. The Court also notes that Fransdal may continue to represent Piburn in all pretrial proceedings."); Salisbery v. Vill. Of Sauk Vill., No. 15 C 10564, 2016 WL 1402291, at *7 (N.D. Ill. Apr. 11, 2016) ("courts in this circuit have repeatedly denied motions to disqualify an attorney alleged to be a necessary witness as premature when filed in the 'early stages' of litigation.") (citation omitted); Bank of Am., N.A., 2014 U.S. Dist. LEXIS 119985, *3 (denying Rule 3.7 motion to disqualify without prejudice to plaintiff raising it "at a more appropriate time."). Moreover, "[d]etermining whether or not such a conflict exists is primarily the responsibility of the lawyer involved." Rule 3.7 cmt. 5. Despite the significant evidence to the contrary, however, Butler continues to refuse to acknowledge even the possibility of a conflict. This "serves to perpetuate the perception that lawyers elevate their self-interests above those of their clients." U.S. ex rel. Bumbury, 101 F. Supp. 3d 1268, 1279 (S.D. Fla. 2015). On balance, these factors weigh in favor of disqualification. See Stone v. Bowen, 2017 U.S. Dist. LEXIS 109176, *17 (S.D. Fla. 2017).

_/s/ Keith M. Kodosky_
Martin A. Shelton – GA Bar No. 640749
Ryan Wilhelm – GA Bar No. 759059
Keith M. Kodosky – GA Bar No. 404814
LEWIS BRISBOIS BISGAARD & SMITH LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
404.476.2009
Martin.shelton@lewisbrisbois.com
Ryan.Wilhelm@lewisbrisbois.com
Keith.kodosky@lewisbrisbois
_Attorneys for IEA Constructors, LLC and Infrastructure_
_and Energy Alternatives, Inc._


_/s/ Alycen A. Moss_
Alycen A. Moss – Georgia Bar No. 002598
Danielle C. Le Jeune – Georgia Bar No. 134222
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, GA  30309
404.572.2052
amoss@cozen.com
dlejeune@cozen.com
_Attorneys for Silicon Ranch Corporation and SR_
_Lumpkin, LLC_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| H&L FARMS, LLC; | * | |
| SHAUN HARRIS and AMIE HARRIS, | * | |
| | * | |
| Plaintiffs, | * | CIVIL ACTION FILE |
| | * | |
| v. | * | NO. 4:21-CV-00134-CDL |
| | * | |
| SILICON RANCH CORPORATION, et al ; | * | |
| | * | |
| Defendants. | * | |

### CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, I electronically filed the foregoing *Memorandum in Support of Defendants' Motion to Disqualify James E. Butler, Jr. as Counsel for Plaintiffs* with the Clerk of Court by using the CM/ECF system, which automatically sends e-mail notification of such filing to any attorneys of record.

/s/  Keith M. Kodosky
Martin A. Shelton – GA Bar No. 640749
Ryan Wilhelm – GA Bar No. 759059
Keith M. Kodosky – GA Bar No. 404814
LEWIS BRISBOIS BISGAARD & SMITH LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
404.476.2009
Martin.shelton@lewisbrisbois.com
Ryan.Wilhelm@lewisbrisbois.com
Keith.kodosky@lewisbrisbois.com
*Attorneys for IEA Constructors, LLC and Infrastructure and Energy Alternatives, Inc.*