IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| H & L FARMS, LLC, SHAUN HARRIS AND AMIE HARRIS, <br>     Plaintiffs, <br> v. <br><br> SILICON RANCH CORPORATION, SR LUMPKIN, LLC, INFRASTRUCTURE AND ENERGY ALTERNATIVES, INC., IEA CONSTRUCTORS, LLC, AND WESTWOOD PROFESSIONAL SERVICES, INC., <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: 4:21-cv-00134-CDL |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS INFRASTRUCTURE AND ENERGY ALTERNATIVES, INC., IEA CONSTRUCTORS, LLC, SILICON RANCH CORPORATION, AND SR LUMPKIN, LLC'S MOTION TO MODIFY SCHEDULING <u>ORDER AND MOTION TO COMPEL</u>**

Defendants, Infrastructure and Energy Alternatives, Inc. ("IEA"), IEA Constructors, LLC ("IEAC"), Silicon Ranch Corporation ("SRC"), and SR Lumpkin, LLC ("SRL") (collectively, "Motion Defendants"), by and through their respective undersigned counsel and pursuant to Fed. R. Civ. P. 16(b)(4), 26, and 30, file this Memorandum of Law in Support of their Motion to Modify Scheduling Order and Motion to Compel ("Motion") and state as follows:

**I.**      **Summary**

In response to the Court's Order (ECF No. 79) compelling Plaintiffs and

Westwood to produce all communications by and between them and all documents related to settlement between them, Motion Defendants received certain emails and text messages exchanged between Plaintiffs' counsel, James Butler ("Mr. Butler"), and Westwood's counsel, Kent Stair ("Mr. Stair") and Melissa Bailey ("Ms. Bailey"). These communications revealed, for the first time, that Westwood has been secretly collaborating with Plaintiffs, for quite some time, to inappropriately shift liability from Westwood to the other Defendants in this matter. For example, they have discussed strategy regarding defenses, discovery, motion practice, and settlement, and have shared documents that have not been shared with the other Defendants—all with the goal of secretly putting Motion Defendants "in a tight spot." Exhibit 1[1].

Given the late discovery of this Mary Carter-esque agreement between Plaintiffs and Westwood, which was revealed only after being compelled by this Court to do so, Motion Defendants have no choice but to seek modification of the current discovery deadline for the limited purpose of conducting three depositions (Mr. Stair, Mr. Butler, and Westwood's corporate representative)[2] to further explore the nature and extent of the collusion between Plaintiffs and Westwood. Motion

---

[1] Original attachments to the emails attached to this Motion as exhibits have been omitted due to the voluminous nature of the exhibits.

[2] A copy of the subpoenas and notices for each of these depositions is attached hereto as Exhibit 2.

Defendants seek this limited discovery on a parallel path to the deadlines set forth in the Court's existing Scheduling Order (ECF No. 27), such that no additional deadlines contained therein need be extended.

## II.     Motion-Specific Factual and Procedural Background

### *A. Procedural Background Leading to Compelled Production*

SRC served Plaintiffs and Westwood with requests for production of documents seeking communications by and between Plaintiffs and Westwood and any documents related to settlement between Plaintiffs and Westwood. *See* ECF No. 54. Plaintiffs and Westwood asserted claims of common interest and work product privilege and refused to produce communications between Mr. Butler and Mr. Stair. *Id*. SRC moved to compel communications by and between Plaintiffs and Westwood, including those between Mr. Stair and Mr. Butler. *Id*. The Court rejected Plaintiffs' and Westwood's assertion of privilege between the two adversely aligned parties and granted SRC's Motion to Compel (ECF No. 54), holding that "under the circumstances here, the Common Interest Doctrine does not apply where the plaintiff has shared information with a defendant that it is currently suing." ECF No. 79; Transcript, p. 9:5-8.

Pursuant to the Court's Order granting SRC's and SRL's Motion to Compel, on August 11, 2022, Westwood produced certain emails between Mr. Butler and Mr. Stair/Ms. Bailey. On August 19, 2022, SRC's counsel notified Westwood of

deficiencies in its production, including its failure to produce text messages between Mr. Stair and Mr. Butler, and SRC also requested to take the deposition of Mr. Stair. Exhibit 3. On August 24, 2022, Westwood's counsel responded to SRC's deficiency notice and produced some text messages and objected to the deposition of Mr. Stair. Exhibit 4.

On August 31, 2022, after SRC's counsel agreed to an extension, Plaintiffs produced certain written communications between Mr. Butler and Mr. Stair/Ms. Bailey to Defendants. Westwood then served Motion Defendants with supplemental productions on August 31 and September 2, 2022, consisting of additional written communications, as well as voicemails exchanged by and between Mr. Butler and Mr. Stair that both parties had failed to produce initially.

### B. The Evidence Establishes that Westwood Is Colluding with Plaintiffs to Shift its Liability to Motion Defendants

The scope and specific details of collusion revealed by the communications Plaintiffs and Westwood were compelled to produce is shocking. For instance, Mr. Stair and Mr. Butler collaborated regarding the testimony of a key witness in this matter, Mr. Joseph Ridley (Westwood's Construction Stormwater Manager). Mr. Butler shared his proposed exhibits and outline for Westwood's key witness and Mr. Stair offered "alternative ways of doing" his testimony to best serve the apparent shared interest of their respective clients. Exhibit 5. The parties also conferred regarding their responses to SRC's discovery requests and this Court's Order

4

compelling them to produce documents. *See* Exhibit 6 (Mr. Stair sends Mr. Butler Westwood's draft discovery responses to the SRC request for production of documents); Exhibit 7 (Mr. Butler tells Mr. Stair its clear why SRC/IEA subpoenaed their emails).

Below, Motion Defendants summarize some of the clearest instances of the secret collaboration that has occurred between Plaintiffs and Westwood, unknown to the other Defendants until recently:

- **Mr. Stair and Mr. Butler secretly conferred regarding their strategy for lessening Westwood's liability and establishing the alleged liability of Motion Defendants.**

    o Exhibit 1 (Mr. Butler and Mr. Stair discuss perceived weaknesses in Motion Defendants' cases and ways for Westwood to limit its liability);

    o Exhibit 8 (Mr. Butler emails Mr. Stair information to use against SRC);

    o Exhibit 9 (Mr. Stair emails his appreciation to Mr. Butler for a recent voicemail regarding design issues and wants to find a time to talk);

    o Exhibits 10 –12 (Mr. Butler sends Mr. Stair information to use against IEA);

    o Exhibit 13 (Mr. Butler emails Mr. Stair requesting any Westwood documents to use to make Motion Defendants' expert out as "an outlier and dishonest");

    o Exhibit 14 (Mr. Butler sends Mr. Stair information to use against SRC and IEA); and

    o Exhibit 15 (Mr. Butler shares with Mr. Stair a theory he has regarding SRC).

5

- **Mr. Stair and Mr. Butler secretly conferred regarding their strategy in this matter concerning discovery, including exchanging questions and documents before and during depositions, and offering "alternative ways of doing" witness testimony.**

    o Exhibits 5, 16 (Mr. Butler texts and emails Mr. Stair regarding Joseph Ridley, a key Westwood witness, and shares exhibits and his outline for examining Mr. Ridley in his deposition. Mr. Stair responds and offers "alternative ways of doing" Mr. Ridley's testimony);

    o Exhibit 17 (Mr. Butler tells Mr. Stair he is taking a video deposition of Defendants' expert to play at trial and recommends that Mr. Stair notice a deposition for that afternoon with his own reporter, but without a videographer, in order to make it more difficult for Motion Defendants to get the judge play any testimony other than the testimony Mr. Butler wants. Mr. Stair agrees);

    o Exhibits 18–19 (Mr. Stair and Mr. Butler text message and email during depositions regarding strategy and exhibits to use);

    o Exhibit 20 (Mr. Stair texts Mr. Butler to come with no questions to the scheduled depositions because his associate will "be there with similar intentions");

    o Exhibits 21 – 25 (Mr. Butler and Mr. Stair email regarding strategy and exhibits for the deposition of Defendants' experts);

    o Exhibit 26 (Mr. Butler emails Mr. Stair to call him ASAP regarding a deposition);

    o Exhibit 27 (Mr. Stair emails Mr. Butler to call him about an IEA employee's deposition);

    o Exhibit 28 (Mr. Stair sends Mr. Butler a detailed description of subpoenaed depositions and his thoughts);

    o Exhibit 29 (Mr. Butler emails Mr. Stair regarding deposition of one of Defendants' consultants); and

    o Exhibit 30 (Mr. Stair emails Mr. Butler for a time to talk regarding his

thoughts "as to how discovery might best proceed in this case").

- **Mr. Stair and Mr. Butler agreed to conduct depositions outside of the discovery period and to put Motion Defendants "in a tight spot" regarding the same. In exchange for Mr. Stair agreeing that Plaintiffs can take depositions outside of the discovery period, Mr. Butler agreed to try to only take one deposition of Westwood.** *See* Exhibits 1, 31 – 32.

- **Mr. Stair and Mr. Butler secretly conferred regarding factual and legal support for their positions in the case.**

    o Exhibit 33 (Mr. Butler texts Mr. Stair that he just emailed him a document that "makes your case");

    o Exhibit 34 (Mr. Butler asks Mr. Stair for case law);

    o Exhibit 35 (Mr. Stair and Mr. Butler discuss strategy regarding Westwood's expert's site visit);

    o Exhibit 36 (Mr. Stair and Mr. Butler discuss Westwood's expert report);

    o Exhibit 37 (Ms. Bailey sends Mr. Butler case law and interpretation regarding what they previously discussed);

    o Exhibit 38 (Mr. Butler shares his thoughts regarding rebuttal reports and research with Mr. Stair and Mr. Stair asks Mr. Butler to give him a call);

    o Exhibit 39 (Mr. Stair and Mr. Butler and other attorneys in their offices discuss potential hearsay issues related to the use of an expert report they want to use together);

    o Exhibit 40 (Mr. Butler says he is "building my order of proof around your [Stair's] commitment to bring Ridley to trial during plaintiffs' case in chief. That's all I need."); and

    o Exhibit 41 (Mr. Butler emails Mr. Stair documents for Westwood's expert to rely upon and asks if he needs to file a supplemental report);

7

- o Exhibit 42 (Mr. Stair sends Mr. Butler a copy of a highlighted agreement and asks him to review and call).

- **Mr. Stair and Mr. Butler conferred regarding settlement.**

    - o Exhibit 43 (Mr. Butler sends Mr. Stair Motion Defendants' Notice of Offer of Settlement and tells Mr. Stair it will not be accepted. Mr. Stair responds that he is available to discuss the offer).

In addition to the above instances of collusion, Mr. Butler and Mr. Stair regularly had conversations which are not evidenced in the documents produced. In no less than 15 emails, Mr. Butler and Mr. Stair referred to prior conversations between themselves and/or asked that the other party call them. *See* Exhibit 8-9, 13, 17, 26, 28, 30, 33, 42-49. The discovery sought by this Motion pertains to precisely these oral communications between counsel for adversely aligned parties (as well as Westwood's corporate representative's knowledge of these communications and any agreement that fostered them), which remain undisclosed to and otherwise out of reach of Motion Defendants.

### III. Legal Argument and Authority

#### A. Standard for Motion to Modify Scheduling Order

Pursuant to Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir.

1998) (internal quotations and citations omitted). "Good cause" exists where a party is unable to comply with the discovery schedule due to the late discovery of relevant information. *See Cannon v. Bittick*, No. CIV.A. 5:05-CV176WDO, 2006 WL 692481, at *1 (M.D. Ga. Mar. 14, 2006) (finding good cause exists to extend the deadline for discovery where an expert opinion was disclosed for the first time during his deposition and outside of the deadline to disclose new experts).

Motion Defendants are aware of the Court's directive at the July 21, 2022 hearing that it "does not intend to grant any additional extensions." ECF No. 79; Transcript, p. 10:16-17. However, the late discovery of this Mary Carter-esque agreement between Plaintiffs and Westwood leaves Motion Defendants no choice but to seek modification of the Court's existing discovery deadline. Motion Defendants, for good cause, request that this Court extend the deadline for the completion of discovery to October 14, 2022 for the limited purpose set forth herein[3].

### B. Deficiencies in Plaintiffs' and Westwood's Production of Documents

In addition to the undisclosed oral communications between Mr. Butler and Mr. Stair discussed above, Motion Defendants have reason to believe that Plaintiffs

---

[3] The original discovery deadline in this matter was set as March 7, 2022. This deadline has been extended once at the request of Plaintiffs (ECF Nos. 31 and 32) and once at the request of Motion Defendants (ECF Nos. 49 and 79). Most recently, the discovery deadline in this matter was extended, for good cause shown, to September 14, 2022 to allow Motion Defendants to complete 6 additional depositions (the continued deposition of Plaintiffs' expert, John Britt, and an additional five (5) depositions). ECF No. 79; Transcript, pp. 10:5-11, 17:24-25.

and Westwood have not produced all documents responsive to SRC's request for productions of documents, which this Court compelled Plaintiffs and Westwood to produce. These documents include, by way of example and without limitation, documents shared via Sharefile, such as photographs and videos[4]. *See* Exhibit 31 (Ms. Bailey emails Mr. Butler a sharefile link with "requested contracts"); Exhibit 45 (Mr. Stair sends Mr. Butler a sharefile link to SWPP reports); Exhibit 50 (Mr. Butler thanks Mr. Stair for the photos and videos of Westwood's visit to SRC site on March 28, 2022); Exhibit 51 (Ms. Bailey refers to uploading documents to a "shareable platform"); Exhibit 53 (Mr. Teich emails Mr. Butler a sharefile link to photographs). Additionally, some of the communications received thus far reference documents to be shared by the parties at a later date, such that there is reason to believe there may be responsive documents that have not been produced. The discovery requested herein is necessitated, in part, to explore the full extent of information shared between Plaintiffs and Westwood but not with the other Defendants.

### C. The Communications between Westwood and Plaintiff Evidence a Mary Carter-esque Agreement

A "Mary Carter" agreement "is a contract by which one or more defendants

---

[4] As of the date of this Motion, the Motion Defendants, Plaintiffs, and Westwood continue to confer regarding these deficiencies.

in a multi-party case secretly align themselves with the plaintiff and agree to continue as active defendants in the suit while working to aid in the plaintiff's case; in exchange, their own maximum liability will be diminished proportionately by increasing the liability of the nonagreeing defendant or defendants." *Booth v. Mary Carter Paint Company*, 202 So.2d 8 (Fla.Dist.Ct.App.1967), overruled, *Dosdourian v. Carsten*, 624 So.2d 241 (Fla.1993). Because these agreements secretly alter the adversarial nature of the relationship between the parties, they raise a serious threat to the fairness of the trial for the nonsettling defendant. *Dosdourian v. Carsten*, 624 So.2d 241, 244 (Fla.1993); *see also Monti v. Wenkert*, 287 Conn. 101, 122–23, 947 A.2d 261, 274 (2008). Although some states allow Mary Carter agreements, other states have declared Mary Carter agreements to be *per se* invalid, and held that a settling defendant may not participate in a trial in which it retains a financial interest in plaintiff's lawsuit. See *Dosdourian* at 241 (Fla.1993); *Elbaor v. Smith,* 845 S.W.2d 240 (Tex.1992); *Lum v. Stinnett*, 87 Nev. 402, 488 P.2d 347 (1971); *Trampe v. Wisconsin Telephone Co.*, 214 Wis. 210, 252 N.W. 675 (1934). The scope and detail of information sharing between a plaintiff and defendant here, including the longstanding nature of the collaboration, creates an issue of first impression on this issue in Georgia[5].

---

[5] In *Med. Staffing Network, Inc. v. Connors*, 313 Ga. App. 645 (2012), the Court of Appeals of Georgia held that failure to disclose a secret settlement agreement between a plaintiff and a defendant did not warrant grant of new trial where the

Westwood and Plaintiffs have denied that a Mary Carter-esque agreement exists between them (*see* Exhibits 4, 53), but the communications between Mr. Butler and Mr. Stair provide a reasonable basis to question this assertion. Regardless of whether the parties have entered into a formal Mary Carter agreement, there can be little doubt that they have struck some kind of arrangement pursuant to which they have "secretly alter[ed] the adversarial nature of the relationship between the parties" thus "raising a serious threat to the fairness" for the other Defendants. *Dosdourian* at 244 (Fla.1993).

### D. Good Cause Exists to Extend the Discovery Deadline

Motion Defendants seek the extension of the discovery deadline in this matter, for good cause shown, for the limited purpose of exploring the collaboration between Plaintiffs and Westwood, including the existence of documents shared between them but not with the other parties, oral communications between them, and the possibility of a Mary Carter-esque agreement between them.

   1. <u>The Information Sought by Motion Defendants Is Relevant and Subject to Discovery</u>

The discovery sought in this Motion is no different than the discovery already

---

"alignment of their interests" was "freely disclosed." *Id.* at 649. However, the court in *Med. Staffing* declined to address "whether Georgia law should limit agreements of this nature," thus limiting its holding to the circumstances of that case. *Id.* Therefore, the holding in *Med. Staffing* is neither factually relevant nor legally binding for purposes of the circumstances presented here.

12

compelled by this Court. The Court rejected Plaintiffs' and Westwood's assertions of privilege and/or common interest between the two allegedly adverse parties and granted SRC's Motion to Compel (ECF No. 54), holding that "the Common Interest Doctrine does not apply" here. ECF No. 79; Transcript, p. 9:5-8. Therefore, the information sought by this Motion is similarly subject to discovery.

Furthermore, the depositions of opposing counsel are permitted in circumstances such as the ones present here.[6] *See Bank of Am., N.A. v. Georgia Farm Bureau Mut. Ins. Co.,* No. 3:12-CV-155 CAR, 2014 WL 4851853, at *3 (M.D. Ga. Sept. 29, 2014) (citation omitted); *see also McDill v. Board of Pardons and Paroles,* 2021 WL 6883424 at 4 (M.D. Ala. June 24, 2021) ("The Federal Rules of Civil Procedure do not explicitly prevent the deposition of another party's lawyer, so long as the deposition seeks relevant, non-privileged information."), citing Fed. R. Civ. P. 26(b)(3), 30(a). "A lawyer's profession is not a talisman of privilege, automatically granting attorneys immunity from discovery under the federal rules." *Bank of Am.*, 2014 WL 4851853, at *5.

"Circuit courts are divided over the criteria to use in determining whether the deposition of an attorney is warranted." *Id*. The Eighth Circuit applies a three-part test, known as the *Shelton* test, limiting attorney depositions to situations where: (1)

---

[6] The Court previously denied IEA's request to depose Mr. Butler. However, neither the factual circumstances nor context in which Mr. Butler's deposition was previously sought are relevant to the instant request.

13

there are no other means to get the information sought, (2) the attorney actually possesses relevant and non-privileged information, and (3) the information sought is crucial to the preparation of the case. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The Fifth, Sixth, and Tenth Circuits have adopted the Eighth Circuit's *Shelton* test. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002); *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995). In counterpoint to the "rigid *Shelton* rule," the Second Circuit looked to the standards of Rule 26 and set out a more "flexible approach" to evaluating lawyer depositions. *Bank of Am.*, 2014 WL 4851853, at *6, citing *Official Comm. Of Unsecured Creditors of Hechinger Inc. Co. of Del., Inc. v. Friedman*, 350 F.3d 65, 67, 72 (2nd Cir. 2003). Under this approach, "the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72.

The Eleventh Circuit has not adopted the *Shelton* test or the Second Circuit's flexible approach. As a result, "district courts throughout [this] Circuit have used both approaches, or a combination thereof . . . ." *Bank of Am.,* 2014 WL 4851853, at *7. Without clear direction from the Eleventh Circuit otherwise, this Court should find both the *Shelton* test and the Second Circuit's flexible approach supportive of permitting the depositions of Mr. Butler and Mr. Stair here.

The *Shelton* test factors support permitting Mr. Butler's and Mr. Stair's depositions. The first *Shelton* factor—that there are no other means to get the information sought—weighs in favor of permitting the depositions. There is no means by which Motion Defendants can obtain information regarding the communications between Mr. Stair/Ms. Bailey and Mr. Butler but through their own testimony. The second *Shelton* factor—that the attorney possesses relevant and non-privileged information—likewise weighs in favor of permitting Mr. Butler's and Mr. Stair's depositions. Importantly, this Court has already found such information relevant, non-privileged, and subject to discovery.

Finally, the third *Shelton* factor—that the information sought is crucial to the preparation of the case—likewise weighs in favor of permitting the requested depositions. Motion Defendants have already been prejudiced by the collaboration between the parties as evidenced by Plaintiffs' and Westwood's manipulation of the discovery process thus far, as demonstrated in multiple examples cited in Section II.B above. Motion Defendants cannot know the full extent of this prejudice, which will continue to hinder their defense if they are not able to proceed in this matter with the benefit of the same information selectively shared between Plaintiffs and Westwood. *See Atlantic Recording Corp. v. Spinrilla, LLC*, No. 1:17-CV-00431-AT, 2018 WL 6362660 (N.D. Ga. Sept. 28, 2018) quoting *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1098 (D.N.J. 1996) ("[L]itigants must not

manipulate the work product doctrine for their own benefit by attempting to selectively disclose their attorney's work product."); *Kowalonek v. Bryant Lane, Inc.*, No. CV9603249425, 2000 WL 486961, at *10 (Conn. Super. April 11, 2000) (party should not "be allowed to gain the substantial advantage accruing to voluntary disclosure of work-product to one adversary... while being able to maintain another advantage inherent in protecting that same work product from other adversaries").

For similar reasons, the Second Circuit's "more flexible approach" also favors permitting the depositions of Mr. Butler and Mr. Stair because the proposed "depositions would not entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. Motion Defendants are simply asking that Plaintiffs and Westwood share with the other Defendants what they have already shared amongst themselves.

The deposition of Westwood's corporate representative is permitted for the same reasons. Westwood's corporate representative has specific and unique knowledge regarding the communications with Plaintiffs and any agreement(s) between the parties, and the information is essential to the case. Presumably, Westwood approved the collaboration with Plaintiffs, and Motion Defendants are entitled to discover information regarding Westwood's role in approving or directing the collaboration and agreement.

   2. <u>Defendants Cannot Meet the Current Discovery Deadline through Reasonable Diligence</u>

Motion Defendants are unable to obtain the discovery sought by this Motion

16

through reasonable diligence within the current discovery deadline due to the late disclosure of the nature of the relationship between Plaintiffs and Westwood.

The circumstances presented here are similar to those presented in *Cannon v. Bittick*. *Cannon*, 2006 WL 692481, at *1. In *Cannon*, a medical examiner in a wrongful death suit testified to the possibility of the death being caused by cardiorespiratory arrest without physical restraint where the autopsy report previously identified the cause of death as with physical restraint. *Id.* At the time of the medical examiner's deposition, the deadline to designate expert witnesses had expired but the plaintiffs had not designated a medical causation expert because they had no reason to anticipate that the defendants would challenge the cause of death. *Id.* The court in *Cannon* found that the plaintiffs had showed good cause to amend the discovery schedule to allow for them to designate a medical causation expert. *Id.*

Similar to the plaintiffs in *Cannon*, here, Motion Defendants had no reason to suspect Plaintiffs and Westwood were working together in this matter until Plaintiffs and Westwood asserted a claim of privilege regarding their communications in their responses to SRC's and SLR's discovery requests. More significantly, the nature and extent of that collaboration was not reasonably evident until August 31, 2022, at the earliest, when Motion Defendants received Plaintiffs' and Westwood's complete production of documents which revealed the collaborative nature of their relationship. Since receipt of the communications between Plaintiffs and Westwood,

17

Motion Defendants have worked diligently in reviewing the documents and the issues presented by the collusion revealed.

> 3. <u>Extension of the Discovery Deadline Will Not Result in Delay and Will Not Prejudice the Other Parties</u>

Motion Defendants do not seek an extension of any deadline other than the deadline for the completion of discovery. As such, granting this Motion will not result in any delay to the proceedings in this matter. Furthermore, extending the discovery deadline to permit the discovery requested will not result in any undue prejudice to either Westwood or Plaintiffs because Motion Defendants are not seeking new discovery, but instead are seeking only the full extent of what has already been shared between Plaintiffs and Westwood.

**IV.  Conclusion**

In the eleventh hour of discovery in this matter, and only after being compelled by the Court, Plaintiffs and Westwood revealed for the first time that the two alleged adversaries have been secretly working together to the disadvantage of the other Defendants in this matter. This Mary Carter-esque agreement undermines the fairness of the judicial process and requires that Motion Defendants be given the opportunity to explore this arrangement between Plaintiffs' and Westwood.

WHEREFORE, Motion Defendants respectfully request this Court (i) grant this Motion; (ii) extend the deadline for the completion of discovery for the limited purpose set forth herein to October 14, 2022; (iii) compel the depositions of Mr.

Butler, Mr. Stair, and Westwood's corporate representative; (iv) compel Plaintiffs and Westwood to correct the deficiencies in their prior production of documents; and (v) award such further relief as this Court deems just and proper.

Respectfully submitted this 14th day of September, 2022.

| | |
|---|---|
| **SMITH CURRIE & HANCOCK LLP** | **COZEN O'CONNOR** |
| */s/ Charles E. Rogers* | */s/ Alycen A. Moss* |
| Charles E. Rogers | Alycen A. Moss |
| Georgia Bar No. 612175 | Georgia Bar No. 002598 |
| Harry Z. Rippeon III | Danielle C. Le Jeune |
| Georgia Bar No. 324008 | Georgia Bar No. 134222 |
| Steven J. Stuart | The Promenade, Suite 400 |
| Georgia Bar No. 471741 | 1230 Peachtree Street, N.E. |
| Jeanne M. Harrison | Atlanta, GA 30309 |
| Georgia Bar No. 296449 | Telephone: (404) 572-2052 |
| | Facsimile: (877) 728-1396 |
| 2700 Marquis One Tower | E-mail: amoss@cozen.com |
| 245 Peachtree Center Avenue NE | dlejeune@cozen.com |
| Atlanta, GA 30303 | |
| T: 404.521.3800 | *Counsel for Defendants Silicon* |
| F: 404.688.0671 | *Ranch Corporation and SR* |
| Email: CERogers@smithcurrie.com | *Lumpkin, LLC* |
| ZRippeon@smithcurrie.com | |
| SJStuart@smithcurrie.com | |
| JMHarrison@smithcurrie.com | |
| | |
| *Counsel for Defendants Infrastructure and Energy Alternatives, Inc. and IEA Constructors, LLC* | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| H & L FARMS, LLC, SHAUN HARRIS AND AMIE HARRIS,     Plaintiffs, v. SILICON RANCH CORPORATION, SR LUMPKIN, LLC, INFRASTRUCTURE AND ENERGY ALTERNATIVES, INC., IEA CONSTRUCTORS, LLC, AND WESTWOOD PROFESSIONAL SERVICES, INC.,     Defendants. | Civil Action No.: 4:21-cv-00134-CDL |

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, I electronically filed the foregoing *MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS INFRASTRUCTURE AND ENERGY ALTERNATIVES, INC., IEA CONSTRUCTORS, LLC, SILICON RANCH CORPORATION, AND SR LUMPKIN, LLC'S MOTION TO MODIFY SCHEDULING ORDER AND MOTION TO COMPEL* with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to the attorneys of record.

This 14th day of September, 2022.

*/s/ Charles E. Rogers*
Charles E. Rogers
Georgia Bar No. 612175

20