IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| H & L FARMS, LLC; | * | |
| SHAUN HARRIS and AMIE HARRIS, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CIVIL ACTION FILE |
| v. | * | |
| | * | NO. 4:21-CV-00134-CDL |
| SILICON RANCH CORPORATION; | * | |
| SR LUMPKIN, LLC; INFRASTRUCTURE | * | |
| AND ENERGY ALTERNATIVES, INC.; | * | |
| IEA CONSTRUCTORS, LLC; and, | * | |
| WESTWOOD PROFESSIONAL | * | |
| SERVICES, INC., | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFFS' RESPONSE TO DEFENDANT IEA AND SRC'S MOTION
TO MODIFY SCHEDULING ORDER AND MOTION TO COMPEL**

Come now Plaintiffs H&L Farms, LLC and Shaun and Amie Harris ("Plaintiffs") in the above-styled action and show this Court that defendants IEA and SRC's Motion to Modify Scheduling Order and Motion to Compel should be DENIED. In support of their response, Plaintiffs show this Court the following.

**Introduction**

Plaintiffs and Plaintiffs' counsel continue to be burdened with defendants SRC and IEA's incessant attempts to delay this case and divert attention from the problem they have caused. This time, SRC and IEA move—once again—to extend

1

discovery and to depose lead counsel for Plaintiffs and lead counsel for co-defendant Westwood Professional Services.  This harassment must stop. Discovery has ended and it is time to prepare this case for trial.

SRC and IEA persistently try to divert attention away from what they have done.  This theorizing that Plaintiffs and Westwood must have some sort of settlement agreement is baseless.  Plaintiffs and Westwood have both denied it.  In fact, Plaintiffs first denied this allegation in written discovery responses to defendant SRC, specifically stating "that [Plaintiffs] have made no 'settlement' with Westwood" and have "entered into no 'agreements' with Westwood, relating to 'the claims' raised in the subject lawsuit or otherwise."  *See* Ex A, Plaintiff's Responses to Defendant SRC's Second Request for Production, June 13, 2022. Not only is there no settlement "agreement," there has been no discussion of any settlement between Westwood and Plaintiffs.  Zero. Nada. Zip.

Plaintiffs vigorously opposed SRC's motion to compel communications between counsel for Plaintiffs and Westwood, as did Westwood.  Plaintiffs and Westwood contended they had a common interest, which seemed very clear since the main culprits here, SRC and IEA, are trying to 'throw Westwood under the bus' in an attempt to avoid responsibility.  That's ridiculous, given the facts of the case.  It is also not in Westwood's interest, and it is most definitely not in

Plaintiffs' best interest since SRC and IEA are the only defendants against whom the propriety of a claim for punitive damages cannot even be challenged.

But the Court ruled, and counsel obeyed the Court's Order, although it was embarrassing to share some of the communications between Mr. Butler and Mr. Stair. There were a lot of communications. That is because those two men happen to really like one another, and enjoy sharing stuff (about boats, bourbon, grandkids, Tom Carlock, and other things - things that were none of the business of the lawyers for SRC and IEA). Most of all, what Mr. Butler and Mr. Stair think about this case is something that should never have been shared with SRC and IEA. But the Court ruled, and counsel obeyed.

Now the lawyers for SRC and IEA have taken what the Court gave them and are using it to fabricate more excuses to harass opposing counsel - even to the point of seeking depositions of opposing parties' lead counsel, and to extend discovery yet again, despite the Court having stated at the July 21 hearing that discovery would not be extended again.[1]

---

[1] *See* 7/21/22 Hrg. Transcript at 10:5-20 ("With regard to the discovery and the request for a discovery extension, which is found at ECF No. 49, the Court does find, particularly in the light of some of its rulings today, that extending discovery is appropriate. So the Court is going to extend the discovery deadline until September the 14th of 2022; therefore, **any of this additional discovery needs to be completed by September the 14th of 2022**. That will make the dispositive motion deadline October the 14th of 2022. I realize that's not 45 days which is traditionally the amount of time, but 30 days should be plenty to file any dispositive motions after the expiration of discovery. **The Court does not intend**

Incredibly, those lawyers for SRC and IEA are doing that while admitting that Plaintiffs and Westwood were right all along – that Plaintiffs and Westwood in fact had a common interest. *See* Doc 89-1, SRC & IEA Br. at 4 ("Mr. Butler shared his proposed exhibits and outline for Westwood's key witness and Mr. Stair offered 'alternative ways of doing' his *testimony to best serve the apparent shared interest of their respective clients.*") (emphasis added).

It is notable that although counsel for SRC and for IEA both "certify that they have in good faith conferred or attempted to confer with the opposing party," as required by Local Rule 37, (1) counsel for IEA made no attempt to 'confer' at all, and (2) the only 'conferring' done by counsel for SRC was to demand that Plaintiffs and Westwood agree to the depositions of lead counsel for each plus a Westwood "corporate representative." *See* Exhibit F hereto, 9/13/22 email 'string'.

At no time did counsel for either SRC or IEA suggest why the three depositions were supposedly necessary, or indicate to what 'defense' of SRC and IEA such depositions might relate, or suggest how such depositions would be

---

**to grant any additional extensions.** We need to stay on this schedule so the Court, if there are any dispositive motions, can rule on those and have this case ready to try during the Court's March 2023 jury trial term, which should begin the first week in March of 2023.")

reasonably calculated to lead to the discovery of evidence admissible with respect to any such 'defense.' SRC and IEA still have not done so

The SRC/IEA motion should be denied. Those defendants and their lawyers should be admonished. The communications produced to them should be deemed confidential, not to be shared outside this litigation and not to be used at trial.

**Legal Argument and Authority**

I. **The claim that there is some type of "Mary Carter" agreement between Plaintiffs and Westwood is baseless and frivolous.**

Defendants understand how much of a stretch this allegation is, which is why they deem the alleged agreement between Plaintiffs and Westwood as a "Mary Carter-*esque*" agreement. "A Mary Carter agreement is basically a contract by which one codefendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other co-defendants." *Medical Staffing Network, Inc. v. Connors*, 313 Ga. App. 645, 653 n. 3 (Ga. Ct. App. 2012) (quoting *Booth v. Mary Carter Paint Co.*, 202 So.2d 8 (Fla. 2d. Dist. Ct. App. 1967)). It has been said that three basic features generally define Mary Carter agreements:

> (1) the liability of the settling defendant is limited and the plaintiff is guaranteed a minimum recovery; (2) the settling defendant remains a party to the pending action without disclosing the full agreement to the nonsettling defendants and/or the judge and jury; and (3) if judgment against the nonsettling defendant is for more than the amount of

settlement, any money collected will first offset the settlement so that the settling defendant may ultimately pay nothing.

*England v. Reinauer Transp. Companies, L.P.*, 194 F.3d 265, 274 (1st Cir. 1999).[2]

There is no Mary Carter agreement in place between Plaintiffs and Westwood. There is no "Mary Carter-esque" agreement – whatever that may be. There is no agreement to limit the liability or financial responsibilities of Westwood and Plaintiffs have repeatedly stated so. There is no settlement agreement. *Peacock v. Spivey*, 278 Ga. App. 338, 339 (Ga. Ct. App. 2006) ("Settlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident").

The only alleged secret "agreement" that SRC and IEA cite to in their motion and exhibits, in addition to some horse-trading between Plaintiffs and Westwood over things like scheduling depositions, is Westwood's counsel's assurance that he would bring Westwood employee Joseph Ridley to trial, which

---

[2] *See also Gen. Motors Corp. v. Lahocki*, 410 A.2d 1039, 1042 (Md. 1980) ("[Three basic features seem to be contained in each [Mary Carter Agreement]: (1) The agreeing defendant is to remain a party and is to defend himself in court. However, his liability is limited by the agreement. In some instances this will call for increased liability on the part of other co-defendants. (2) The agreement is secret. (3) The agreeing defendant guarantees to the plaintiff that he will receive a certain amount, notwithstanding the fact that he may not recover a judgment against the agreeing defendant or that the verdict may be less than that specified in the agreement.").

Westwood counsel intended to do all along, anyway. That assurance, to bring Ridley to trial, is obviously of no importance to movants SRC and IEA, since when selecting deponents they elected not to even to depose Mr. Ridley, despite the fact that defendants SRC and IEA well knew of Mr. Ridley's involvement in SRC's solar development. Defendants SRC and IEA did not even seek Mr. Ridley's deposition after this Court's July 21, 2022 order allowing those defendants to take more depositions, in an extended discovery period.

The discussion between Westwood counsel and Plaintiffs' counsel about Mr. Ridley is not remotely a "Mary Carter-esque" agreement.

*First*, Westwood's intention to bring Joseph Ridley to trial is far from secret. Westwood has planned to bring Mr. Ridley to trial from the beginning of this litigation. Westwood disclosed Mr. Ridley *as an expert witness* in their December 30, 2021 Expert Disclosures *and again* in their rebuttal disclosures. *See* Exhibit B, 12/30/2021 Def. Westwood's Expert Disclosures; Exhibit C, Def. Westwood's 01/28/2022 Def. Westwood's Rebuttal Expert Disclosures. Plus, in their expert disclosures, Westwood stated that Mr. Ridley will be offered in part to rebut the testimony of Plaintiffs' expert Brian Wellington to the extent such opinions "are critical of the services provided by Westwood in relation to the BMPs on the Lumpkin solar site." *See* Exhibit B at 2-3.

*Second*, Westwood's promise to bring Mr. Ridley to trial is no binding agreement whatsoever. Plaintiffs' counsel is essentially relying on a mere handshake from Westwood counsel that they will actually bring this witness—who is outside of Plaintiffs' ability to subpoena—to trial. Westwood counsel could just as easily refuse to bring Mr. Ridley to trial at the last minute and pull the rug out from under Plaintiffs.

*Third*, in making their allegations that such a promise works to "inappropriately shift" liability from Westwood to SRC/IEA, SRC and IEA ignore the irrefutable fact that *it is in Westwood's best interest* to bring witness Joseph Ridley to trial. As defendants SRC and IEA know from discovery, Mr. Ridley witnessed and recorded videos of the erosion and sedimentation control maintenance disasters and the detrimental failures of SRC and IEA on the Lumpkin solar development site. Mr. Ridley's testimony will not "inappropriately shift" liability; rather it directs liability to the appropriate parties.

Frankly, it does not require three depositions, including two depositions of lead counsel, for SRC and IEA to ascertain something that was previously stated in Plaintiffs' discovery responses and established over the course of this litigation. Once again, SRC and IEA are simply looking for any means to divert attention from their own responsibility and liability, and to make this litigation as unpleasant as possible for opposing counsel.

If the above points were not reason enough for this Court to deny SRC & IEA's motion, then it is clear that SRC & IEA's attempt compel the depositions of Plaintiffs' counsel and Westwood counsel should fail because it would cause a tremendous hardship and undue burden on the parties.

When evaluating the need for attorney depositions, the Middle District of Georgia has declined to apply either the *Shelton* approach or the "flexible approach" formulated by the Second Circuit Court in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003). Instead, the Middle District "focuses its analysis on weighing and balancing [the] need for the information sought" with the interests of attorney-client relationships. *Bank of America, N.A. v. Georgia Farm Bureau Mut. Ins. Co.*, 2014 WL 4851853 at *3 (M.D.G.A. Sept. 29, 2014).

There is simply no need for SRC & IEA to depose Plaintiffs' counsel and Westwood counsel. SRC & IEA already have the information that they seek. Plaintiffs and Westwood have produced an enormous volume of communications between their counsel. Completely missing therefrom is anything remotely like a Mary Carter agreement or "Mary Carter-esque" agreement between Plaintiffs and Westwood, because there has been none.

Additionally, if a settlement agreement had been reached, then Plaintiffs' counsel and Westwood counsel would not be the only persons with knowledge of

9

the agreement. Obviously, Plaintiffs' counsel would be obligated to share information about the existence of any settlement offer or agreement with his clients, Shaun and Amie Harris. Thus, SRC & IEA's motion to compel the deposition of Plaintiffs' counsel should also be denied because Plaintiffs' counsel would not be the only possible source of information related to a supposed settlement agreement. SRC and IEA's real goal—to depose and harass Plaintiffs' counsel—is made all the more clear by the fact that SRC & IEA propose the deposition of a 30(b)(6) witness from Westwood for this purpose, but not a deposition of the Plaintiffs.

The deposition of Plaintiffs' counsel would result in an inappropriate burden and hardship on Plaintiffs. Plaintiffs have been fighting this battle for over a year and are ready to prepare for trial in March 2023. As Plaintiffs previously cited in a prior motion to quash the deposition of Plaintiffs' counsel, Mr. Butler, "taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). *See* Doc. 43. Plaintiffs' counsel must be "free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Id.* Defendants SRC and IEA continue to do all they can to make this impossible.

Instead of defending their own case, SRC and IEA continue to burden Plaintiffs' time and the Court's resources with continuous and baseless attempts to divert attention from the real issues. *See Bank of America, N.A.*, 2014 WL 4851853 at *3 (The Court concluded the deposition of Attorney Dietrichs "would be cumulative and, due to his ongoing representation of GFB in this litigation, would unnecessarily cause prejudice and undue hardship to GFB."). There is no doubt that the deposition of Mr. Butler would cause prejudice and undue hardship to Plaintiffs.

**II.     The Motion to Amend the Scheduling Order is yet another attempt by defendants to delay the case and divert attention from their wrongful acts.**

Defendants have misrepresented to this Court the nature of prior discovery extensions, alleging that discovery was extended once at the request of Plaintiffs. That is simply not true.

Discovery was originally scheduled to expire March 7, 2022. Doc. 27 at 9. Then, less than two months prior to the first discovery deadline, Plaintiffs were compelled to agree to the first discovery extension because neither SRC nor IEA had made any meaningful response to Plaintiffs' written discovery requests. So on January 28, 2022, the parties jointly filed a consent motion, Doc. 31, and this Court granted the motion to extend discovery until June 21, 2022. Doc. 32.

The Court is familiar with Defendants' various tactics for delay. Only twelve days prior to the first extended discovery deadline of June 21, 2022, defendants asked for *twelve* more depositions. At the July 21, 2022 hearing, this Court extended the discovery deadline for a second time with limitations on depositions. Doc. 80. Now, defendants have requested *a third* discovery extension despite this Court's clear directive that discovery will not be extended again.[3]

Scheduling orders may only be modified for good cause. "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Ashmore v. Secretary, Dept. of Transp.*, 503 Fed.Appx 683, 685 (11th Cir. 2013). The Eleventh Circuit affirmed the denial of a motion to extend discovery where the district court had granted two previous extensions of the discovery period, and the movant waited three days before the discovery deadline to move for an extension. *Rowell v. Metropolitan Life Ins. Co.*, 579 Fed. Appx. 805, 807 (11th Cir. 2014). The Court also noted that the party moving for the extension did not make "a sufficient showing that additional discovery would have been critical to this case." *Id.*

---

[3] The Court has made this directive clear since the beginning of the case. Doc. 17, Rule 16 & 26 Order at 5 ("Multiple requests for extensions of the discovery period are strongly discouraged and will rarely be granted absent exceptional circumstances.").

There is nothing diligent about requesting a third discovery extension just three hours prior to the discovery deadline, much less "conferring" about document requests with counsel via email just twelve hours before the discovery deadline *and* while a deposition in the case was simultaneously occurring. Defendants have also failed to show how the depositions of lead counsel for Westwood and Plaintiffs would be critical to this case or their defense.

### III. There have been no deficiencies in Plaintiffs' Production.

At the July 21, 2022 hearing, the Court ordered Plaintiffs to produce their communications with Westwood. Due to Plaintiffs' lead counsel, James E. Butler, Jr., serving as lead counsel in a three-week products liability trial against Ford Motor Company, Plaintiffs sought and were granted an extension to produce the responsive documents to August 31, 2022 – because Plaintiffs' lead counsel was engaged in a trial in Gwinnett County from August 1 through August 19, and during preparation for and trial of that case Plaintiffs' lead counsel did not have time to re-review all the communications with Westwood counsel.

Plaintiffs' counsel timely produced their communications with Westwood counsel, including more than 250 emails, as well as attachments, and numerous text messages. *See* Exhibit G, 8/31/2022 Email from K. McCallister to All Counsel.

On the afternoon of September 14, 2022, *the last day of discovery and while a deposition in this case was simultaneously occurring*, SRC counsel asked Plaintiffs' counsel and Westwood counsel via email for documents that were alleged to be missing. In response, Plaintiffs promptly produced responsive documents – that same day. *See* Exhibit H, 9/14/2022 emails (a string of 6 emails). Plaintiffs also explained to SRC Counsel that the remaining documents mentioned in their final-day-of-discovery follow up email included either contracts between SRC/IEA and Westwood, which should have already been in their possession and were previously produced,[4] or documents produced to *all parties* several months ago. In response, Ms. Moss inexplicably stated "whether we actually have the documents or should have the documents is of no import." *See* Exhibit D, 09/14/2022 6:20 P.M. Email from SRC Counsel to Plaintiffs' Counsel. Ultimately, the documents were once again produced anyway. On September 20, 2022, a mere six days later (and only four business days later), defendant Westwood sent the documents that defendants SRC & IEA sought in their final-day-of-discovery follow up email, making the issue moot and cementing the fact that further discovery is completely unnecessary. *See* Exhibit E, 9/20/2022 12:15 P.M. Email from A. Pogorzelski to All Counsel. Counsel for SRC complained

---

[4] *See* Doc. 89-32 (SRC & IEA attach the very email from January 4, 2022 as an exhibit to their motion to compel where Westwood counsel produces copies of the contracts to all counsel in the case, including counsel for SRC and IEA).

14

about that, so two days later Westwood responded further. *See* Exhibit I, 9/22/2022 1:31 P.M. Email from A. Pogorzelski to All Counsel.[5]

A court must limit discovery if it is determined that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient" or the requesting party "has had ample opportunity to obtain the information by discovery in the action." Fed R. Civ. P. 2(b)(2)(C)(i)-(ii). SRC & IEA's manufactured discovery dispute over the production of documents is indeed cumulative, duplicative, and unnecessary as the documents requested were ones that the SRC & IEA defendants would have been in possession of themselves, documents that were previously produced to SRC & IEA, and documents that have now been reproduced to SRC & IEA. Discovery in this case should not waste any more of this Court's or the parties' time.

## IV. Further response to some of Movants' hyperbole.

Movants claim that "this Court has already found such information [the communications between Plaintiffs' and Westwood's counsel] relevant . . ." Doc. 89-1 at 15. There has been no such 'finding.' Notably, neither SRC nor IEA suggest *to what* issue to be tried those communications might be 'relevant.' It cannot be disputed that Plaintiffs and Westwood share the exact same interest in

---

[5] There were other email and letter communications by Westwood to SRC counsel; the exhibits hereto are but representative of the attempts by Plaintiffs and Westwood to satisfy the demands made by SRC counsel.

opposing the attempt by SRC and IEA to blame all of the disaster on Westwood – and that attempt is irrefutably contrary to the facts and the law. SRC as the owner/developer and the director of the damaging work, and IEA which did the damaging work, are principally responsible for the damages to Plaintiffs. It would be malpractice for Plaintiffs' counsel and Westwood counsel not to oppose the effort by SRC and IEA.

Movants claim they "have already been prejudiced by the collaboration between" Plaintiffs and Westwood. *Id.* Movants do not suggest *how* that could be, or why the efforts by Plaintiffs and Westwood to oppose SRC/IEA's effort to blame all on Westwood can result in a "prejudice" that entitles SRC/IEA to depose opposing counsel.

Movants represent that they "had no reason to suspect Plaintiffs and Westwood were working together in this matter until Plaintiffs and Westwood asserted a claim of privilege regarding their communications in their responses to SRC's and SLR's discovery requests." *Id.* at 17. That representation is demonstrably false. SRC and IEA have long known that Westwood refused to participate in the SRC/IEA attempt to blame "logging" for the problems Plaintiffs have endured. SRC and IEA have known since defendants' expert reports were served on December 31, 2021 that Westwood disagreed with the SRC/IEA attempt to offload all liability onto Westwood. Indeed, the expert report of Westwood

16

expert Jason Ball was harsh in its condemnation of SRC and IEA. It has been obvious from every deposition taken in this case that neither Plaintiffs nor Westwood joined with SRC and IEA in their attempt to blame all on Westwood. That Plaintiffs and Westwood had a shared interest in opposing the SRC/IEA attempt to blame all on Westwood was obvious to anyone. The entire reason SRC and its wholly owned subsidiary SRL sent the referenced discovery requests was because they knew Plaintiffs and Westwood had a shared interest.

Notably, defendants SRC and IEA have flat refused to produce to Plaintiffs any of the communications between their own counsel regarding their 'joint defense' efforts. But Plaintiffs have not filed a motion about that; it is time to get this case tried and over.

## Conclusion

Plaintiffs respectfully move this Court for an order denying defendant SRC and IEA's motion to compel the deposition of Plaintiffs' lead counsel and Plaintiffs' discovery responses and defendants' motion to modify the scheduling order for a third time. Defendants' unreasonable requests are simply further effort to shift attention from the fact that defendants have no defense at all to Plaintiffs' claims.

Respectfully submitted, this 26th day of September, 2022.

              */s/ James E. Butler, Jr.*
              JAMES E. BUTLER, JR.

Georgia Bar No. 099625
jim@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 877765
dan@butlerprather.com
CAROLINE E. WALKER
Georgia Bar No. 511349
caroline@butlerprather.com
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
T: (706) 322-1990 F: (706) 323-2962

C. FREDERICK OVERBY
Georgia Bar No. 555845
Fredoverby@overbylaw.com
OVERBY LAW OFFICE, P.C.
Post Office Box 1975
Columbus, Ga 31902
T: (706) 327-0300 F: (706) 320-0053

C. COOPER KNOWLES
Georgia Bar No. 426699
cknowles@cckfirm.com
LAW OFFICE OF C. COOPER KNOWLES, LLC
750 Hammond Drive
Building 12, Suite 200
Sandy Springs, GA 30328
T: (770) 668-2081

**ATTORNEYS FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I certify that, on September 26, 2022, I filed the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT IEA & SRC's MOTION TO MODIFY SCHEDULING ORDER AND MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system, which will automatically notify counsel of record.

*/s/ James E. Butler, Jr.*