IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

H&L FARMS LLC, SHAUN HARRIS, and      *
AMIE HARRIS,
                                     *
     Plaintiffs,
                                     *
vs.                                       CASE NO. 4:21-CV-134 (CDL)
                                     *
SILICON RANCH CORPORATION, *et al.*,
                                     *
     Defendants.
                                     *
_____

                      O R D E R

     Defendants were involved in the design and construction of
a solar farm facility on land that adjoined property that
Plaintiffs owned and resided upon.  Plaintiffs assert that
Defendants did not take adequate measures to prevent erosion
from the solar farm, which led to continuing pollution of
Plaintiffs' 21-acre fishing lake.  Defendants deny that their
conduct caused the pollution.  Presently pending before the
Court are seven summary judgment motions.  For the reasons set
forth below, the Court denies Plaintiffs' summary judgment
motions on their trespass claims (ECF Nos. 99 & 103), denies
both summary judgment motions on Infrastructure and Energy
Alternatives, Inc.'s second affirmative defense (ECF Nos. 100 &
122), grants in part and denies in part Plaintiffs' summary
judgment motion on Defendants' non-party fault theory (ECF No.
102), denies Westwood Professional Services Inc.'s summary

judgment motion except as to Plaintiffs' simple negligence claim (ECF No. 121), and denies Defendants' summary judgment motion (ECF No. 125) except to the extent that Plaintiffs are not allowed to recover "emotional distress" damages on their nuisance claim (but they may recover damages for "discomfort, annoyance, loss of peace of mind, and unhappiness").

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

The basic facts in this case are not complicated.[1]  H&L Farms, LLC is a Georgia limited liability company whose sole

---

[1] The Court spent considerable time sifting through the parties' lengthy, overly complicated statements of "material" facts to find a little grain among an abundance of chaff.

owners are Shaun and Amie Harris.  S. Harris Aff. ¶ 3, ECF No. 99-3.  H&L Farms purchased a 1,630 acre property from Kawikee Refuge, LLC on March 16, 2021 ("Property").  *Id.* ¶ 4.  The Harrises live in a house on the Property.  *Id.* ¶¶ 2, 6.  Silicon Ranch Corporation purchased property previously known as Kawikee Two, which is adjacent to and upstream from the Property.  Pls.' Mot. Summ. J. Attach. 8, Limited Warranty Deed, ECF No. 102-8; Pls.' Mot. Summ. J. Attach. 9, Topographical Map, ECF No. 102-9; S. Harris Aff. ¶ 9.  IEA Constructors, LLC ("IEA Constructors"), a wholly owned subsidiary of Infrastructures and Energy Alternatives, Inc. ("IEA Inc."), was retained to design and construct a solar farm facility on Silicon Ranch's land in Lumpkin, Georgia.  Westwood Professional Services, Inc. provided professional engineering services for the project.  Plaintiffs contend that Defendants' erosion controls were inadequate and that as a result significant amounts of silt and sediment from the solar farm facility regularly flow into the 21-acre fishing lake on the Property, polluting it.

Plaintiffs assert claims against all Defendants for nuisance, trespass, and negligence.  Plaintiffs also claim that Westwood was professionally negligent.  Plaintiffs seek compensatory damages, punitive damages, and injunctive relief from all Defendants.  Defendants deny that their conduct caused damage to Plaintiffs' property.

DISCUSSION

There are seven pending summary judgment motions. The Court attempts to address them in an organized manner. Here's the roadmap. First, the Court determines whether genuine fact disputes exist as to which entities are potentially liable for trespass (ECF Nos. 99, 102 & 103). Then, the Court evaluates the partial summary judgment motion brought by IEA Constructors, Silicon Ranch, and SR Lumpkin, LLC (ECF No. 125). Next, the Court decides the parties' cross-motions for summary judgment which raise the issue of whether IEA Inc. is a proper party in this action (ECF Nos. 100 & 122). Finally, the Court considers Westwood's partial summary judgment motion (ECF No. 121).

## I.  Which Entities Are Potentially "At Fault" for Plaintiffs' Injuries for Apportionment of Damages?

Plaintiffs assert that Silicon Ranch, IEA Inc., and IEA Constructors are liable for trespass as a matter of law. Defendants, on the other hand, argue that five non-parties contributed to the erosion and sedimentation that caused Plaintiffs' damages.[2] Therefore, they maintain that to the extent that they may be found liable, damages should be apportioned among the "at fault" parties. *See* O.C.G.A. § 51-12-33 (providing for apportionment of damages according to the percentage fault of each person or entity). Those non-parties

---

[2]  The notices of non-party fault were filed by IEA Inc., IEA Constructors, Silicon Ranch, and SR Lumpkin, LLC.

include four entities that were involved in harvesting timber from the Silicon Ranch property: Kawikee Two, LLC, American Forest Management, Inc., Interfor U.S., Inc., and Wayback Forestry, Inc. (collectively, "Timber Harvesters").   The fifth non-party upon whom Defendants cast blame is Kawikee Refuge, LLC.   Plaintiffs argue that the Court should find as a matter of law that none of the non-parties identified by Defendants contributed to their damages, and that the Court should find as a matter of law that there shall be no apportionment of damages between the named parties and the non-parties.   Consistent with this strategy, Plaintiffs ask the Court to find as a matter of law that the named party Defendants are liable for trespass.

The Court first addresses the apportionment issue as it relates to the non-parties. Defendants have the "burden to establish a rational basis for apportioning fault to a non-party." *Johnson St. Properties, LLC v. Clure*, 805 S.E.2d 60, 68 (Ga. 2017).   Generally, the question "whether the non-party contributed to the alleged injury is a question of fact for a jury." *Id.*   Plaintiffs argue that Defendants have no evidence to suggest that any of the non-parties contributed to Plaintiffs' injuries and that the present record would only permit a jury to conclude that Defendants are responsible for Plaintiffs' injuries.   The central facts on this issue are simple.   Kawikee Two, LLC sold the property for the solar

facility to Silicon Ranch.  As part of the sale, Kawikee Two and
Silicon Ranch had an agreement for Kawikee Two to access the
land to harvest timber after the closing.  Kawikee Two hired the
other Timber Harvesters to harvest and sell the timber.  The
timber harvesting began in November 2020 and concluded on March
15, 2021.  H&L Farms purchased the Property from Kawikee Refuge,
LLC on March 16, 2021.  Following a rain event on April 1, 2021,
Plaintiffs noticed muddy water in their 21-acre lake.  As
Defendants' site preparation and construction activities on
Silicon Ranch's property continued, more sediment was discharged
into the lake.  According to Plaintiffs' experts, Defendants did
not use adequate erosion controls.

The parties' summary judgment motions regarding
apportionment of damages first require the Court to determine
whether evidence exists in the present record from which a
reasonable jury could conclude that the conduct of the non-party
Timber Harvesters contributed to the pollution of Plaintiffs'
lake.  Defendants pointed to evidence that during the Timber
Harvesters' "silvicultural operations, nearly 100% vegetation
(trees and any understory) removal occurred and significant
areas of exposed soils were evident."  Mot. to Disqualify
Counsel Attach. 13, Tech. Mem. No. 21054.01 at 8 (Dec. 30,
2021), ECF No. 61-13.  According to Defendants' evidence, by the
end of February 2021, most of the upland portions of the land

for the solar farm facility "had been cut and contained exposed soils." *Id.* During that time, "elevated turbidity" (low water clarity) was evident in the lake on the Property. *Id.* From this evidence, a reasonable jury could conclude that the Timber Harvesters contributed to the creation or continuance of increased discharge of sediment from Silicon Ranch's property into Plaintiffs' lake. *See, e.g., Ingles Markets, Inc. v. Kempler*, 730 S.E.2d 444, 450 (Ga. Ct. App. 2012) (noting that an entity may be liable for nuisance/trespass if it is "the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance" (quoting *Sumitomo Corp. of Am. v. Deal*, 569 S.E.2d 608, 613 (Ga. Ct. App. 2002))).

While Plaintiffs have produced evidence from which a reasonable jury could conclude that Defendants' construction activities had a causal connection to the pollution of Plaintiffs' property and that Defendants were aware of the issue but did not take adequate steps to ameliorate it, that is not the only conclusion that the jury could reach from the evidence in the present record. A genuine factual dispute exists on this issue. And thus Defendants have established a rational basis for having a jury decide whether to apportion fault to the Timber Harvesters. Plaintiffs' summary judgment motion, which

seeks a holding that the non-party Timber Harvesters are not at fault as a matter of law (ECF No. 102), is denied.[3]

For similar reasons, Plaintiffs are not entitled to summary judgment on their claims against the named Defendants for trespass. Genuine factual disputes exist as to their liability and the extent of their fault. Accordingly, the Court denies Plaintiffs' summary judgment motions seeking to hold Silicon Ranch, IEA Inc., and IEA Constructors liable for trespass as a matter of law (ECF Nos. 99 & 103).

The remaining question is whether Defendants established a rational basis for concluding that Kawikee Refuge, LLC contributed to Plaintiffs' damages. Defendants contend that Kawikee Refuge failed to maintain the Property before it sold the Property to H&L Farms and that this alleged failure to maintain was a potential cause of Plaintiffs' damages.[4]  In support of this theory, Defendants point out that Plaintiffs' expert found sediment on the Property that was not from Silicon Ranch's property. But they did not point to sufficient evidence from which the jury could conclude that the sediment was on the Property *because* Kawikee Refuge failed to perform adequate

---

[3] The Court notes that Plaintiffs make no other arguments as to why the apportionment statute should not apply here.

[4] Defendants also contend that Kawikee Refuge did not receive the correct permit for the 21-acre lake to be used for recreational purposes and that the only intended purpose for the lake was an irrigation pond.  As discussed *infra* § II.F, there are genuine fact disputes on the intended purpose of the lake.

maintenance.   The Court thus finds that Defendants have failed to produce evidence from which a reasonable jury could conclude that non-party Kawikee Refuge was "at fault" for purposes of the apportionment statute.   No genuine factual dispute exists. Accordingly, Defendants have failed to demonstrate a rational basis for concluding that Kawikee Refuge contributed to Plaintiffs' damages.   For these reasons, the Court grants Plaintiffs' summary judgment motion as to the fault of non-party Kawikee Refuge (ECF No. 102).   The jury will therefore not be permitted to apportion fault to Kawikee Refuge, and Defendants shall not be able to argue that Kawikee Refuge is somehow responsible for Plaintiffs' damages.

## II. Are Defendants Entitled to Partial Summary Judgment on Any Issues?

Consistent with the modern-day litigation practice of "let's take a shot at getting the judge to throw out as much stuff as possible regardless of the likelihood of that shot hitting the mark," Defendants seek partial summary judgment on seven issues.[5]  Duty-bound to address the frivolous and the non-frivolous, the Court addresses each issue in turn.

### A.  Are Amie and Shaun Harris Proper Plaintiffs?

Defendants argue that Amie and Shaun Harris may not pursue any claims in this action because their limited liability

---

[5]  The partial summary judgment motion was filed by IEA Inc., IEA Constructors, Silicon Ranch, and SR Lumpkin, LLC.

company owned the Property, not them.  Ownership *or occupancy* of property "is a necessary element of a claim for nuisance under Georgia law." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1017 (11th Cir. 2004).  Defendants argue that because H&L Farms owns the Property and because the Harrises did not reside there until January 2022, the Harrises do not have standing to assert a nuisance claim.  "But Georgia law is clear that residence is not necessary for occupancy." *Oglethorpe Power Corp. v. Est. of Forrister*, 774 S.E.2d 755, 769 (Ga. Ct. App. 2015).  Rather, a person "may occupy a residence by holding it or keeping it for use." *Id.* at 770 (quoting *McIntyre v. Scarbrough*, 471 S.E.2d 199, 201 (Ga. 1996)).  Plaintiffs pointed to evidence that, when H&L Farms purchased the Property, it was the Harrises' intent to make improvements to the Property and reside there.  S. Harris Aff. ¶ 4.  They also pointed to evidence that the Harrises began remodeling a house on the Property shortly after the purchase and that they spent time at the Property "almost every day." *Id.* ¶ 5.  A jury could therefore conclude that the Harrises occupied the Property, so Defendants' summary judgment motion on this ground is denied.

### B.   Should the Jury Decide Punitive Damages?

Plaintiffs claim that punitive damages are warranted for Defendants' conduct and that attorney's fees should be awarded under O.C.G.A. § 13-6-11.  Defendants contend that there is no

evidence from which a jury can conclude that IEA Constructors acted with the requisite intent for punitive damages or an award of litigation expenses. "Punitive damages may be awarded in tort actions in which clear and convincing evidence proves that a defendant's 'actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'" *Tyler v. Lincoln*, 527 S.E.2d 180, 182 (Ga. 2000) (quoting O.C.G.A. § 51-12-5.1(b)). And litigation expenses under O.C.G.A. § 13-6-11 may only be awarded "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11.

Punitive damages are authorized for "a willful repetition of a trespass," for a "claim of continuing nuisance," or for "failure to adequately ameliorate the runoff of water and silt onto another's property." *Tyler*, 527 S.E.2d at 183. And, an intentional tort like trespass "invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." *Id.* (quoting *Ponce de Leon Condos. v. DiGirolamo*, 232 S.E.2d 62, 64 (Ga. 1977)). In *Tyler*, for example, the Georgia Supreme Court reversed the grant of summary judgment in favor of developers on the plaintiffs' claims for punitive damages and litigation expenses because

there was evidence that "the developers had not taken adequate soil erosion control measures" within their development; that the development's "drainage system was designed in a manner that would increase the runoff of storm water onto" the plaintiffs' property; and that the plaintiffs repeatedly asked the "developers to correct the problems, but failed to get them to take any action to remedy the situation and the ongoing damage." *Id.*

Here, pointing only to their own experts' testimony, Defendants contend that IEA Constructors took action to ameliorate the downstream impacts of their construction activities on Silicon Ranch's property. But there are clearly genuine fact disputes on the adequacy of the erosion controls, Defendants' knowledge of the continuing problems, and whether Defendants intentionally disregarded the continuing problems. Accordingly, a jury should decide whether IEA Constructors is liable for litigation expenses and punitive damages, including whether IEA Constructors acted with specific intent to harm Plaintiffs.

C.   Are the Negligence Claims Barred?

Defendants contend that Plaintiffs' negligence claims are barred *as a matter of law* because Plaintiffs voluntarily assumed the risks associated with buying property downstream from a

solar facility construction site.[6]   To prevail on an assumption of risk defense, a defendant "must establish that the plaintiff (1) had knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed herself to those risks." *Saulsbury v. Wilson*, 823 S.E.2d 867, 869 (Ga. Ct. App. 2019) (quoting *Gilreath v. Smith*, 797 S.E.2d 177, 180 (Ga. Ct. App. 2017)).   Defendants pointed to zero evidence that Plaintiffs *knew* and *fully appreciated* the possibility that Defendants would not take adequate measures to control erosion or that Defendants would not take action to fix problems once they came to light.   Simply being concerned about potential problems is not the same as fully understanding and appreciating the risks associated with a known danger. Defendants are not entitled to summary judgment on their assumption of the risk defense.

> ### D.   May H&L Farms Recover for Diminution in Value?

H&L Farms seeks diminution in value as the measure of damages on its trespass, nuisance, and negligence claims. Defendants point out that "diminution of fair market value is

---

[6] In support of this frivolous argument, Defendants rely on a case where an individual assumed a risk of injury as a matter of law when she *intervened in a dog fight with her bare hands*. *Saulsbury v. Wilson*, 823 S.E.2d 867, 869 (Ga. Ct. App. 2019).   They also rely on a case where a bank assumed the risk of making a loan for a developer to buy property even though the bank knew when it made the loan that the property had no legally enforceable right of access to a public road. *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1333 (11th Cir. 2013).

the measure of property damages for permanent nuisance and lost rental value is the measure of property damages for abatable nuisance." *City of Gainesville v. Waters*, 574 S.E.2d 638, 642 (Ga. Ct. App. 2002). Defendants contend that any nuisance they created is abatable, not permanent, and that the proper measure of damages is thus lost rental value of the Property. An abatable nuisance is one that is "can and should be abated by the person erecting or maintaining it." *Id.* at 643 (quoting *Ga. Power Co. v. Moore*, 170 S.E. 520, 522 (Ga. Ct. App. 1933)). In support of their argument that any nuisance here is abatable rather than permanent, Defendants point to their own expert's opinion that site stabilization is improving. But Defendants acknowledge that the impacts to Plaintiffs' lake will not improve unless and until there is full stabilization of the solar facility site, and there are genuine fact disputes on whether the erosion of sediment from Silicon Ranch's property into Plaintiffs' lake will continue under Defendants' current erosion control plan. Therefore, a jury must determine whether any nuisance is permanent or abatable.

Defendants argue that, even if diminution in value is the correct measure of damages, Plaintiffs do not have any evidence of diminution in value. That is false. Even if the Court were to exclude the expert testimony of Plaintiffs' real estate broker witness, an owner of property like Shaun Harris, the

owner and manager of H&L Farms, can testify about the diminution in value to his own property.  *See, e.g., Dep't of Transp. v. Into*, 464 S.E.2d 886, 887 (Ga. Ct. App. 1995) (stating that an owner of property is generally allowed to testify about the value of his own property).  Thus, a jury may decide whether H&L Farms is entitled to diminution in value damages, and Defendants' summary judgment motion on this ground is denied.

> E.   May Plaintiffs Recover Emotional Distress Damages?

The Harrises claim that they are entitled to emotional distress damages, among other elements of damage, on their nuisance claim.  Defendants assert that emotional distress damages are not recoverable on a nuisance claim.  Technically, Defendants are correct: while plaintiffs in a nuisance claim may recover for "discomfort and annoyance," such damages "in the context of nuisance is not a species of emotional distress, but a distinct element of nuisance damages." *Oglethorpe Power Corp.*, 774 S.E.2d at 767.  Defendants are entitled to summary judgment on this narrow issue.  So, while the Harrises may not recover "emotional distress" damages, they may recover damages for "discomfort, loss of peace of mind, unhappiness and annoyance" caused by a nuisance. *Id.* (quoting *City of Warner Robins v. Holt*, 470 S.E.2d 238, 241 (Ga. Ct. App. 1996)).  Genuine fact disputes exist on whether the Harrises experienced "discomfort," "annoyance," "loss of peace of mind," and/or

"unhappiness," so to the extent that Defendants seek summary judgment on this issue, the motion is denied.

F.   Should "Discomfort and Annoyance" Damages Be Limited?

Defendants argue that even though "discomfort and annoyance" damages are recoverable on a nuisance claim, the damages here should be limited as a matter of law because the lake on Plaintiffs' property was originally permitted as an irrigation lake, not a fishing lake.  But Defendants acknowledge that discomfort and annoyance damages are available when a property cannot be used for the purposes intended by its owner or occupier.  *Id.* at 769.  There is plenty of evidence from which a jury could conclude that the lake was intended to be used for recreation and fishing.  The jury may consider that evidence in determining the pre-damage value of the Property and in evaluating discomfort and annoyance damages.  Defendants' summary judgment motion on this issue is denied.

G.   Should Plaintiffs' Claim for Injunctive Relief Be Dismissed?

In addition to damages, Plaintiffs' complaint seeks injunctive relief.  Defendants contend that because Shaun Harris verified the contents of some but not all paragraphs in the complaint, Plaintiffs' claims for injunctive relief must be dismissed.  Georgia law requires that a petition for injunction "be verified positively by the petitioner *or supported by other*

*satisfactory proofs*."   O.C.G.A. § 9-10-110 (emphasis added).   If Plaintiffs submit satisfactory proof at trial, they may be entitled to injunctive relief.   Defendants are not entitled to summary judgment on this issue.

    H.   <u>Summary</u>

In summary, Defendants' summary judgment motion (ECF No. 125) is denied except on one narrow issue: Plaintiffs may not recover "emotional distress" damages on their nuisance claim.

**III. Is IEA Inc. a Proper Party?**

IEA Inc. argues that it is not a proper party in this action because its wholly owned subsidiary, IEA Constructors, was the construction contractor on the solar farm facility project.   IEA Inc. contends that there is no evidence that it participated in the project at all.   Plaintiffs, on the other hand, assert that the present record establishes that IEA Inc. was directly involved in the development of the solar farm facility and that IEA Inc. should not be allowed to argue otherwise.

Plaintiffs pointed to evidence that IEA Inc.'s senior vice president of solar construction operations, Joseph Broom, made a professional certification statement as the "Permittee," certifying that the erosion, sedimentation and pollution control plan for the solar facility project was prepared under his direction or supervision.   Pls.' Mot. Summ. J. Attach. 8, Civil

Constr. Plans § 2.1, ECF No. 100-8.  He also certified, "I will adhere to the Plan and comply with all requirements of this permit."  *Id.*  In this section of the construction plans, Broom's company is listed as "Infrastructure & Energy Alternatives, Inc."  *Id.*  Plaintiffs also point out that Broom is listed as the "Operator," who had primary, day-to-day operational control of construction site activities and responsibility for erosion control plan requirements.  *Id.* § 6.1.  In that section of the construction plans, though, Broom's company is listed as IEA Constructors, LLC.  *Id.*  IEA Inc. does not dispute that Broom was an executive officer of IEA Inc.  Rather, IEA Inc. asserts that Broom was an employee of IEA Management Services, Inc. *and* served as an executive officer of IEA Inc.  IEA argues that Broom's actions were not on behalf of IEA Inc.

The Court is satisfied that the present record permits the conclusion that Broom, an IEA Inc. executive officer, was involved in the day-to-day operations of the construction project on behalf of IEA Inc., including the erosion control plan.  Thus, a reasonable juror could conclude that IEA Inc., through its executive officer, was directly involved in the solar farm facility.  For these reasons, the Court finds that IEA Inc. is not entitled to summary judgment on Plaintiffs' claims against it, and IEA Inc.'s summary judgment motion (ECF

18

No. 122) is denied.   But the Court does not find that the present record *mandates* a conclusion that Broom acted on behalf of IEA Inc. (as opposed to IEA Constructors), so the Court denies Plaintiffs' summary judgment motion on this defense (ECF No. 100).   A genuine factual dispute exists for the jury to decide.

## IV.  Is Westwood Entitled to Partial Summary Judgment?

Westwood provided civil engineering construction plans for the solar facility site.   Those plans called for certain "best management practices" to control erosion.   Westwood acknowledges that genuine fact disputes exist on Plaintiffs' claims against it for professional negligence based on Westwood's construction plans.   Westwood, however, argues that it cannot be held liable under trespass, nuisance, or simple negligence theories.

Plaintiffs contend that Westwood is liable for nuisance and trespass because its faulty erosion control plan was a cause of the nuisance and trespass committed by the other Defendants.[7] Westwood argues that there is no evidence that it acted intentionally to cause a trespass or that it had any control over what the construction team did.   The Court, however, finds that the present record contains evidence from which jury could conclude that Westwood intentionally designed the solar facility

_____

[7] Westwood contends that Silicon Ranch and the IEA Defendants did not follow its plan, but there is a genuine fact dispute on this issue.

site to increase direct stormwater (and accompanying sediment) to Plaintiffs' Property. *E.g.,* Wellington Aff. 5, ECF No. 66-9 at 8. Thus, a reasonable jury could conclude that Westwood's conduct was a concurrent cause of the other Defendants' creation and maintenance of the conditions causing trespass and nuisance. If the evidence at trial does not bear this out, the Court will revisit the issue at trial after the Plaintiffs rest their case.

As to the simple negligence claim, Plaintiffs contend that Westwood negligently installed erosion control measures on the solar facility site. But the evidence Plaintiffs cite in support of this assertion is that Westwood employees inspected the site after construction began and provided the construction team with advice on how to troubleshoot problems with the erosion control measures. *E.g.,* Mlynek Dep. 243:22-244:1, ECF No. 115. This conduct is part of Plaintiffs' professional negligence claim against Westwood, not a separate simple negligence claim. Plaintiffs did not point to other conduct that would support a simple negligence claim, so Westwood is entitled to summary judgment on this narrow issue.

CONCLUSION

As discussed above, the Court denies Plaintiffs' summary judgment motions on their trespass claims (ECF Nos. 99 & 103), denies both summary judgment motions on IEA Inc.'s second affirmative defense (ECF Nos. 100 & 122), grants in part and

denies in part Plaintiffs' summary judgment motion on
Defendants' non-party fault theory (ECF No. 102), denies
Westwood Professional Services Inc.'s summary judgment motion
except as to Plaintiffs' simple negligence claim (ECF No. 121),
and denies Defendants' summary judgment motion (ECF No. 125)
except to the extent that Plaintiffs are not allowed to recover
"emotional distress" damages on their nuisance claim, but they
are entitled to seek damages for "discomfort, annoyance, loss of
peace of mind, and unhappiness." The Court terminates as moot
Westwood's motion to strike certain arguments in the briefs by
the other Defendants (ECF No. 153).

IT IS SO ORDERED, this 17th day of January, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA