IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

H&L FARMS LLC, SHAUN HARRIS, and      *
AMIE HARRIS,
                                      *
        Plaintiffs,
                                      *
vs.                                        CASE NO. 4:21-CV-134 (CDL)
                                      *
SILICON RANCH CORPORATION, *et al.*,
                                      *
        Defendants.
                                      *
_____
                                      *

O R D E R

This order memorializes the rulings the Court made at the pretrial conference and rules on remaining motions in limine that are pending before the Court.  In this Order, "IEA" means Infrastructure and Energy Alternatives, Inc. and IEA Constructors, LLC, and "SRC" means Silicon Ranch Corporation and SR Lumpkin, LLC.

**I.  IEA's *Daubert* Motion to Exclude Lee Walters (ECF No. 120).**

The Court conducted a *Daubert* hearing regarding the qualifications and methodology of Lee Walters, and the Court reviewed the supplemental briefing.  The Court finds that Walters is well qualified to offer opinions about impacts of the erosion to the marketability of Plaintiffs' property and why an appraisal may not adequately consider intangible measures of value.  But the Court finds that Walters did not establish that he used a reliable methodology for determining the post-erosion

fair market value of the property.  His methodology seemed to be that based on a gut feeling that the lake on Plaintiffs' property represents one-third of the value of the entire property.  Although this "gut feeling" was based on his extensive experience and may certainly be accurate depending on the particular emotional attachment of certain buyers to the lake, this is not the type of reliability required by Rule 702 and *Daubert.*  Accordingly, IEA's motion to exclude Walters is GRANTED to the extent that Walters shall not be permitted to offer an opinion on the amount of diminution in value caused by Defendants' conduct.  The motion is DENIED to the extent that Walters may still testify about the marketability of the property considering the damage to the lake.

**II.  IEA/SRC's *Daubert* Motion to Exclude Vance Smith (ECF No. 155).**

For the reasons explained during the pretrial conference, the motion to exclude Vance Smith is DENIED.

**III.  Westwood's Motion to Exclude Long Engineering Witnesses (ECF No. 166).**

For the reasons explained during the pretrial conference, the motion to exclude the Long Engineering witnesses is GRANTED.

**IV.  Westwood's Motion to Exclude Undisclosed IEA Employee Witnesses (ECF No. 168).**

For the reasons explained during the pretrial conference, the motion to exclude the Long Engineering witnesses is GRANTED.

**V.   Westwood's Motions to Exclude Erin Harris and Tony Greco (ECF Nos. 172 & 173)**

The motion to exclude these witnesses is GRANTED to the extent that Harris and Greco shall not be permitted to offer opinions on the standard of care applicable to professional engineers.  That is the focus of Westwood's motions—that Harris and Greco are not qualified to opine as to the standard of care for a professional engineer on a professional negligence claim, and the Court agrees that they are not.

To the extent that Westwood seeks to exclude other opinions from Harris and Greco, that motion is DEFERRED.  Harris and Greco are qualified to offer opinions on matters within their expertise as wetland scientists and erosion sediment control professionals.  The question remains, however, as to whether that testimony is relevant.  Since Plaintiffs' only surviving claim against Westwood is for professional engineering negligence, it appears that this non-engineering expert testimony would only be relevant as it relates to apportionment of fault under O.C.G.A. § 51-12-33.  While "fault" under this statute does not necessarily mean liability, it seems that for apportionment to apply here Plaintiffs would at a minimum need to have a theoretically cognizable claim against Westwood, even if it has not been asserted.  So if Plaintiffs here would not have a recognized cause of action against Westwood for design

3

negligence that can be proven without professional engineer-based expert testimony, it appears that the only basis for apportioning fault would be to establish that Westwood committed professional engineering negligence. And if that is the case, the Court is confused as to how the testimony of these experts, who are not qualified to give such testimony, is relevant. But if Plaintiffs would have a cognizable claim against Westwood for design negligence that does not require a showing of professional engineer negligence, then perhaps a jury could find Westwood to be at fault for apportionment purposes even without finding it responsible based on professional engineering negligence. Given the novelty of this issue and the confusion created by the previous briefing, the Court directs any party who has a dog in this fight to file a supplemental brief no longer than ten pages at least two weeks prior to trial addressing this specific narrow issue.

## VI.  **Westwood's Motion in Limine (ECF No. 174)**

Westwood's motion in limine has twelve parts.

1. *"Mention of Insurance Carriers"*

The motion is GRANTED to the extent that evidence of insurance cannot be used to prove wrongful conduct. Fed. R. Evid. 411. But such evidence is admissible if it is used for another purpose, "such as proving a witness's bias or prejudice or proving agency, ownership, or control." *Id.* To the extent the

motion seeks to exclude evidence of liability insurance for a purpose permitted under Rule 411, it is DENIED.

   2.   *"Arguments by Counsel as to Personal Beliefs of a Witness's Credibility."*

This motion is GRANTED to the extent that counsel cannot vouch for a witness's credibility.

   3.   *"Demonstrative Evidence Should Not Go to Jury Room."*

This motion is GRANTED to the extent that only exhibits that are admitted as evidence shall go to the jury room.

   4.   *"Use of the 'Golden Rule.'*

This motion is GRANTED to the extent that the lawyers should not ask the jury to place themselves in a party's position.

   5.   *"Ordinary or simple negligence claims against Westwood."*

The Court previously granted this motion in light of the Court's summary judgment ruling. *See* Order 2 (Jan. 26, 2023), ECF No. 196.

   6.   *"Expert opinions that were not disclosed in discovery."*

Westwood did not seek to exclude a specific expert opinion, so the Court cannot determine whether evidence should be excluded or not based on the present record. If a witness tries to offer a new expert opinion that was never disclosed, Westwood should object. This motion is DEFERRED.

7.   *"Documents not produced in discovery."*

This motion focuses on certain documents generated by Long Engineering.   This motion is GRANTED to the extent that Long Engineering's documents that were not disclosed during discovery shall not be permitted; at the pretrial conference, the Court excluded the late-disclosed expert opinions of Long Engineering.

8.   *"Other malpractice actions against Westwood."*

Westwood contends that evidence of other malpractice actions against it should be excluded under Federal Rules of Evidence 401 and 404.   SRC and IEA summarily argue that the conduct at issue in other malpractice actions is substantially similar to Westwood's conduct here and that the other actions prove a course of conduct of drafting flawed engineering plans. SRC and IEA did not argue that other malpractice actions against Westwood are admissible for a purpose permitted under Rule 404(b) or point to authority that similar acts evidence is admissible in a professional negligence case under the circumstances presented here.   The Court thus finds that the other malpractice actions should not be admitted.   This motion is GRANTED.

9.   *"Using depositions in opening."*

Westwood objects to using depositions during opening statements.   This motion is DENIED, though the parties are reminded that they must have a good faith belief that any

evidence presented to the jury during opening statements will be admitted at trial.

10. *"Relative wealth of parties."*

Westwood seeks to preclude evidence of its financial condition. There is no punitive damages claim against Westwood, so the motion to exclude evidence of Westwood's financial condition is GRANTED.

11. *"Testimony or argument about 'best practices.'"*

The Court previously deferred ruling on this motion. *See* Order 3 (Jan. 26, 2023), ECF No. 196.

12. *"Subsequent Remedial Measures."*

Westwood objects to any evidence that the other Defendants plan to redesign the solar farm site; Westwood contends that this evidence is an inadmissible subsequent remedial measure under Federal Rule of Evidence 407. The point of Rule 407 is to exclude a party's subsequent remedial measures as proof of fault by that party. Such evidence is admissible for other purposes, of course. Moreover, Westwood is not seeking to exclude *its* subsequent remedial measures; it wants the Court to preclude evidence of what other parties did. The Court is not convinced that such evidence is impermissible under Rule 407. This motion in limine is DENIED. Although the Court has excluded the Long Engineering witnesses and documents, the Court stated that it would allow a stipulation or evidence that Silicon Ranch/IEA

have hired an engineering firm to work on stabilizing the solar farm site.

**VII. Plaintiff's Motion in Limine (ECF No. 177)**

Plaintiffs' motion in limine has thirteen parts.

    1.    *"Allegations about a non-existent 'permit' and limitations on uses of the Harris[es]' lake."*

Defendants argue that Plaintiffs' lake was not intended to be a recreational fishing lake and was only permitted as an irrigation pond. At summary judgment, the Court concluded that there was evidence from which the jury could conclude that the lake was intended to be used for recreation and fishing, so there is a fact question on the intended purpose for the lake. Plaintiffs now ask the Court to prevent Defendants from arguing that the lake was only permitted to be an irrigation pond and that the only intended purpose was an irrigation pond. Plaintiffs did not seek summary judgment on this issue.

This motion is GRANTED to the extent that Defendants may not argue that there was a "permit" that *only* allowed an irrigation pond. The exhibit Defendants refer to as a permit is a letter from a senior project manager with the U.S. Army Corps of Engineers in response to Kawikee Refuge's request for authorization "to construct an irrigation pond." Defs.' Mot. Summ. J. Ex. 16, Letter from T. Fischer to D. Snipes (May 1, 2007), ECF No. 125-17. The letter stated that the "farm pond"

was "exempt from the Department of the Army authorization" as long as "normal flows" were maintained and placement of fill material was "limited to dam or berm construction." *Id.* This evidence may be admissible if Plaintiffs dispute that they planned to use the pond for irrigation in addition to recreational purposes, but it does not establish that irrigation was the only purpose for the pond. The Court does exclude the opinions of Defendants' experts that the lake as constructed potentially violates the Clean Water Act. The Court finds that such evidence is not relevant, and to the extent it has some minimal relevance, its probative value is substantially outweighed by the dangers of unfair prejudice and confusion of the issues and is thus not admissible under Rule 403.

The motion is DENIED to the extent that Defendants are permitted to introduce evidence that Kawikee Refuge sought permission from the Corps of Engineers to construct an "irrigation reservoir." Defs.' Mot. Summ. J. Ex. 15, Letter from D. Pope to T. Fischer (Feb. 19, 2007), ECF No. 125-16. This evidence is relevant to the intended use for the pond.

2. *"Allegations that logging on the SRC property caused erosion that caused damage to Plaintiffs' property."*

The Court previously denied this motion. *See* Order 3 (Jan. 26, 2023), ECF No. 196.

3. *"Allegations that muddy conditions on the county road called Moreland Adams Road suggests erosion caused by logging in the watershed upstream from Plaintiffs' property."*

A landowner with property adjoining SRC's complained about the Kawikee Two loggers in February of 2021. The landowner lived on a dirt road called Mooreland Adams Road and complained that the logging trucks were tearing up the road in a way that prevented delivery trucks from coming to his house. Defs.' Mot. Disqualify Counsel Ex. M, Email from C. Echols to J. Wooten (Feb. 12, 2021), ECF No. 61-14. Based on the evidence Defendants pointed to, the central concern was about access for the neighbor's property, and the issue was resolved by altering the logging trucks' route. Defs.' Mot. Disqualify Counsel Ex. N, Email from S. Burdette to C. Echols (Feb. 22, 2021), ECF No. 61-15. The Court cannot tell from the present record whether the February 2021 damage to Mooreland Adams Road is relevant to the claims and defenses in this action. The Court DEFERS ruling on this motion. Before Defendants may introduce evidence of the road damages, they must make a proffer to Court establishing that such evidence is relevant.

4. *"Argument or insinuation that IEA had no direct involvement in the development of the Lumpkin solar facility."*

The Court previously deferred ruling on this motion. *See* Order 2 (Jan. 26, 2023), ECF No. 196.

5.  *Allegations that Mr. and Mrs. Harris 'assumed the risk.'"*

The Court previously granted this motion.  *See* Order 2 (Jan. 26, 2023), ECF No. 196.  The Court found that Defendants pointed to "zero evidence that Plaintiffs *knew* and *fully appreciated* the possibility that Defendants would not take adequate measures to control erosion or that Defendants would not take action to fix problems once they came to light."  *H&L Farms LLC v. Silicon Ranch Corp.*, No. 4:21-CV-134 (CDL), 2023 WL 221508, at *5 (M.D. Ga. Jan. 17, 2023).  The Court thus concluded that Defendants were not entitled to summary judgment on their assumption of the risk defense.  Given this ruling—that Defendants pointed to no evidence to establish the essential elements of the defense—no genuine fact dispute remains to be tried on the defense, and Defendants shall not be permitted to pursue it at trial.  Plaintiffs' motion to preclude argument on this issue is GRANTED.

6.  *Allegations that Plaintiffs' lead counsel refused to testify as a witness."*

The Court previously granted this motion.  *See* Order 2 (Jan. 26, 2023), ECF No. 196.  The Court concluded that Plaintiffs' counsel, Jim Butler, would not be required to testify and should not be disqualified.  *See* Hr'g Tr. 6:2-7:9 (July 21, 2022), ECF No. 84.  Any suggestion that Mr. Butler refused to testify would be inappropriate; the motion to exclude such argument is GRANTED.

7.   *"Allegations about the private financial matters of Kawikee Two LLC, Kawikee Refuge LLC, and of Butler and Wooten."*

For the reasons explained during the pretrial conference, evidence of the private financial matters of Kawikee Two LLC, Kawikee Refuge LLC, Jim Butler, and Joel Wooten is irrelevant, so the motion to exclude it is GRANTED.

8.   *"Allegations that Butler and Wooten concealed things from Mr. and Mrs. Harris."*

The Court previously granted this motion.  *See* Order 2 (Jan. 26, 2023), ECF No. 196.  The Court ruled that Defendants demonstrated no basis for apportionment of fault to Kawikee Refuge, which sold the Property to H&L Farms.  *H&L Farms LLC*, 2023 WL 221508, at *3.  The question whether the Property's seller—including the two members of Kawikee Refuge—made certain disclosures to the buyers is not relevant to the issues remaining for trial.  The motion to exclude such evidence is GRANTED.

9.   *"Allegations stemming from private communications between Plaintiffs' counsel and Westwood counsel."*

The Court previously granted this motion.  *See* Order 2 (Jan. 26, 2023), ECF No. 196.  The Court concluded that communications between Plaintiffs' counsel and Westwood's counsel are irrelevant to the claims and defenses in this action.  *See* Hr'g Tr. 58:10:59:6 (Sept. 27, 2022), ECF No. 104. The motion to exclude such evidence is GRANTED.

10. *"Allegations about or use of any documents inadvertently produced by Plaintiffs' counsel and 'clawed back.'"*

Plaintiffs contend that non-parties Kawikee Two LLC and Kawikee Refuge LLC inadvertently produced privileged documents to SRC and IEA in December 2021. When Plaintiffs discovered the inadvertent disclosure during a deposition in June 2022, Plaintiffs' counsel objected to the use of the documents and asked IEA to stop using the documents during the deposition. Plaintiffs did not point to any evidence that they took other steps to rectify the disclosure. Under Federal Rule of Evidence 502(b), the inadvertent disclosure of privileged documents does not operate as a waiver if the holder of the privilege "promptly took reasonable steps to rectify the error."

Here, Plaintiffs did not point to any evidence that either Kawikee Two LLC or Kawikee Refuge LLC took reasonable steps to rectify the error. Although Plaintiffs argue that the LLCs objected to use of the documents during a deposition, they did not point to evidence that they took any other action, such as sending IEA a clawback letter. The two LLCs also did not ask the Court to resolve the issue promptly after the inadvertent disclosure occurred. Instead, they waited more than seven months to bring the matter to the Court's attention, and they still did not provide the Court with a copy of the documents so the Court could evaluate the privilege claims. For all these

reasons, the Court finds that the two LLCs waived any privilege as to Defendants' exhibits 026, 043, 061, 072, 144, 146, 149, 200, 249, and 289.  This motion in limine is therefore DENIED. In reaching this conclusion, the Court has not made any determination about the relevance of these documents.

> 11. *Testimony or argument regarding the environmental benefits of solar power or clean energy."*

The Court DEFERS ruling on this motion.  Defendants shall not be precluded from eliciting testimony regarding the purpose of the solar facility, but Defendants shall not be permitted to present duplicative or cumulative evidence on the benefits of solar energy.  If Defendants attempt to present duplicative or cumulative evidence on the benefits of solar energy, Plaintiffs should object.

> 12. *"Testimony or argument regarding the economic benefits to the nation, state, or local areas from the production of solar energy."*

The Court DEFERS ruling on this motion.  Defendants shall not be precluded from eliciting testimony regarding the purpose of the solar facility, but Defendants shall not be permitted to present duplicative or cumulative evidence on the economic benefits of their solar site.  If Defendants attempt to present duplicative or cumulative evidence on the economic benefits of their solar site, Plaintiffs should object.

13. "*Purchases by Shaun Harris and others of 'outparcels' owned by Kawikee Two LLC.*

The Court DEFERS ruling on this motion.  It is not clear from the present record whether this evidence is relevant to the claims or defenses in this action.  Before Defendants may introduce evidence regarding the outparcels, they must make a proffer to the Court establishing that such evidence is relevant.

## VIII.   IEA/SRC's Motion in Limine re Expert Testimony (ECF No. 179)

### A.   Plaintiffs' Expert Erin Bouthillier.

The Court previously deferred ruling on this motion.  *See* Order 3 (Jan. 26, 2023), ECF No. 196.

### B.   Plaintiffs' Expert Les Ager.

This motion is deferred.  The Court assumes that counsel will not attempt to introduce testimony beyond the expertise of the witness.  The Court will operate the trial in a manner that minimizes duplication.

## IX.   IEA/SRC's Motion in Limine re Brian Wellington (ECF No. 180)

The Court previously deferred ruling on this motion.  *See* Order 3 (Jan. 26, 2023), ECF No. 196.

## X.   IEA's Motion in Limine re "Retention of Law Firms and Alleged Misconduct During Discovery" (ECF No. 182).

IEA wants the Court to exclude evidence that the IEA attorneys employed multiple lawyers and firms during this

litigation.   Such  evidence  is  irrelevant,  so  this  motion  is
GRANTED.   This  ruling  shall  not  preclude  Plaintiffs  from
introducing  relevant  correspondence  from  IEA's  prior  counsel.
IEA  also  wants  to  exclude  evidence  of  alleged  attorney
misconduct  during  discovery;  this  portion  of  the  motion  is
GRANTED.

**XI.  IEA/SRC's Motion in Limine re Defendants' Financial Status
(ECF No. 183)**

This  motion  is  GRANTED  to  the  extent  that  evidence  of  IEA
and  SRC's  financial  condition  shall  not  be  introduced  in  Phase
I.   The  motion  is  DENIED  to  the  extent  that  if  the  jury
concludes  during  Phase  I  that  Plaintiffs  are  entitled  to
punitive  damages  from  SRC  or  IEA  or  both,  then  the  financial
condition  of  these  Defendants  will  be  admissible  during  Phase  II
(punitive  damages  amount).   Defendants'  request  to  limit  the
evidence  to  Defendants'  financial  condition  *in Georgia*  is  also
DENIED.   The  conduct  that  would  be  punished  occurred  in  Georgia,
which  has  a  strong  interest  in  deterring  environmental  pollution
and  protecting  rights  of  property  owners.   *Johansen  v.
Combustion  Eng'g,  Inc.*,  170  F.3d  1320,  1333  (11th  Cir.  1999).
One  factor  for  the  jury  to  consider  in  setting  the  amount  of
punitive  damages  is  the  profitability  of  the  wrongdoing—which
would  be  limited  to  the  wrongdoing  at  issue  here.   But  another
factor  is  the  financial  circumstances  of  the  defendant,  which  is

relevant because part of the point of punitive damages is to deter future bad conduct.

## XII. IEA/SRC's Motion in Limine re "Evidence of and Reference to Unrelated Affiliate Companies and/or the use of Derogatory Terms Referring to Defendants" (ECF No. 184)

IEA and SRC ask the Court to preclude Plaintiffs from presenting evidence of unrelated affiliate companies. This motion is DEFERRED. IEA and SRC did not clearly explain which affiliate companies are unrelated. The jury will have to determine which entities did what.

IEA and SRC also wants to prevent Plaintiffs from calling certain Defendants "shell companies" during the trial. The Court DEFERS ruling on this motion. If there is evidence that any of the defendants is a shell corporation (a corporation with no active business that exists only in name as a vehicle for another company's business operation), then Plaintiffs shall not be precluded from using the term "shell company."

## XIII. IEA/SRC's Motion in Limine re "Evidence of and Reference to Non-Lumpkin Solar Facilities and Sites" (ECF No. 185)

This motion is DENIED to the extent that Plaintiffs may use photographs of the entrance signage at other facilities to show a connection between affiliated companies, but it is otherwise GRANTED. If Plaintiffs contend that SRC and IEA open the door such that additional evidence of other solar facilities is

relevant, they shall raise the issue with the Court, outside the jury's presence, before referencing such evidence.

## XIV. IEA/SRC's Motion in Limine "To Exclude Photographs and Videos Taken Illegally and Without Permission" (ECF No. 186)

Defendants seek to exclude photographs of non-Lumpkin solar sites and photographs of the Lumpkin solar site that they contend were taken without permission. This motion is GRANTED to the extent that Plaintiffs shall not be permitted to offer photographs of non-Lumpkin solar sites other than the entrance signage discussed above. The motion is otherwise DENIED.

The present condition of the Lumpkin solar site and Plaintiffs' property is certainly relevant, and the parties agreed at the pretrial conference that photographs and videos up until the time of trial should be permitted. SRC, though, objects to the aerial photographs and videos that Plaintiffs took of the Lumpkin solar site without first SRC's seeking permission. SRC has since declined to allow Plaintiffs to fly drones over the Lumpkin solar site to document the present conditions of the solar site, and SRC has not proposed any solution (such as having an agreed-upon photographer take aerial photographs of the solar site under specified conditions).

SRC argues that the aerial photographs and videos Plaintiffs already took should be excluded because the photographer violated Georgia law in taking them. First, SRC

contends that the photographer violated Georgia's surveillance statute, which makes it unlawful for a person to use a device to photograph or record "the activities of another which occur in any private place and out of public view." O.C.G.A. § 16-11-62(2). The statute also makes it unlawful for a person "to go on or about the premises of another or any private place . . . for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities." O.C.G.A. § 16-11-62(3).[1] The term "private place" means "a place where there is a reasonable expectation of privacy." O.C.G.A. § 16-11-60(3). SRC did not point to evidence that the drone photographer photographed or recorded any activities that occurred in a "private place and out of public view." O.C.G.A. § 16-11-62(2). SRC also did not point to evidence that the drone photographer went onto SRC's premises for the purpose of secretly observing SRC's activities. Accordingly, the Court finds that SRC has not established that Plaintiffs obtained the photographs in violation of O.C.G.A. § 16-11-62, and the photographs shall not be excluded on this ground.

Second, SRC argues that the drone photographer violated Georgia's criminal trespass statute, which provides that a

---

[1] Evidence obtained in violation of this statute is not admissible in Georgia courts except to prove violations of the statute. O.C.G.A. § 16-11-67.

person commits the offense of criminal trespass when he "knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person." O.C.G.A. § 16-7-21(a). SRC points out that the owner of real property's rights extend "downward indefinitely and upward indefinitely." O.C.G.A. § 44-1-2(b). But trespass only occurs if there is an *interference* with the property owner's rights. *See* O.C.G.A. § 16-7-21(a). In Georgia, it is legal to fly an aircraft over land unless the flight is at such a low altitude that it interferes with the owner's "then existing reasonable use" of the land or is "imminently dangerous to persons or property lawfully on the land or water beneath." O.C.G.A. § 6-2-5; *cf. Thrasher v. City of Atlanta*, 173 S.E. 817, 825 (Ga. 1934) (suggesting that whether flight over land constitutes trespass depends on the circumstances, including the altitude and the height of structures and trees on the land). SRC did not point to any authority that an aircraft flight over its property interfered with its rights in the circumstances presented here, where SRC presented no evidence that the photographer flew the drone in a manner that accessed any private place that was out of public view, invaded SRC's privacy by secretly observing their activities, or captured images that would not have been visible to a passenger in a small airplane

legally flying over SRC's property.[2]   Accordingly, SRC has not established that the drone photographer committed criminal trespass, and the photographs shall not be excluded on this ground.

**XV.  IEA/SRC's Motion in Limine re "Evidence of and Reference to Insurance" (ECF No. 187)**

The motion is GRANTED to the extent that evidence of insurance cannot be used to prove wrongful conduct.  Fed. R. Evid. 411.  But such evidence is admissible if it is used for another purpose, "such as proving a witness's bias or prejudice or proving agency, ownership, or control." *Id.* To the extent the motion seeks to exclude evidence of liability insurance for a purpose permitted under Rule 411, it is DENIED.

CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part ECF No. 120; denies ECF No. 155; grants ECF No. 166; grants ECF No. 168; grants in part and defers in part ECF No. 172; grants in part and defers in part ECF No. 173; grants in part, denies in part, and defers in part ECF No. 174; grants in part, denies in part, and defers in part ECF No. 177; defers ECF No. 179; defers ECF No. 180; grants ECF No. 182 to

---

[2] Obviously, the Court is *not* concluding that it would be legal in all circumstances to fly a drone over another's property and take photographs without the owner's permission.  Flying a drone over a neighbor's privacy fence to take photos of skinny-dipping neighbors, for example, may violate Georgia law.  But here, SRC did not demonstrate that the areas Plaintiffs photographed were intended to be private and out of public view.

the extent set forth in this Order; grants in part and denies in part ECF No. 183; defers ECF No. 184; grants in part and denies in part ECF No. 185; grants in part and denies in part ECF No. 186; and grants in part and denies in part ECF No. 187.

At trial, if any party attempts to introduce evidence that the Court has excluded, counsel should nevertheless object given the possibility that the circumstances at trial may be different from those presented at the time of consideration of the motions in limine.

IT IS SO ORDERED, this 7th day of February, 2023.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA