IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| H & L FARMS, LLC; <br> SHAUN HARRIS and AMIE HARRIS, <br> <br> Plaintiffs, <br> <br> v. <br> <br> SILICON RANCH CORPORATION; <br> SR LUMPKIN, LLC; INFRASTRUCTURE <br> AND ENERGY ALTERNATIVES, INC.; <br> IEA CONSTRUCTORS,    LLC; and, <br> WESTWOOD PROFESSIONAL <br> SERVICES, INC., <br> <br> Defendants. | CIVIL ACTION FILE <br> <br> NO. 4:21-CV-00134-CDL |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING
APPORTIONMENT FOR NEGLIGENCE CLAIMS**

## I.   Introduction

In its February 7, 2023 Order considering the relevance of expert testimony of Erin Harris and Tony Greco, the Court directed the parties to file a supplemental brief on the "specific narrow issue" of apportioning fault against defendant Westwood Professional Services, Inc. ("Westwood") for its negligence under O.C.G.A. § 55-12-33 and damages caused by the discharge of polluted stormwater from the Lumpkin Solar Facility ("LSF") construction site and into Plaintiffs' lake.  The Court should find that Westwood's negligence can and should be imputed to Westwood's employers, SRC and IEA, who have non-delegable duties under Georgia law.

As set forth by statute and the applicable permit for the LSF (the "General Permit"),[1] the "primary permittee" for a site has the duty to prevent the discharge of pollutants from the LSF construction site and into waters of the State of Georgia. The "primary permittee" has the duty to ensure that erosion control measures are properly designed, installed, and maintained. The "primary permittee" also has the duty to obtain, submit, and certify an erosion control plan.

In this case, defendant Silicon Ranch Corporation ("SRC") and defendant Infrastructure and Energy Alternatives, Inc ("IEA") are the primary permittees of the LSF and they are the employers of Westwood. Since SRC and IEA are the primary permittees for the site and employers of Westwood, they are liable for Westwood's negligence for violations of non-delegable duties imposed by statute. Therefore, any fault attributable to Westwood for its negligence can and should be imputed to SRC and IEA. They should be prohibited from blaming Westwood for their failure to comply with Georgia law.

## II.     Facts

Defendant SRC, through its sham corporation SR EPC, contracted with defendant IEA Constructors ("IEAC") "for the purpose of constructing and operating" the LSF. Doc. 101-9 at 5. Defendant SRC guaranteed the contract on behalf of SR EPC, and defendant Infrastructure and Energy Alternatives, Inc. ("IEA Inc.") guaranteed the contract on behalf of defendant IEAC. Doc. 101-6; Doc. 101-7. IEA, through IEAC, then contracted with defendant Westwood to prepare civil drawings for grading and drainage and to create the erosion and sediment control plan.

---

[1] The State of Georgia National Pollutant Discharge Elimination System General Permit for Storm Water Discharges Associated with Construction Activity for Stand Alone Projects.

SRC is the owner of the land upon which defendants constructed the LSF. *See* SRC's Answer, Doc. 12, ¶¶ 6, 12; *see also* Doc. 100-6 (defining "Owner" as Silicon Ranch Corporation); Doc. 140-1, ¶ 7 (Defendant SRC's Resp. to Pl.s' Statement of Undisputed Facts). The defendants' construction activities at the LSF are governed by the General Permit. *See* Doc. 171, Order at 17-18; Doc. 140-1, ¶ 8. The General Permit, established by statute, incorporates the provisions of the Georgia Water Quality Control Act, the Georgia Erosion and Sedimentation Control Act, the Federal Clean Water Act, and the rules and regulations promulgated pursuant to each of these acts. *See* Doc. 130-5, p. 3 of 48.

Under Part V.A. of the General Permit, titled "Duty to Comply", "[e]ach permittee must comply with all applicable conditions of this permit," and any "permit noncompliance constitutes a violation of the Georgia Water Quality Control Act (O.C.G.A. §§ 12-5-20, et seq.)". Doc. 130-5, at p. 40 of 48. In addition, that section of the General Permit states that a '[f]ailure of a primary permittee to comply with any applicable term or condition of this permit shall not relieve any other primary permittee from compliance with their applicable terms and conditions of this permit." *Id*. The General Permit defines "Primary Permittee" as "the Owner or the Operator or both of a tract of land for a construction site subject to this permit." *Id*. at p. 9 of 48.

The General Permit defines "Owner" as "the legal title holder to the real property on which is located the facility or site where construction activity takes place." *Id*. at p. 8 of 48. There is simply no dispute that defendant SRC is the "owner" of the LSF as defined by the General Permit. Consequently, SRC is the Primary Permittee. The SRC/IEA testifying expert witness Erin Harris confirmed this:

   A: The owner is also the primary permittee who has a responsible official or somebody that is responsible for ensuring that the site remains in compliance with the General Permit.
   Q: You used the word primary permittee. Did I hear you say that?
   A: That's right.

> Q: What does that mean?
> A: The primary permittee can be the owner or the operator. Again, they are the entity or individual that would be responsible for compliance with the general permit.

Doc. 112, Erin Harris Depo., p. 12:4-15.

> Q: In this case or project, you're telling me that Silicon is the primary permittee – permittee?
> [Objection]
> Q: Is that your understanding of things?
> A: Yes. They are the owner.

*Id.* at 12:24 – 13:8.

> Q. And so, in your opinion then, the Silicon entity as owner is responsible for ensuring that the terms and conditions of the permit are all met?
> MS. MOSS: Object to the form. Calls for a legal conclusion.
> Q. You can answer, ma'am.
> A. That is the definition of the primary permittee or the owner, yes.

*Id.* at 14:4-12.

The General Permit defines "Operator" as "the entity that has primary day-to-day operational control of those activities at the construction site necessary to ensure compliance with Erosion, Sedimentation and Pollution Control Plan requirements and permit conditions." Doc. 130-5, p. 8 of 48. Defendant IEA is the "Operator" as defined by the General Permit. In fact, this Court held that "[Joseph] Broom is listed as the "Operator," who had primary, day-to-day operational control of construction site activities and responsibility for erosion control plan requirements. … The Court is satisfied that the present record permits the conclusion that Broom, an IEA Inc. executive officer, was involved in the day-to-day operations of the construction project on behalf of IEA Inc., including the erosion control plan." *See* Doc. 171 at 17-18; *see also* Doc. 112, Erin Harris Dep., p. 7:1-5 ("It is my understanding that IEA was the operator of the site, and they were in control of the day-to-day activities, as far as implementing BMPs that were specified in the erosion control plan.")

Defendant Westwood is not a "primary permittee" as defined by the General Permit. Instead, defendant Westwood is the "design professional" hired by the primary permittees. Westwood was negligent in this case. Westwood's design plans were deficient, fell below the standard of care for design engineers, and led to discharge of pollutants from LSF and into Plaintiffs' lake. Still the General Permit, and the federal and state laws authorizing it, place the responsibility for complying with all relevant conditions of the General Permit solely upon the Primary Permittees.

The General Permit puts responsibility for its compliance on the Primary Permittee. The General Permit requires the Primary Permittee to provide a certification that "the Erosion, Sedimentation and Pollution Control Plan (Plan) was prepared by a design professional, as defined by this permit … and that **I will adhere to the Plan and comply with all requirements of this permit**." *Id*. at p. 15 of 48, ¶ g (emphasis added).[2]  "Whenever a permittee finds that a BMP has failed or is deficient (beyond routine maintenance) and has resulted in sediment deposition into waters of the State, **the permittee** shall immediately take all reasonable steps to address the condition, including cleaning up any contaminated surfaces so the material will not discharge in subsequent storm events … [and the] **permittee** shall … correct such BMP …". *Id*. at p. 20 of 48, ¶ 6 (emphasis added).  In addition, any "[f]ailure to properly design, install, or maintain best management practices shall constitute a violation of this permit for each day on which such failure occurs." *Id*. at p. 20 of 48, ¶ 3.

---

[2] The record contains evidence that Joe Broom made this certification as the "Permittee" in the erosion, sedimentation, and pollution control plan for the LSF.  Mr. Joseph Broom signed that certification on behalf of defendant Infrastructure & Energy Alternatives, Inc. meaning that defendant IEA is also a Primary Permittee with non-delegable obligations under the General Permit.  *See* Doc. 171 at 17-18.

It is undisputed that defendants SRC and IEA are not in compliance with the General Permit requirements; their own testifying expert Erin Harris has agreed and has so sworn:

> Q. Do you consider them to be in compliance as we sit here today?
> A. They are not in compliance because in order to be in compliance, it has to be properly designed, installed, and maintained. And as we sit here today, we do not have a set of erosion control plans that are in place that are properly
> designed in accordance with the general permit or the manual for erosion control enforcement.

Doc. 112 at 16:12-20. As a result, defendants SRC and IEA, as the Primary Permittees, are responsible for violations of the General Permit and at fault for the discharge of sediment from the LSF construction site and into waters of the State including Plaintiffs' stream and lake. In fact, the Georgia Environmental Protection Division ("EPD") has issued Notices of Violation ("NOV") for these failures. Doc. 1, Complaint at ¶ 66, Exh. 10; Doc. 12, SRC Answer, ¶ 66. *Notably, EPD did not issue the NOV to defendant Westwood because the duty to comply with the General Permit lies **solely** with the Primary Permittees.*

It is also undisputed that an entire redesign of the SRC site is necessary before the site can be stabilized and in compliance with the requirements of the General Permit. Again, the SRC/IEA testifying expert Erin Harris has so sworn:

> A. It is my opinion that an entire redesign is needed at this site. And these basins are supposed to serve as permanent sediment basins. They fail to meet the definition of temporary basins -- or, I'm sorry, the design specs of a temporary basin. They fail to meet the minimum design specs as a permanent basin. I do not believe that they are safe. I do not believe they are adequate. I do not believe that a majority of the BMPs currently in place on-site are adequate or anywhere near appropriately designed. And before final stabilization can be reached at this site, I do feel there needs to be an entire redesign.

*Id.* at 317:10-24. Nutter & Associates, SRC & IEA's experts, was never asked to do such a redesign, (*id.* at 292:17-293:7), even though Nutter is capable of doing such a redesign. *Id.* at 17:6-23; 293:17-21. S&ME, the engineering firm to which SRC reached out in March 2021 but then did not hire, likewise was not asked to do a redesign. Dep. of Jeffrey Doubrava at 31/23-

25.[3]  There is no evidence that SRC/IEA asked One Environmental, another consulting firm who was hired to inspect the SRC site for four months in 2021, to do a redesign.  As the Court is aware, not until the night before the January 27, 2023 Pretrial Conference did SRC/IEA proffer plans for a redesign – from Long Engineering.

**III.     Argument and Citation to Authority.**

Under Georgia law, "[a]n employer is liable for the negligence of a contractor . . . [i]f the wrongful act is the violation of a duty imposed by statute." O.C.G.A. § 51-2-5. "Statutes and ordinances that create duties for employers or property owners that protect the public interest, health, safety, and well-being of citizens are nondelegable, and cannot be avoided by contracting these duties away to an independent contractor."  *Hobby Lobby Stores, Inc. v. Woodall Roofing Co., Inc.*, No. 1:11-cv-2566-WSD, 2012 WL 12873026, at *7 (N.D. Ga. Sept. 24, 2012); *see also Perry v. Soil Remediation, Inc.*, 471 S.E.2d 320, 322 (1996) (holding employer liable for negligence of an independent contractor because employer had a statutory duty to "dispose of its wastes in compliance with the Georgia Comprehensive Solid Waste Management Act … and regulations issued pursuant to it.")

The Georgia statutes at issue in this case create duties protecting public interests, the wellbeing of Georgia citizens, and their water resources.  Under the Georgia Water Quality Control Act ("GWQCA"), it is "the policy of the State of Georgia that the water resources of the state shall be utilized prudently for the maximum benefit of the people … and to require where necessary … reasonable treatment of sewage, industrial wastes, and other wastes prior to their discharge into such waters."  O.C.G.A. § 12-5-21.  The Georgia Erosion and Sedimentation Act's ("ESA") stated purpose is "to extend present erosion and sediment control activities and

---

[3] This deposition has not yet been filed on Pacer, but will be.

programs . . . to provide for the establishment of a state-wide comprehensive sediment control program to conserve and protect the land, water, air, and other resources of this state," and prevent damage to "recreational, fish and wildlife, and other resource uses." O.C.G.A. § 12-7-2.

The statutes and permitting structure impose duties on primary permittees like SRC and IEA. Before conducting land disturbing activities, they are required to get a permit and have to submit erosion control plans as part of the application for that permit.[4] O.C.G.A. §§ 12-7-7, 12-7-9. An erosion control plan is for "the control of soil erosion and sediment resulting from land-disturbing activity" which the ESA defines as "any activity that may result in soil erosion from water … and the movement of sediments into state water or onto lands within the state…" O.C.G.A. § 12-7-3-(8)-(9). Their "[f]ailure properly to design, install, or maintain best management practices shall constitute a violation of any … state general permit issued by the [EPD]." O.C.G.A. § 12-7-6(a)(3).

The statutes require primary permittees to take specific measures to prevent erosion from construction sites like LSF. For example, the "[s]tripping of vegetation … shall be conducted in a manner so as to minimize erosion", "disturbed soil shall be stabilized as quickly as practicable", "sediment in run-off must be trapped" by the use of best management practices, and "[l]and disturbing activity plans for erosion and sedimentation control shall include … adequate

---

[4] The term "operator" as used in O.C.G.A. § 12-7-7 means "the party or parties that have: A. Operational control of construction project plans and specifications, including the ability to make modifications to those plans and specifications; or B. Day-to-day operational control of those activities that are necessary to ensure compliance with a storm-water pollution prevention plan for the site or other permit conditions, such as a person authorized to direct workers at a site to carry out activities required by the storm-water pollution prevention plan or to comply with other permit conditions." In this case, the parties satisfying that definition are the defendants SRC and IEA defendants. There is no evidence that defendant Westwood qualifies as an "operator."

sedimentation control facilities to retain sediments on site or preclude sedimentation of adjacent waters …". O.C.G.A. §§ 12-7-6(b)(1) – (14).

The General Permit requires primary permittees to properly design, install, or maintain best management practices to prevent the discharge of pollutants, including eroded soils, into State waters from construction activities. As described above, defendant Silicon Ranch Corporation is the "owner" of the property where the harmful construction activity occurred, and defendant IEA is the "operator" at the LSF. As such, these defendants are the "primary permittees" as defined by the terms of the LSF's General Permit. Defendants' General Permit requires that, "a single Erosion, Sedimentation and Pollution Control Plan ["ESPCP"] must be **prepared by the primary permittee** for the stand alone project.", and the ESPCP "shall describe **and the applicable permittee shall ensure the implementation** of practices which will be used to reduce the pollutants in stormwater discharges associated with construction activity at the site **and to assure compliance with the terms and conditions of the Plan** required under this part as a condition of the permit." Doc. 130-5, p. 26 of 48, ¶ (iv) (emphasis added). The primary permittee must keep the ESPCP current, and the primary permittee is required to amend the ESPCP "if the Plan proves to be ineffective in eliminating or significantly minimizing pollution". *Id*. at p. 28 of 48, ¶ IV.C.

Westwood has limited obligations under the General Permit. They must satisfy certain course requirements and certify that the design plans were prepared in accordance with the General Permit. *Id*. at p. 21 of 48, Part IV. Westwood's most important obligation is to conduct certain specified inspections of best management practices including what is commonly known as the "7-day" inspection. *Id*. at p. 20 of 48, ¶ 2; p. 27 of 48, ¶ 5. During the 7-day inspection, defendant Westwood's duty was to determine if the requisite best management practices had

been properly installed and maintained, and then report the results of the inspection "to the primary permittee … and **the primary permittee must correct all deficiencies** …" *Id*. at p. 27 of 48, ¶ 5 (emphasis added).   Notably Westwood was unable to do the "seven day inspection" for four months – because despite all the mass grading "BMP installation was not complete." Doc. 115, Mlynek 9/14/22 Dep. at 17:21-18:19.

Again, the duty to comply with the conditions of the General Permit rests, at all times, upon the owner and operator.  According to Plaintiffs' expert Dr. Wellington, "the inspector has his duty, his duty to ensure that the site is maintained – is installed and maintained in a way that doesn't result in sediment leaving the site.  If, in his judgment, there's a problem, he takes his design engineer and his design engineer says there's no problem, but the inspector still sees sediment in the site, it is up to him to go to the owner of the site or whoever is in charge of the site and say there's a problem here, the design engineer doesn't understand the problem or can't fix the problem.  We need to find somebody else to do it."  Doc. 66-10, p. 91:12-24.

Here, O.C.G.A. § 51-2-4(5) clearly applies because defendants IEA and SRC, as Primary Permittees at LSF, have a statutory duty to comply with all conditions of the General Permit and to ensure that the erosion control plan required by the General Permit prevented the discharge of pollutants from the LSF construction site and into waters of the State including Plaintiffs' stream and lake.  These duties, imposed by statute, are non-delegable.  To the extent the negligence of their independent contractor Westwood caused the discharge of pollutants onto Plaintiffs' property, that negligence must be imputed to defendants IEA and SRC. IEA and SRC should be prohibited from apportioning fault to Westwood for its negligence.

IV.     Conclusion

As a matter of law defendants SRC and IEA cannot 'apportion' fault for negligence to the design professional they employed, Westwood. The entirety of all 'fault' for Westwood's negligence and the consequences therefrom lies with both SRC and IEA. Whether Westwood is also liable is a question for the jury, but the fault of SRC and IEA cannot be diminished if Westwood is also found to be negligent.[5]

Respectfully submitted, this 28th day of March, 2023.

/s/ James E. Butler, Jr.
JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 877765
dan@butlerprather.com
CAROLINE W. SCHLEY
Georgia Bar No. 511349
caroline@butlerprather.com
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
T: (706) 322-1990 F: (706) 323-2962

C. COOPER KNOWLES
Georgia Bar No. 426699
cknowles@cckfirm.com
LAW OFFICE OF C. COOPER KNOWLES, LLC
750 Hammond Drive
Building 12, Suite 200
Sandy Springs, GA 30328
T: (770) 668-2081

**ATTORNEYS FOR PLAINTIFFS**

---

[5] Likewise SRC/IEA cannot apportion 'fault' to any non-parties for the consequences of the acts of SRC and IEA. SRC/IEA can only apportion 'fault' to any non-party if SRC/IEA satisfy the burden of proving a claim against a non-party and a 'rational basis' to apportion a percentage of blame for damages done to such non-party. SRC/IEA have absolutely no evidence that any actions of any non-party caused any erosion that caused damage to the Harris property, and SRC/IEA have made no attempt to provide a 'rational basis' to assign any percentage to any supposed damage allegedly caused by any non-party.