IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| H & L FARMS, LLC; <br> SHAUN HARRIS and AMIE HARRIS, <br> <br> Plaintiffs, <br> <br> v. <br> <br> SILICON RANCH CORPORATION; <br> SR LUMPKIN, LLC; INFRASTRUCTURE <br> AND ENERGY ALTERNATIVES, INC.; <br> IEA CONSTRUCTORS,    LLC; and, <br> WESTWOOD PROFESSIONAL <br> SERVICES, INC., <br> <br> Defendants. | CIVIL ACTION FILE <br> <br> NO. 4:21-CV-00134-CDL |

**PLAINTIFFS' TRIAL BRIEF REGARDING APPORTIONMENT PROVIDED PER COURT ORDER**

**I.     Introduction**

The objective of Plaintiffs and Plaintiffs' counsel is to keep a clean Record so that if a verdict in favor of Plaintiffs is returned, the chance a judgment based thereon might be reversed on appeal are minimized.

Defendant Silicon Ranch Corporation ("SRC") and defendant Infrastructure and Energy Alternatives, Inc. ("IEA") (itself and/or its wholly owned subsidiary IEAC) are the primary permittees as defined by the NPDES Permit. As such, they are entirely responsible for the statutorily imposed duties to properly *design, install and maintain* the requisite erosion controls at the Lumpkin Solar Facility construction site. Because these three duties are imposed by statute, they are non-delegable. O.C.G.A. §51-2-5 (4). Westwood was hired to do the design,

which was a duty of the primary permittees. If the jury finds against Westwood, any percentage of fault attributed to Westwood would be applicable to SRC and IEA.

That's the law. There's nothing there for the jury to decide.

To avoid argument on appeal Plaintiff requests that the Court instruct the jury to apportion fault by percentages as prescribed by the statute, O.C.G.A. § 51-12-33(b). Any party can certainly argue to the jury, with respect to what percentages should be applied to which parties, that "SRC" or "IEA" are responsible for Westwood,' and that should be reflected in the percentages assigned by the jury, based on the facts in evidence (that SRC and IEA are the primary permittees and are responsible for "design").

Post-verdict Plaintiffs can then, if Plaintiffs choose to do so, request that the Court allocate any percentage attributed to Westwood back to SRC and/or IEA (both of whom are responsible for the non-delegable duty to "design"). If this Court agrees but then the Eleventh Circuit were to decide that any such re-allocation was inappropriate, the case would not have to be retried. Submitting issues about what are or are not "non-delegable duties" to the jury risks trouble on appeal, and, as noted, there's no jury issue about whether the design duty was delegable – it was not.

**II. Argument**

Under the NPDES Permit, primary permittees are charged with ensuring that the requisite erosion control measures are properly designed, installed, and maintained. As this Court noted in its April 18, 2023 Order, there is a "[d]uty to comply with the state general permit established pursuant to the Georgia Water Quality Control Act, including the general permit's requirements for the design, installation, and maintenance of a site-specific Erosion, Sedimentation and Pollution Control Plan" pursuant to "O.C.G.A. § 12-5-30(f); O.C.G.A. § 12-5-53; [and the]

NPDES Permit Part IV." [Doc. 262, p. 2.] Indeed, the NPDES Permit has a section titled "<u>Duty to Comply</u>" that explicitly places this duty upon the primary permittees, and no other entities. The duties are independent: "Failure of a primary permittee to comply with any applicable term or condition of this permit shall not relieve any other primary permittee from compliance with their applicable terms and conditions of this permit." PX 282, NPDES Permit, Part V.A.1.

O.C.G.A. § 12-7-6 and the NPDES Permit impose a duty upon primary permittees to use erosion control measures that are "properly **designed**, installed, and maintained" for all land disturbing activities. This duty has three separate components: design, install, and maintain. All three were duties imposed upon the primary permittees, SRC and IEA, *by statute*. The only 'duty' Westwood had was design. Westwood can only be found liable if its design was deficient and caused damages to Plaintiffs.

The NPDES Permit defines "primary permittee" as the "Owner or the Operator or both of a tract of land for a construction site subject to this permit." *Id*. at Part I.B.34. "'Owner' means the legal title holder to the real property on which is located the facility or site where construction activity takes place." *Id*. at Part I.B.30. Only one entity satisfies this definition – Silicon Ranch Corporation. *See, e.g.* PX 31, Warranty Deed. In addition, "'Operator' means the entity that has the primary day-to-day operational control of those activities at the construction site necessary to ensure compliance with Erosion, Sedimentation and Pollution Control Plan requirements and permit conditions." PX 282, NPDES Permit, at Part I.B.27. Only the IEA defendants can satisfy this definition. Thus, the term "primary permittee" can only apply to SRC and the IEA defendants, and the duty to comply with the NPDES Permit rests solely with these parties.

The NPDES Permit requires the primary permittees to hire a "Design Professional" to prepare an "Erosion, Sedimentation and Pollution Control Plan (Plan)." *Id*. at Part IV.  Here, it is undisputed that defendant Westwood was hired to do that which was the primary permittees' duty - design the requisite Plan.  As the Court noted in its April 18, 2023, Part IV of the NPDES Permit creates a "duty of the 'design professional' to prepare a site-specific erosion control plan that complies the state general permit, including certifications regarding the plan."  However, the primary permittee must "certify that to the best of my knowledge and belief, that the Erosion, Sedimentation and Pollution Control Plan (Plan) was prepared by a design professional, as defined by this permit, that has completed the appropriate certification course approved by the Georgia Soil and Water Conservation Commission in accordance with the provisions of O.C.G.A.12-7-9 and that **I will adhere to the Plan and comply with all requirements of this permit**." *Id*. at Part II.B.1. (Emphasis added).  *See also*, PX 159, Design Plan certifications.  *IEA, Inc. so certified.*  PX 253 at p. C.708 (signed by IEA Inc. employee Joe Broom).   The NPDES Permit does not define the "design professional" as a "permittee" anywhere in its 46 pages.  *See* PX 282

The interpretation of statutes and ordinances is a question of law.  *Expedia, Inc. v. City of Columbus*, 681 S.E.2d 122, 127 (Ga. 2009).  "The Supreme Court of Georgia has instructed that the 'best indicator of the General Assembly's intent is the statutory text it actually adopted'". *Cavalier Convenience, Inc. v. Sarvis*, 699 S.E.2d 104, 105 (Ga. Ct. App. 2010) (*quoting Chase v. State*, 681 S.E.2d 116 (Ga. 2009).

The statutory text of O.C.G.A. § 51-12-33(b) is clear that in "actions against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any shall … apportion its award of damages among the persons

who are liable according to the percentage of fault of each person."  According to the Georgia Supreme Court, "[t]he purpose of the apportionment statute is to have the jury consider all of the tortfeasors who may be liable to a plaintiff together, so their respective responsibilities for the harm can be determined."  *Couch v. Red Roof Inns, Inc.*, 729 S.E.2d 378, 383 (Ga. 2012).  Thus, apportionment of liability is clearly a matter of fact for the jury to decide, and Plaintiffs do not want to truncate, eliminate, or alter that in any way.  The clearest way to have the jury's resolution reflected in the verdict form is to use Section B of Plaintiffs' proposed verdict form titled "Apportionment of Liability" which includes all parties.

The statutory text of O.C.G.A. § 51-2-5(4) is also clear.  "In general, an employer is not responsible for the torts of its independent contractor.  Under an exception to this rule … the person employing the independent contractor is liable for the wrongful act of the contractor if the wrongful act breaches a duty imposed upon the employer by statute."  *Lewis v. Nicholas Financial, Inc.*, 686 S.E.2d 468, 469-70 (Ga. Ct. App. 2009) (*citing* O.C.G.A. § 51-2-5(4).  But whether the design duty was non-delegable is a question of law for the Court, to be decided, if necessary, post-verdict.

### III.   Conclusion

The jury should apportion damages pursuant to O.C.G.A. § 51-12-33(b), as provided for in section "B" of Plaintiffs' proposed jury verdict form, Doc. 222-4 at p. 2.

Respectfully submitted, this 20th day of April, 2023.

*/s/ James E. Butler, Jr.*
JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 877765
dan@butlerprather.com

> CAROLINE W. SCHLEY
> Georgia Bar No. 511349
> caroline@butlerprather.com
> BUTLER PRATHER LLP
> 105 13th Street
> Post Office Box 2766
> Columbus, GA 31902
> T:  (706) 322-1990 F:  (706) 323-2962
>
> C. COOPER KNOWLES
> Georgia Bar No. 426699
> cknowles@cckfirm.com
> LAW OFFICE OF C. COOPER KNOWLES, LLC
> 750 Hammond Drive
> Building 12, Suite 200
> Sandy Springs, GA 30328
> T:  (770) 668-2081
>
> **ATTORNEYS FOR PLAINTIFFS**