```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION

H&L FARMS LLC, SHAUN HARRIS, and  *
AMIE HARRIS,
                                  *
     Plaintiffs,
                                  *
vs.
                                  *
SILICON RANCH CORPORATION,            CASE NO. 4:21-CV-134 (CDL)
SR LUMPKIN, LLC, INFRASTRUCTURE   *
AND ENERGY ALTERNATIVES, INC., IEA
CONSTRUCTORS, LLC, and WESTWOOD   *
PROFESSIONAL SERVICES, INC.,
                                  *
     Defendants.
                                  *
```

## INJUNCTION ORDER

Consistent with the jury verdict, the Court finds that Defendants Silicon Ranch Corporation, Infrastructure and Energy Alternatives, Inc., and IEA Constructors LLC ("Defendants") created, operated, and maintained a nuisance at the Lumpkin Solar Facility that caused sedimentation to pollute Plaintiffs' wetlands, streams, and lake. The Court further finds that this nuisance has continued for approximately two years unabated. The evidence at trial supports the conclusion that this nuisance can be abated, but successful abatement will require the commitment of adequate resources, necessary expertise, and zealous determination. The Court finds that an award of damages is insufficient to provide a completely adequate remedy for the continuing nuisance. Because there is no adequate remedy at law

for the continuing nuisance, the Court is convinced that an injunction is necessary to reasonably assure that this continuing, but abatable, nuisance is abated in a manner that will minimize continuing damage and injury to Plaintiffs. The Court hereby enters the following injunction. When referred to herein, "Defendants" means Silicon Ranch Corporation, Infrastructure and Energy Alternatives, Inc., and IEA Constructors LLC.

1. **DEFENDANTS' REQUIREMENTS.** Defendants shall expeditiously and with all deliberate speed eliminate the transport of sediment from the Lumpkin Solar Facility to Plaintiffs' wetlands, streams, and lake to the extent that the flow of sediment from the Lumpkin Solar Facility shall not exceed the flow of sediment that existed prior to the start of construction on the Lumpkin Solar Facility site and/or shall not exceed the applicable statutory limits under Georgia and federal law. To comply with this requirement, Defendants shall collectively, or where appropriate, through Infrastructure and Energy Alternatives, Inc. and/or IEA Constructors LLC as the contractor in charge and control of the work, carry out each of the following obligations, efforts, and/or activities:

    a. Prepare and/or complete erosion, sedimentation and pollution control plans ("ESPCPs") which, when implemented, (1) prevent the post-development peak discharge rate leaving the portions of the Lumpkin Solar

2

    facility that are within the watershed and drain onto the Plaintiffs' property (the "Watershed Basins") from exceeding the pre-development peak discharge rate, and (2) provide that no water leaving the Watershed Basins of the Silicon Ranch Corporation property will, except as allowed under circumstances identified in the General NPDES Permit No. GAR100001 (the "General Permit" available at ECF No. 231-2), exceed the maximum turbidity levels set forth in Appendix B of the General Permit.[1]

b. Prepare and/or complete a hydrology study for the Watershed Basins, that is based upon the current conditions of such areas, upon which the foregoing revised ESPCPs have been based.

c. Obtain any necessary regulatory approval for the redesigned ESPCPs.  Defendants shall use reasonable efforts to manage and expedite the regulatory plan review cycle.

d. Perform all work at the Lumpkin Solar Facility site that is required to implement the changes called for in the redesigned ESPCPs, including changes to existing temporary sediment basins, the construction of additional upgradient

---

[1] Defendants appear to agree that the turbidity limit for most of the existing temporary sediment basins should be 50 NTUs.  They assert that there should be a slightly higher NTU limit for one of the temporary sediment basins.  The revised ESPCPs shall state the maximum turbidity levels, which shall not exceed the maximum turbidity levels set forth in Appendix B of the General Permit.

3

    erosion and sedimentation control features, and any maintenance plan for the sediment basins that is set forth in the redesigned ESPCPs.[2]

e. Take all reasonable steps required to achieve "final stabilization" of the Watershed Basins in accordance with the definition thereof set forth in the General Permit (100% covered with permanent vegetation at a density of 70% or greater).

f. Complete all requirements necessary to obtain a "Notice of Termination" under the General Permit, including compliance with the General Permit's limits on allowable turbidity, and obtain a "Notice of Termination." Satisfaction of this requirement, however, does not necessarily constitute final completion of all obligations required by this Injunction.

g. Employ an independent engineering and/or monitoring firm to conduct turbidity sampling for the Watershed Basins when, where, and as required by Part IV.D.6(d) of the General Permit, at the discharge points or other appropriate locations identified by Defendants, until

---

[2] The construction activities may include tasks that Defendants' subcontractors deem necessary to achieve compliance with this Injunction, such as installation of rip-rap spillways or other permanent down drain structures, expansion of the existing temporary sediment basis, and certification that the project materials comply with certain requirements.

4

twelve (12) months after Defendants obtain the Notice of Termination. In furtherance of the foregoing, IEAC (or its authorized representatives) shall maintain a daily rainfall log showing amounts of rainfall during a specific duration each day, if any.

h. Prepare a stormwater management report that includes a post-"Notice of Termination" plan for inspecting and maintaining the erosion and sedimentation control features that are within the watershed that drains onto the Plaintiffs' property. Such a plan should include monthly turbidity sampling for twelve (12) months after completion and guidance on how to maintain the erosion and sedimentation control features so that they continue to function as intended.

i. Meet all reporting requirements set forth in Section 7 below. All reports submitted to the Special Master shall be copied to the opposing party's counsel. Unless this Injunction states that a report must be submitted to the Court, the report should NOT be submitted to the Court.

j. Provide the Special Master with a suggested process for the parties to follow if, after the required twelve-month reporting period is complete, there is an occurrence that materially decreases the functionality of the installed erosion and sedimentation control features and/or

5

> Plaintiffs detect discharges into their stream and lake from the Lumpkin Solar Facility site that exceed the permitted turbidity levels.

2. **COMPLIANCE.**   Defendants will achieve "Compliance" with this Injunction when the Court, with the assistance of the Special Master, concludes that:

    a. Defendants achieved "final stabilization" of the Watershed Basins as defined in the General Permit and obtained a "Notice of Termination" under the General Permit;

    b. The stormwater discharges from the Watershed Basins following achievement of "final stabilization" and the "Notice of Termination" do not exceed the applicable NTU discharge limits established pursuant to Appendix B of the General Permit and/or established by this Injunction; and

    c. The peak post-development discharge rates from the permanent detention basins within the Watershed Basins do not exceed the peak pre-development discharge rates from the Project site.  The discharge rates shall comply with the values specified in the hydrology study required in Section 1(b).

3. **TIMELINE FOR COMPLIANCE.**   The Court will establish specific deadlines for Compliance after consultation with the Special Master, but the parties should be working diligently at present

and before the Special Master is selected to satisfy the requirements of this Injunction.

4. **SELECTION OF A SPECIAL MASTER.**

    a. Within **fourteen** days of the issuance of this Injunction, Defendants shall submit to the Plaintiffs the names of three independent civil engineers (defined as a person or business entity who has not had any prior business relationship with any of Defendants) who are licensed Professional Engineers in the State of Georgia, with a minimum of five (5) years' experience in the preparation of hydrology studies and the related design of ESPCPs ("Qualified Candidates"), to serve as this Court's Special Master.

    b. If Plaintiffs find one of Defendants' Qualified Candidates to be acceptable, they shall coordinate with Defendants to file a joint motion for appointment of that Qualified Candidate as Special Master. This shall be done within twenty-one days after Plaintiffs receive Defendants' list of Qualified Candidates.

    c. If Plaintiffs do not find any of the Defendants' Qualified Candidates to be acceptable, then Plaintiffs shall submit to Defendants the names of three of their own Qualified Candidates (none of whom shall have had any prior business relationship with any of the Plaintiffs) to serve as this

      Court's Special Master. This shall be done within twenty-one days after Plaintiffs receive Defendants' list of Qualified Candidates.

d. If Defendants find one of Plaintiffs' Qualified Candidates to be acceptable, they shall coordinate with Plaintiffs to file a joint motion for appointment of that Qualified Candidate as Special Master. This shall be done within twenty-one days after Defendants receive Plaintiffs' list of Qualified Candidates.

e. If Defendants do not find any of the Plaintiffs' Qualified Candidates to be acceptable, then Defendants shall notify Plaintiffs. This shall be done within twenty-one days after Defendants receive Plaintiffs' list of Qualified Candidates. Within fourteen days of such notice, the parties shall file a **joint motion** to appoint a Special Master. In that motion, each side shall identify **one** Qualified Candidate from among the three initially proffered to the other. The motion shall include the names and qualifications of the two proposed Qualified Candidates and the basis for the party's objection to the Qualified Candidate of the other party.

5. **DUTIES OF THE SPECIAL MASTER.** The Special Master shall:

    a. Assist the Court in monitoring Defendants' efforts to comply with the requirements of this Injunction;

b. Assist the Court in setting deadlines for Compliance;

c. Submit monthly reports to the Court (copying the parties via CM/ECF) regarding Defendants' progress in furtherance of compliance with this Injunction;

d. Notify the Court (copying the parties via CM/ECF) if the Special Master finds that Defendants are not complying with their requirements under this Injunction (including the requirement to use reasonable efforts to manage and expedite the regulatory plan review cycle), and provide a recommended action for the Court to take;

e. Notify the Court (copying the parties via CM/ECF) when Defendants achieve "Compliance" as defined in this Injunction.

f. In the event of a dispute between the parties related to the Injunction, provide the Court (copying the parties via CM/ECF) with a recommendation on how to resolve the dispute.

6. **INSPECTION & MONITORING.**

   a. The Special Master shall be allowed to inspect the Lumpkin Solar Facility at any time, with reasonable prior notice to Defendants.

   b. Defendants shall make the Lumpkin Solar Facility occasionally available for reasonable inspection by Plaintiffs, their counsel, and experts to view the

9

performance of work required by this Injunction.[3] The frequency, duration, and extent of such inspections shall be only as permitted by the Special Master, with input from and advance notice to Defendants. Any determination concerning the adequacy, propriety, or sufficiency of the work being performed, or Defendants' compliance with the terms of this Injunction, shall be reserved for the Special Master and/or the Court.

7. **REQUIRED REPORTS TO THE SPECIAL MASTER.**

    a. Defendants shall provide a status report to the Special Master and Plaintiff's counsel on the first of each month. The status reports shall include (1) rainfall reports, (2) results of any required turbidity sampling, (3) the status of any discharges in terms of turbidity; (4) and the status of the planning, installation, construction, and/or maintenance of the erosion and sedimentation control features. Such reports shall continue until twelve (12) months after the "Notice of Termination" approval date.

---

[3] Defendants contend that the Court should prohibit Plaintiffs from taking drone videos and photographs of the Lumpkin Solar Facility because such conduct is "trespassing." The Court previously concluded that Defendants had not established that Plaintiffs' drone activities constituted trespassing. Order 18-21 (Feb. 7, 2023), ECF No. 221. Defendants offered no basis for reconsidering that conclusion now.

b. When Defendants believe site stabilization has been achieved as defined by the General Permit, they shall notify the Special Master and Plaintiffs' counsel.

c. When Defendants obtain a "Notice of Termination" as defined in the General Permit, they shall notify the Special Master and Plaintiffs' counsel.

d. The Special Master may request from Plaintiffs and Defendants information necessary to fulfill the Special Master's duties. The party from whom information is requested shall respond within a reasonable time, copying the other party.

e. Defendants shall provide the following documentation to the Special Master and Plaintiffs' counsel:
   i. The new hydrology study upon which the redesigned ESPCPs are based, and any revisions thereto.
   ii. The complete ESPCPs and all revisions and amendments thereto.
   iii. To the extent not included in the hydrology study or the ESPCPs, the calculations used to design the expanded sediment basins located within the Watershed Basins.
   iv. To the extent not included in the hydrology study or the ESPCPs, the calculations used to design any other modified BMPs located within the Watershed Basins.

11

  v. The new stormwater management report and any revisions or amendments thereto.

8. **FEES, EXPENSES AND COSTS PAID BY DEFENDANTS.** The Special Master's reasonable fees, costs and expenses shall be paid on a monthly basis by Defendants. All fees, costs and expenses incurred by Defendants associated with any of the foregoing shall be at the expense of, and be paid for, by Defendants. Absent a successful motion for civil contempt related to this Injunction, Plaintiffs shall be responsible for their own attorneys' fees and expert fees related to this Injunction.

9. **SANCTIONS FOR NONCOMPLIANCE.** Defendants are on notice that failure to comply with the requirements of this injunction could result in sanctions, including daily penalties. If the Court becomes aware of alleged noncompliance, the Court will order Defendants to show cause why such sanctions should not be imposed. The Court may issue such show cause order either *sua sponte*, upon recommendation of the Special Master, or upon motion by Plaintiffs.

 IT IS SO ORDERED, this 5th day of June, 2023.

          S/Clay D. Land
          CLAY D. LAND
          U.S. DISTRICT COURT JUDGE
          MIDDLE DISTRICT OF GEORGIA