IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| H&L FARMS LLC, SHAUN HARRIS, and AMIE HARRIS, | * |
| | * |
| Plaintiffs, | * |
| | * |
| vs. | CASE NO. 4:21-CV-134 (CDL) |
| | * |
| SILICON RANCH CORPORATION, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

O R D E R

In its previous order (ECF No. 371), the Court thoroughly explained why the jury's award of compensatory and punitive damages was sufficiently excessive to require a new trial. Plaintiffs filed a motion for reconsideration, as did Infrastructure and Energy Alternatives, Inc. and IEA Constructors, LLC (collectively, "IEA"). The motions did not change the Court's mind. Accordingly, both motions (ECF No. 372 & 375) are denied. The Court explains in the remainder of this order why the parties' arguments that the Court committed clear errors of law are unpersuasive.

I. **The Parties' Enumerations of Clear Error**

  A. The Remitted Damages Amounts Are Not Binding on Plaintiffs, and Therefore, the Court Had No Obligation to Award the "Highest" Amount that Could be Supported by the Evidence.

As the Court indicated in its remittitur order, the remittitur amounts did not "necessarily" represent the highest amount of

damages within the reasonable range of damages. The Court added this caveat because it did not believe the remitted amounts should be used as a cap on damages in any retrial. Had the Court found that these remitted damages were the most that could be justified, Plaintiffs arguably could not recover more than that amount in a new trial. To avoid misunderstanding, the Court expressly stated that the remitted amounts did not necessarily represent the maximum amount supported by the evidence. Regardless of the Court's motivation, it was not clear error for the Court to decline to remit damages at the maximum amount supported by the evidence. Nor was it clear error for the Court to offer Plaintiffs an option of a new trial. The authority relied on by the parties is inapposite.

The Court did not order that Plaintiffs shall recover the amounts that the Court remitted. The Court would not be authorized to order such relief with regard to compensatory damages because it would violate Plaintiffs' constitutional right to a jury trial. *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999). The Court likely had the authority to order a specific amount of punitive damages. *See Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 767–68, 768 n.25 (11th Cir. 2020). But the Court did not do that either. A careful review of the Court's order reveals that the Court found the damages awarded for compensatory damages to be excessive and not supported by the

2

law or the evidence. Based upon that finding, the Court ordered a new trial. But instead of mandating a new trial, the Court gave Plaintiffs the option of accepting the Court's remitted damages instead of having a new trial on damages. Plaintiffs' cases simply establish that when a court remits damages *without permitting the plaintiff to opt for a new trial on damages*, it must award the maximum amount supported by the evidence. *Id.* at 767–68, 768 n.25 (remanding with instructions to award a specific amount of punitive damages, which represented the "highest amount that would comply with due process," without an option for a new trial); *cf. Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1284 (11th Cir. 2000) (permitting remittitur to the "maximum award the evidence can support" *or a new trial on the issue of damages* at the plaintiff's option). Plaintiffs' cases are clearly distinguishable from the situation here, and counsel should have ascertained this important distinction before filing the motion for reconsideration.

IEA argues that the Court erred in granting a new trial on the amount of compensatory damages for cost to repair the lake and the amount of punitive damages because the Court's remitted amounts already represent the maximum recoverable amounts. In support of this argument, IEA points out that it is not an abuse of discretion for a trial court to remit an excessive compensatory damages verdict without offering a new trial *if there is zero evidence*

3

*that the damages would be more than the remitted amount. See, e.g., Holmes v. W. Palm Beach Hous. Auth.*, 309 F.3d 752, 758 (11th Cir. 2002) (finding no abuse of discretion in decision to remit back-pay and benefits award without offering a new trial where the amount was quantifiable and there was no evidence that the amount could exceed the remitted amount); *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1351 (Fed. Cir. 2001) (applying 11th Circuit law) (finding no error in trial court's refusal to grant a new trial where there was no evidence that the compensatory damages could exceed the remitted amount); *Johansen*, 170 F.3d at 1331 ("[U]pon determination of the constitutional limit on a particular award, the district court may enter a judgment for that amount as a matter of law.").

Here, the Court did not determine the maximum limit on either the compensatory damages award or the punitive damages award. Rather, the Court found that although there was evidence that the cost to repair the lake would be more than $296,000.00, Plaintiffs did not present evidence on the precise amount. Accordingly, the evidence did not support the jury's award of $1,500,000.00 to repair Plaintiffs' property. This case is distinguishable from IEA's cases because it is clear that the cost-to-repair damages likely exceed the remitted amount, so the damages award is not the maximum amount recoverable. Likewise, the Court did not determine the maximum punitive damages amount authorized by law. For these

reasons, the Court denies IEA's request to enter judgment on these amounts as a matter of law without a new trial.

> B. Plaintiffs Did Not Assert a Claim for Mental Distress Damages Caused by an Abatable Nuisance Separate and Apart from Loss of Use and Enjoyment of the Nuisance-Encumbered Property.

The record is clear that the jury's compensatory damages award for loss of use and enjoyment of Plaintiffs' property exceeded the fair market value of that property. In fact, it was almost three times the fair market value of the property. Plaintiffs confuse the issues by arguing that they are entitled to "mental distress damages" caused by the nuisance. Yet, no claim for "mental distress damages" separate from loss of use was presented to the jury and the jury was not instructed on any such claim. Instead, the claim presented was for damages caused by Plaintiffs being deprived of the use and enjoyment of their property because of the nuisance. The jury was instructed that in determining the amount of such damages, they could consider Plaintiffs' discomfort, loss of peace of mind, unhappiness, and annoyance caused by that loss of use. The jury ultimately awarded damages to compensate for that loss of use well in excess of the fair market value of the property which had its use and enjoyment interfered with due to the nuisance.

In its order for new trial and remittitur, the Court found that under Georgia law damages for loss of use and enjoyment of

property could not exceed the fair market value of the very property which plaintiffs claimed they could not use and enjoy. The Court reasoned that if a nuisance completely destroyed the value of one's property such that its use was totally eliminated, then the maximum damages for that complete loss of use would be the value of the property. The confusion that has arisen in this case, to which the Court may have contributed, relates to a misunderstanding of this loss of use and enjoyment claim.[1] The Court will attempt to explain its understanding of Georgia law one more time.

In an abatable nuisance case, an owner and/or occupier can assert two separate types of claims which have mental distress components. One such claim is for loss of use and enjoyment of the property, which is the claim that Plaintiffs asserted here and which is the claim that was submitted to the jury for its resolution. In determining the amount of damages to be awarded for such loss of use and enjoyment, the jury may consider the following mental distress components: discomfort, loss of peace of mind, unhappiness, and annoyance. *City of Columbus v. Myszka*, 272 S.E.2d 302, 305 (Ga. 1980) (per curiam). But the fact that these components may be considered in valuing a party's loss of use and

---

[1] The Court acknowledges that in its previous order it broadly stated that one cannot recover mental distress damages in a nuisance action separate from a loss of use and enjoyment claim. That dicta was wrong as explained in the remainder of this order but does not affect the outcome of the present motion.

6

enjoyment does not convert the claim to an emotional distress/pain and suffering type tort claim. It remains a claim for loss of use, and because of that the value of the lost use cannot exceed the value of the property which could not be used.

The second type of nuisance claim that allows a jury to consider emotional distress type damages is simply a tort claim for damages caused by the nuisance; but such a claim is separate and distinct from the loss of use of the property. If a nuisance causes an owner and/or occupier of the property emotional distress that is separate from their loss of use of the property, then that owner/occupier owner can recover for their emotional distress proximately caused by the nuisance if it is accompanied by a "physical injury" or pecuniary harm. For example, if a factory next door emitted particles and noxious gases that created a nuisance and the neighbor was sickened and suffered physical and mental pain and suffering, then damages for that suffering could be recovered unrelated to their loss of use of the property. *See, e.g.*, *Swift v. Broyles*, 42 S.E. 277, 279 (Ga. 1902) (acknowledging claim for expenses "on account of sickness in his family caused by the nuisance"). And those damages, which are separate from loss of use, may not necessarily be capped at the value of the property because they are not connected to the loss of the use of the

7

property.[2] They are directly connected to the harm-creating conduct, which produces a separate distinct injury even if there were no loss of use.

The Court never understood that Plaintiffs intended to assert this second type claim. Their prayer for relief in the Complaint was restricted to a loss of use and enjoyment claim; the final pretrial order did not set out a separate claim; and the Court's jury instructions and verdict form made it clear that no such separate claim was presented at trial. Perhaps Plaintiffs intended to assert such a claim and confused the Court by conflating a stand-alone physical injury/emotional distress claim with their loss of use and enjoyment claim. Whatever the source of the

---

[2] A plaintiff may not be able to recover such emotional distress damages unless they are accompanied by physical injury, pecuniary harm, and/or intentional/willful conduct. *See Barrow v. Ga. Lightweight Aggregate Co.*, 120 S.E.2d 636, 641 (Ga. Ct. App. 1961) (holding that the trial court erred in sustaining a demurrer on claims for physical and mental suffering caused by the defendant's dynamite explosions that amounted to a trespass), *disapproved on other grounds by OB-GYN Assocs. of Albany v. Littleton*, 386 S.E.2d 146 (Ga. 1989) (approving *Barrow* court's conclusion that "mental injury flowing from a trespass is compensable" but *disapproving it "to the extent that it may stand for the proposition that a plaintiff who has suffered a trespass may recover for emotional distress"*); *cf. Montega Corp. v. Hazelrigs*, 189 S.E.2d 421, 422–23 (Ga. 1972) (concluding that there was no error in denying a motion to strike a claim for emotional distress where the plaintiff alleged that he became "seriously mentally ill" and was committed to a mental hospital because of the alleged trespass); *City of Gainesville v. Waters*, 574 S.E.2d 638, 644 (Ga Ct. App. 2002) (finding that it was not error to admit the testimony of the plaintiff's psychiatrist in a case where the plaintiff asserted a "claim of emotional distress" because she suffered post-traumatic stress disorder that required psychiatric treatment after the defendant's botched maintenance of a drainage system caused repeated flooding of the plaintiff's home that physically impacted the plaintiff). No such restrictions exist on a claim for loss of use damages.

8

confusion, the Court finds that its remitted damages are supported by the evidence that was admitted at trial and the claim that was tried. The damages awarded by the jury are not. Accordingly, the Court denies the pending motions for reconsideration on this issue.

> C.  The Court Did Not Presume the Jury Failed to Follow the Law, but Simply Observed How They Could Have Gotten Confused.

As the Court alluded to in its prior order, the jury was faced with a difficult task. It could consider emotional distress as an element of the loss of use and enjoyment of the property, but it could not award separate damages for emotional distress caused by the nuisance. *See H&L Farms LLC v. Silicon Ranch Corp.*, No. 4:21-CV-134 (CDL), 2023 WL 6973211, at *8 (M.D. Ga. Oct. 23, 2023) (observing that the "fine distinction requires a double-take by even the most sophisticated lawyer"). Furthermore, and perhaps most importantly, the jury was not instructed that its damages for loss of use and enjoyment could not exceed the fair market value of the property. In retrospect, the Court wishes it had done a better job in these instructions to the jury and that counsel had done a better job encouraging the Court to do so. But that did not happen, and it is undisputed that the jury awarded damages for loss of use and enjoyment of the property many times in excess of the fair market value of the property. The Court should have instructed the jury that damages for loss of use and enjoyment must be connected directly to that loss of use and enjoyment and

thus cannot exceed the fair market value of the property. The Court understands that without this limiting instruction, the jury could believe that the damages did not need to be so capped. In fact, they have no way of knowing that they must be capped. To require them to divine this somewhat sophisticated legal concept without proper instruction by the Court is in fact "a bridge too far," as alluded to by the Court in its prior order. *Id.* The award of loss of use damages that was three times the fair market value of the property was excessive. The Court attempted to provide Plaintiffs with an amount that it found reasonable and supported by the evidence in its remittitur. Plaintiffs have the right not to accept it. But the Court does not intend to negotiate over its remittitur. If Plaintiffs reject it, the remedy is a new trial.

    D.   <u>The Court Used Its Enlightened Conscience to Determine the Remittitur Amounts.</u>

As previously explained, after the Court determined that the damages awards were excessive, the Court had the option of simply ordering a new trial without a remittitur or ordering a new trial contingent on whether Plaintiffs accepted the Court's remittitur. The Court chose the second option. In determining the amount of that remittitur, the Court was guided by the evidence and the standard for the applicable elements of damages. For compensatory damages, that standard is enlightened conscience. So yes, the

Court used its enlightened conscience. Importantly, however, it was not *substituting* its enlightened conscience for that of the jury. The jury's award was not sustainable under the law. Thus, the Court struck it down. And upon doing that and concluding that it would offer a remittitur, it independently, based on the evidence and the law, made such a remittitur award. The Court understands that damages for discomfort and annoyance damages are up to the enlightened conscience of the jury and therefore ordinarily must not be disturbed. *E.g.*, *City of Atlanta v. Murphy*, 391 S.E.2d 474, 477 (Ga. Ct. App. 1990). But the Court is not required to uphold a jury's award that is unsupported by the law and evidence. Here, while the evidence supported discomfort and annoyance damages based on loss of use and enjoyment of the property, there was no separate claim for other emotional distress damages, so the jury was not authorized to award such damages.

> E. <u>In Determining the Amount of Remitted Damages, the Court Reasonably Assumed the Nuisance Would Be Abated.</u>

Plaintiffs criticize the remittitur amounts because those amounts assume that the nuisance will be abated. This case was presented to the jury as an abatable nuisance case, and the jury was not asked to determine whether the nuisance was permanent. No evidence exists that the Court's injunction, which ordered the abatement of the nuisance, will not be effective. It is sheer speculation to assume that the nuisance will not be abated. It

would be improper for the Court to make such an assumption, particularly in the absence of a jury determination that there was a permanent, non-abatable nuisance. *Cf. City of Warner Robins v. Holt*, 470 S.E.2d 238, 241 (Ga. Ct. App. 1996) (noting that the evidence supported the jury's finding of a permanent nuisance). But the Plaintiffs do not have to accept the Court's methodology or remitted amounts. They have the right to proceed with a new trial on damages. The Court is convinced that the amounts it remitted are reasonable and supported by the evidence. But they are not binding on Plaintiffs. What Plaintiffs are not entitled to is an award of damages that is excessive and unsupported by the law and the evidence.

### F. The New Trial Will Not Re-Try Liability on Punitive Damages.

IEA contends that if the Court permits a new trial on the amount of punitive damages, the jury should also decide whether punitive damages are authorized for each Defendant. Federal Rule of Civil Procedure 59(a) permits a new trial "on all or some of the issues." In general, a partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1548 (11th Cir. 1996) (emphasis omitted) (quoting *Gasoline Prods. Co. v. Champlin Refin. Co.*, 283 U.S. 494, 500

(1931)). For example, in *Bateman*, the Eleventh Circuit concluded that two copyright infringement claims, which involved infringement of separately copyrighted material, were not distinct and separable from each other, particularly given that the trial court's general instructions applicable to both counts were wrong. *Id.* at 1548-49. And in *Champlin Refining*, the question of damages on a counterclaim was "so interwoven with that of liability" in a contract dispute that both issues had to be retried. 283 U.S. at 500; *see also Fury Imports, Inc. v. Shakespeare Co.*, 554 F.2d 1376, 1389 (5th Cir. 1977) (finding that the district court erred in setting aside the verdict on liability and compensatory damages such that a new trial must be granted on those issues, so the issue of punitive damages must be retried too even if evidence at the first trial supported them because a plaintiff "is entitled to no punitive damages unless the jury finds for it on liability and awards some actual damages").[3]

As the cases cited by IEA acknowledge, though, the Eleventh Circuit has routinely found that liability and damages are severable for purposes of a partial new trial without offending the Seventh Amendment's Reexamination Clause.[4] *Searcy v. R.J.*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[4] Under the Reexamination Clause of the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United

13

*Reynolds Tobacco Co.*, 902 F.3d 1342, 1356 (11th Cir. 2018).  If liability issues are properly decided by a jury but the jury "reached unreliable figures for damages because of unclear jury instructions," a new trial may be granted solely on the issue of damages.  *Id.*  If the damages amount can be determined without reexamining the first jury's liability determination, then there does not need to be a retrial on the issue of liability.  *Id.; cf. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001) (noting that while the measure of damages is a "question of historical or predictive fact," the level of punitive damages is not a finding of fact).  The Court is not persuaded by IEA's argument that a second jury cannot determine the amount of punitive damages or the issue of specific intent without understanding the precise basis the first jury had for finding that Plaintiffs proved "by clear and convincing evidence that a Defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences." Jury Instructions 18, ECF No. 280. During the new trial, the new jury can be instructed that punitive damages are authorized in this action, and the new trial will necessarily include evidence about each Defendant's conduct in creating and maintaining the nuisance.  The jury will be able to

---

States, than according to the rules of the common law."  U.S. Const. amend. VII.

consider (1) the factors that must be considered in determining the amount of punitive damages and (2) whether a Defendant acted with specific intent to cause harm. Such evidence should be sufficient for a jury to determine where on the reprehensibility scale and where on the specific intent continuum each Defendant's conduct falls.

**II. Request for Interlocutory Appeal**

Plaintiffs recognize that an order granting a new trial is an interlocutory order that is not generally subject to appellate review. Plaintiffs therefore ask the Court to certify its order for appeal under 28 U.S.C. § 1292(b). That statute permits certification of a non-appealable order only if the judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* Such appeals are frowned upon. An interlocutory appeal is not appropriate under the circumstances presented here and would almost certainly be denied by the Court of Appeals because the five conditions that must be satisfied for an interlocutory appeal under § 1292(b) are not met here. *See Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016) (requiring that the issue (1) be a "pure question of law," (2) be controlling of a substantial part of the case, (3) be specified by the district court in its order, (4) have substantial

grounds for difference of opinion, and (5) be such that resolution may "substantially reduce the amount of litigation necessary on remand"). The Court is not convinced the issues Plaintiffs wish to appeal are pure legal questions, that there are substantial grounds for difference of opinion in light of the case law explained above, or that resolution will substantially reduce the amount of litigation necessary on remand. Accordingly, the Court denies the motion for leave to file an interlocutory appeal (ECF No. 373).

**III. Request for Certified Question to Georgia Supreme Court**

The only legal issue presented in this case that is the least bit uncertain relates to whether compensatory damages for loss of use and enjoyment of nuisance-encumbered property may exceed the fair market value of that property if it were not encumbered. The Court's resolution of that issue is not sufficiently in doubt to warrant imposing on the busy docket of the State Supreme Court for an advisory opinion on the issue. Even if the Georgia Supreme Court concluded that no such cap exists, that is not necessarily dispositive of whether the compensatory and punitive damages awarded in this case were nevertheless excessive. Regardless of the Georgia Supreme Court's answer, a new trial will likely be required. The Georgia Supreme Court has stringent requirements for considering requests for responses to certified questions. *See* Ga. R. S. Ct. Rule 46 (permitting certified questions only if

16

there is a determinative question and "there are no clear controlling precedents in the appellate court decisions" of Georgia). Those requirements are not met here. Accordingly, Plaintiffs' motion to certify questions to the Georgia Supreme Court (ECF No. 373) is denied.

CONCLUSION

The Court finds no basis for reconsidering its previous remittitur order in which it found the damages awarded by the jury to be sufficiently excessive that a new trial is required on the issue of damages. The Court provided Plaintiffs with the option of accepting damages that the Court found reasonable and supported by the evidence. Plaintiffs have the right to reject that option. Within twenty-one days of today's order, they shall file a formal notice advising the Court as to their decision.

Assuming Plaintiffs reject the Court's remittitur, the Court has reconsidered its initial inclination to try this case during the Court's March 2024 trial term. The Court has determined that it would be more efficient and likely conserve judicial resources to try the issue of damages after the Court has determined that Defendants have satisfied the requirements of the Court's injunctive relief previously ordered in this case. The Court understands that it should be in a position to make that determination by October 1, 2024. Accordingly, the Court intends to schedule a hearing at some time after that date to determine

whether the Defendants have satisfied the requirements of the injunction. After that determination, the Court will schedule a trial on the issue of damages. Plaintiffs' motion to file a supplemental brief (ECF No. 384) is denied.

IT IS SO ORDERED, this 13th day of December, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA