**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| H & L FARMS, LLC;<br>SHAUN HARRIS and AMIE HARRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| SILICON RANCH CORPORATION; | ) | NO. 4:21-CV-00134-CDL |
| SR LUMPKIN, LLC; INFRASTRUCTURE | ) | |
| AND ENERGY ALTERNATIVES, INC.; | ) | |
| IEA CONSTRUCTORS, LLC; and, | ) | |
| WESTWOOD PROFESSIONAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR POSITION THAT THE SCOPE OF
THE PARTIAL RETRIAL VIOLATES THEIR CONSTITUTIONAL RIGHTS**

Infrastructure and Energy Alternatives, Inc., IEA Constructors, LLC, and Silicon Ranch

Corporation ("Defendants") submit this brief pursuant to page 2, footnote 2 of the Amended

Scheduling Order, Doc. 415, which instructs Defendants to file a brief "[i]f the Defendants take

the position that being bound by liability determinations from the first trial denies them rights

protected by the Constitution or applicable statutory or case law."

**INTRODUCTION**

In its order resolving the post-trial motions, the Court ruled that the damages found by the

first jury were not supported by the evidence at the first trial. Doc. 386, at 9. It offered Plaintiffs

the option of accepting remitted awards for the damage to their property—totaling $5,086,032—

that the Court "found reasonable and supported by the evidence." Order (Dec. 13, 2023), Doc. 386,

at 10. Plaintiffs rejected the remittiturs and then moved to amend their complaint to add a new

category of damages to the retrial. After the Court granted Plaintiffs' motion to amend, and following a status conference to discuss various open issues, the Court issued the Amended Scheduling Order setting the scope of the second trial. That order states that the following findings of the first jury will be binding in the second trial:

1. Defendants committed intentional, unlawful acts that caused a trespass onto Plaintiffs' property and amounted to a nuisance. Defendants were also negligent.
2. Defendants had control over the cause of the trespass and nuisance.
3. Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.
4. Defendants acted with specific intent to cause harm.[1]

Amended Scheduling Order at 2. The order further states that the second jury will decide the following issues:

1. Whether the nuisance, trespass, and/or negligence continued after the first trial;
2. The cost to repair Plaintiffs' property;[2]
3. The amount of damages for Plaintiffs' loss of use and enjoyment of their property because of the nuisance, up to the time of trial (such damages are capped by the value of the property);
4. Whether the trespass was accompanied by physical injury, pecuniary harm, or malicious, willful, or wanton conduct;
5. Whether Plaintiffs suffered mental anguish caused by the trespass, separate from their "loss of use" nuisance damages, and, if so, the amount of such damages. These mental anguish damages proximately caused by the trespass are not capped at the value of the property; and
6. The amount of punitive damages.

*Id.* at 2–3. The order also directed Defendants to submit a brief if they take the position that the scope of retrial violates their rights. *Id.* at 2 n.2.

---

[1]    That these findings are binding does not necessarily mean that the jury in the retrial should be told about them. Defendants therefore reserve the right to argue at the charge conference that the jury should not be instructed about particular findings made by the jury in the first trial.

[2]    Based on comments from the Court, Defendants understand that there will be a determination at the time of the second trial whether the nuisance should be considered permanent. If the nuisance is determined to be permanent, Plaintiffs' economic damages would be limited to lost market value.

The Court's "hybrid approach" violates Defendants' Seventh Amendment and due process rights for a number of reasons. First, some of the findings by the first jury that the Court has stated are binding in the second trial are too closely intertwined with issues related to compensatory damages that must be decided in the second trial. For example, although the second jury will be asked to determine independently "[w]hether the trespass was accompanied by … malicious, willful, or wanton conduct," the Court has indicated that the first jury's finding that "Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences" will be binding in the second trial. Similarly, although the second jury will have to decide independently whether Defendants' conduct was specifically directed at Plaintiffs in connection with Plaintiffs' new emotional-distress claim, the Court has indicated that the first jury's finding that "Defendants acted with specific intent to cause harm" will be binding in the second trial. In both cases, the standards are not the same, but the issues are too closely intertwined to be fairly tried by separate juries.

Second, the second jury will have to speculate as to the bases of some of the first jury's findings. For example, the second jury will be tasked with deciding whether the torts found by the first jury continued after the first trial, but there are no findings by the first jury detailing the evidentiary bases of its liability verdicts. Accordingly, the second jury will have to speculate about the basis of each of the first jury's verdicts in order to decide the issues before it. Similarly, the second jury will have to speculate about the basis of the first jury's trespass verdict in order to decide issues related to Plaintiffs' new emotional-distress claim.

Third, as contemplated by the Court's order, the second jury will decide the amount of punitive damages based on *different* conduct than the conduct that was considered by the first jury when deciding the issue of punitive liability. Specifically, the second jury will determine the

amount (if any) of punitive damages based, in part, on over a year of factual developments and conduct by Defendants that the first jury did not consider when returning a verdict on punitive liability. In other words, Defendants will never have the opportunity to argue against punitive liability for the set of facts and course of conduct for which punitive damages are to be assessed.

Fourth, as a general matter, the issues of punitive liability and amount are too closely intertwined to be tried by separate juries—as numerous courts have held. Contrary to the Court's previous ruling addressing this issue, the Eleventh Circuit has not endorsed having different juries decide these overlapping and interconnected issues.

Fifth, considered together, the following factors will lead to jury confusion and will deny Defendants a fair trial on Plaintiffs' claims: (i) the convoluted set of overlapping findings from the first trial and issues to be decided in the second trial; (ii) uncertainty about the specific bases of the first jury's verdict; (iii) the different time periods at issue in the two trials; (iv) the addition to the second trial of factual developments and conduct by Defendants that was not considered by the first jury; and (v) the interjection of an entirely new type of damages into the second trial.

In sum, the way that the Court has responded to Plaintiffs' litigation choices (rejecting the remittiturs and adding a brand new claim for emotional-distress damages) violates the Seventh Amendment and basic principles of due process. The procedural device of a partial new trial can be ordered only for a discrete set of issues that are truly independent of the other issues in the case. Because that is not possible in this situation, the Court should order a new trial on all issues. If, notwithstanding Defendants' arguments, the Court declines to grant a new trial on all issues, it should, at minimum, order a new trial that includes all issues related to punitive damages.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(a)(1), a district court may "grant a new trial on all or some of the issues[.]" The district court's authority to order a partial new trial, however, is

limited by the Seventh Amendment, which states that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. In the seminal case on this issue, the Supreme Court held that a partial new trial on damages only "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). A retrial limited to damages is improper when "the question of damages ... is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." *Id.* "Such a rule is dictated for the very practical reason that if separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent." *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978)[3]; *see also Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018) (explaining that under *Gasoline Products* a partial damages retrial is impermissible when the second jury "would be unable to determine the appropriate compensation without reexamining the first jury's liability determination").

Applying this standard, courts have held that the procedural device of a partial new trial should be the exception not the rule. *See Blue Bird Body*, 573 F.2d at 318 (holding that "there is no neat dividing line between the issue of liability and damages ... [a]nd, because of this vague dividing line between liability and damages, this Court has also cautioned that separate trials of liability and damages must be approached with trepidation") (citations omitted). In particular, many circuits have adopted strict standards regarding the appropriateness of a partial retrial limited

---

[3]    *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc) (adopting as binding precedent all published cases of the former Fifth Circuit decided on and before September 30, 1981).

to damages. *See, e.g., Mack Trucks, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1034 n.3 (5th Cir. 1975) ("A new trial on only some of the issues in a case may be ordered only if the issues to be retried are so distinct and separable from the other issues that trial of them alone clearly may be had without injustice or prejudice to either party. Where, as here, the issues are so closely related and originate in the same set of factual occurrences, a partial retrial is inappropriate.") (citation omitted); *Vidrine v. Kansas City S. Ry. Co.*, 466 F.2d 1217, 1224–26 (5th Cir. 1972) (when damages in a negligence action were inadequate, the appropriate remedy is a new trial on both liability and damages); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302–03 (7th Cir. 1995) (noting that the Seventh Circuit has repeatedly cautioned against separating issues at trial because "[t]he right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them … and not reexamined by another finder of fact").

"[A] court may properly award a partial new trial only when the issue affected by the error [necessitating a new trial] could have in no way influenced the verdict on those issues which will not be included in the new trial." *Williams v. Slade*, 431 F.2d 605, 608 (5th Cir. 1970). The Eleventh Circuit has further specified that "instructing a second jury to decide an issue that requires it to speculate about the basis of the first jury's verdict is a prohibited reexamination." *Searcy*, 902 F.3d at 1355 (citing *SEB SA v. Sunbeam Corp.*, 148 F. App'x 774, 797 (11th Cir. 2005)).

Use of a procedural device like a partial retrial also must pass muster under the Due Process Clause. "Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). And in particular, "the Due Process Clause prohibits a State from punishing an individual [with punitive damages] without first providing that individual with 'an opportunity to present every available defense.'" *Philip Morris USA v. Williams*, 549 U.S.

6

346, 353 (2007) (quoting *Lindsey*, 405 U.S. at 66).

## ARGUMENT

The Court offered Plaintiffs remitted damages for temporary harm to a part of their property that significantly exceeded what they paid for the entire parcel of land. Plaintiffs rejected that offer. And in a renewed effort to justify a windfall recovery, they then amended their complaint to add an entirely new category of damages to the retrial. Attempting to navigate the obstacles created by Plaintiffs' strategic choices while preserving parts of the first jury's verdict, the Court has ordered a "hybrid approach" for the second trial. Under that approach, the second jury will be required to resolve certain damages-only issues (cost to repair Plaintiffs' property; loss of use and enjoyment up to the first trial; and punitive damages up to the second trial) and both liability and damages for other issues (Plaintiffs' nuisance, trespass, and/or negligence claims after the date of the first trial and Plaintiffs' new claim for emotional-distress damages during both time periods). Amended Scheduling Order at 2–3; Tr. (Mar. 3, 2024), Doc. 409, at 21–22. This "hybrid approach" violates Defendants' Seventh Amendment and due process rights for multiple reasons.

**I.      The Partial Retrial Would Violate Defendants' Rights Because Questions Of Compensatory Damages—Particularly Those Associated With The New Emotional-Distress Damages—Are Interwoven With The First Jury's Liability Findings.**

For a partial retrial to be constitutional, "[s]eperability is the key." *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1130 (11th Cir. 2020). "[T]he judge must not divide issues between separate trials in such a way that the same issue is re-examined by different juries." *Rhone-Poulenc Rorer*, 51 F.3d at 1302–03; *Blue Bird Body*, 573 F.2d at 318 (rejecting plaintiff's request to bifurcate liability and damages in a private antitrust action, where liability required proof of injury, because "there is no neat dividing line between the issue of liability and damages … [a]nd, because of this vague dividing line between liability and damages, this Court has also cautioned that separate trials of liability and damages 'must be approached with trepidation'"). The Amended

Scheduling Order runs afoul of this constitutional command because, in deciding issues related to compensatory damages—particularly with respect to Plaintiffs' new emotional-distress damages—the second jury necessarily will have to reexamine findings of the first jury. That is so for at least three reasons.

A.    **Damages for emotional harms—both the emotional component of loss-of-use damages and the new emotional-distress damages—are interwoven with issues of liability.**

First, courts have held that emotional-distress damages are not appropriate for a partial retrial because "emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct." *Spence v. Bd. of Educ. Of Christina Sch. Dist.*, 806 F.2d 1198, 1201–02 (3d Cir. 1986) (citing *Carey v. Piphus*, 435 U.S. 247, 263 (1978)); *see also Lore v. City of Syracuse*, 670 F.3d 127, 180–82 (2d Cir. 2012) (holding that issues relating to emotional-distress damages were too intertwined with the claims for discrimination and retaliation to be separated out for a partial retrial); *Cole v. Foxmar, Inc.*, 2022 WL 842881, at *18 n.8 (D. Vt. Mar. 22, 2022) ("While the jury's award of emotional distress damages is not itself excessive, the issue of emotional damages is not 'sufficiently separate' from other damages 'to allow a partial new trial' as to [some type of damages] but not emotional distress damages.") (citation omitted), *aff'd* 2024 WL 74902 (2d Cir.), *cert. pet. filed*, No. 23-1098 (U.S. Apr. 5, 2024). Notably, in a case that involved both punitive and emotional-distress damages, the Third Circuit held that a retrial must include all issues—both liability and damages—because the damages issues required "present[ing] to the jury all the facts" of the alleged retaliation, such that "the liability and damages issues are not so easily separable" that they can be tried independently. *Spence*, 806 F.2d at 1201–02.

B.    **Aspects of the new emotional-distress damages are interwoven with the first jury's punitive-liability finding.**

Second, Plaintiffs' new request for emotional-distress damages creates a particularly acute

overlap with the "binding" findings of the first jury. In deciding whether to award such damages, the second jury will have to independently decide whether the trespass found by the first jury was "accompanied by physical injury, pecuniary harm, or malicious, willful, or wanton conduct." Amended Scheduling Order at 2–3. But the first jury's finding that "Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences" is binding in the retrial. *Id.* These standards are not the same—most obviously because the latter includes some states of mind (*e.g.*, "want of care") that the former does not—and the first jury's finding was not specific to the trespass claim, but there is obvious similarity in the language used and the concepts covered by these standards. These issues are not "so distinct and separable from" each other that they can fairly be tried by separate juries. *Mack Trucks*, 510 F.2d at 1034 n.3.

## C.  Aspects of the new emotional-distress damages are interwoven with the first jury's specific-intent-to-cause-harm finding.

Third, Georgia courts have made clear that the "malicious, willful, or wanton" exception to the impact rule for emotional-distress damages requires that the conduct at issue be directed at the plaintiff specifically.[4] *See, e.g.*, *Ryckeley v. Callaway*, 261 Ga. 828, 829 (1992) (emotional-distress damages were not available because malicious, willful, or wanton conduct that damaged a cemetery was not "directed at" decedents of people interred there); *Eley v. Fedee*, 362 Ga. App. 618, 622–23 (2022) (exception applies only "provided that [the conduct] is directed toward the

---

[4]     Under Georgia law, a plaintiff in a tort action may generally recover emotional-distress damages only if he or she satisfies the "impact rule." "Georgia's impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Eley v. Fedee*, 362 Ga. App. 618, 622 (2022). The Georgia courts have recognized three circumstances under which a plaintiff can recover emotional-distress damages without satisfying the impact rule, including when "the conduct complained of is malicious, willful, or wanton, … provided that it is directed toward the plaintiff." *Id.* at 623 (cleaned up).

plaintiff"); *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 n.2 (2000) (citing cases).

Thus, the second jury will need to decide whether any malicious, willful, or wanton conduct associated with the trespass was specifically directed toward Plaintiffs. But the first jury's determination that "Defendants acted with specific intent to cause harm" is binding in the retrial. Amended Scheduling Order at 2–3. Again, while these standards are not the same, they use similar language and there is obvious conceptual overlap. For example, the Court has observed that "[t]he evidence does not support a finding that the Defendants subjectively set out to intentionally cause harm to Plaintiffs' property. Nor does the evidence demonstrate any intent to cause the Plaintiffs physical injury or emotional harm," which the Court noted "should not be ignored in evaluating where on the 'specific intent to cause harm' continuum [Defendants'] conduct falls." Order (Oct. 23, 2023) Doc. 371, at 37–38. The second jury cannot decide whether any malicious, willful, or wanton conduct associated with the trespass was specifically directed toward Plaintiffs without reexamining the evidence that this Court deemed insufficient to support a finding that Defendants did ***not*** set about to cause harm to Plaintiffs or their property. Indeed, if the Court does go forward with a "hybrid" trial despite Defendants' arguments, fundamental fairness dictates that its holding on the absence of evidence of a deliberate intent to cause physical injury or emotional harm should be just as binding as the other findings that the Court has determined will be binding.

## II.     The Partial Retrial Would Impermissibly Risk Inconsistent Verdicts By Requiring The Second Jury To Speculate About The Basis Of The First Jury's Verdict.

The Court's "hybrid" approach also violates constitutional requirements because it would require the second jury to speculate about the conduct underlying the first jury's verdict. It is well established that "instructing a second jury to decide an issue that requires it to speculate about the basis of the first jury's verdict is a prohibited reexamination." *Searcy*, 902 F.3d at 1355; *see also*, *e.g.*, *SEB*, 148 F. App'x at 797 (district court could not "grant a new trial limited to additional

damages … based on the same, underlying conduct as the existing [jury] award" because "we have no way of knowing from the jury's verdict how and in what ways the jury found [the defendant] liable"). Yet that is precisely what the proposed partial retrial would do in at least three respects.

First, the second jury would be asked to determine "[w]hether the nuisance, trespass, and/or negligence continued after the first trial" and, if so, the appropriate amount of damages to compensate Plaintiffs. Amended Scheduling Order at 2. But there are no findings by the first jury that would inform the second jury of the specific evidentiary bases of the first jury's verdicts on these issues. Nor is there anything in the first jury's verdict that would inform the second jury of the specific criteria that the first jury used when deciding whether there was a nuisance, a trespass, or negligence. That leaves the second jury with no guidance on how to consistently decide whether the nuisance, trespass, and negligence found by the first jury have ended or are continuing. For example, if the water turbidity following a rain event has decreased by 75% since the first trial, is the trespass found by the first jury continuing or has it ended? If the appearance of the lake has significantly improved (and now resembles other bodies of water in the area), has the nuisance ended, or is it continuing as long as there is some discoloration following a significant rain event? If, following the first trial, Defendants have invested significant money in a new plan to prevent harm to Plaintiffs' property and have worked to implement and maintain new protective measures, has the negligence ended or does it continue so long as Defendants have not prevented all runoff onto the property? In general, there is a very real risk that the second jury will impermissibly find that a tort is continuing even though current conditions no longer satisfy the criteria that the first jury applied when deciding whether that tort was present as of the date of the first trial.

Second, in deciding whether Plaintiffs are entitled to the new emotional-distress damages they are claiming, the second jury would have to determine "[w]hether the trespass [found by the

first jury] was accompanied by physical injury, pecuniary harm, or malicious, willful, or wanton conduct." Amended Scheduling Order at 3. But there is no finding by the first jury describing the specific facts that formed the basis for its finding of a trespass. The second jury would thus have to speculate as to the basis of the first jury's verdict in order to determine whether the conditions and conduct underlying that finding of trespass were "accompanied by physical injury, pecuniary harm, or malicious, willful, or wanton conduct." *Id.*

Third, the second jury would have to speculate about the basis of the first jury's punitive-liability verdict. The second jury will be told that it may award punitive damages, but will have no guidance about what specific conduct the first jury found to warrant punishment and what punishable mental state the first jury determined each Defendant had. The first jury made no findings about the specific conduct it thought warranted punishment. Was it not immediately ceasing construction after Plaintiffs complained about the run-off? Was it going forward with the BMPs despite their inadequacy? Was it not leaving more personnel on site after completing construction? Was it a combination of more than one of these alleged deficiencies? There is no way to know. Moreover, the verdict form does not specify which of the disjunctive requirements for punitive liability—willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences—the first jury found to be present in this case. In fact, the Court rejected Defendants' request for a post-verdict interrogatory that would have done that. Tr. (Apr. 28, 2023) 17-19. Because the second jury can only speculate about the basis of the first jury's verdict, it necessarily will have to reexamine the findings of the first jury with respect to Defendants' conduct.[5]

---

[5]    The Court's order on the motions for reconsideration effectively acknowledges this point. The Court rejected the "argument that a second jury cannot determine the amount of punitive

We could not find any cases imposing such a hybrid retrial—in which a second jury was bound to the verdict of the first jury for one time period but was asked to determine whether that verdict continued to apply in a new time period. We also could not find any precedent for asking a second jury to assess the availability of an entirely new type of damages (with new factual and legal prerequisites) for one of the sources of liability found by a prior jury. But in the most analogous case we could find, the Eleventh Circuit held that it violates the Seventh Amendment to conduct a limited retrial in which the second jury must speculate as to the basis of the first jury's findings.[6] *SEB*, 148 F. App'x at 796–97. In *SEB*, the plaintiff sought a partial new trial limited to the question whether it should receive additional damages based on evidence that was improperly excluded during the first trial. *Id.* at 796–97. The Eleventh Circuit held that such a limited trial would be improper because "we have no way of knowing from the jury's verdict how and in what ways the jury found [the defendant] liable" and the first jury "gave no indication of its method of calculating damages," which meant that, when asked whether Plaintiff should receive additional damages based on the new evidence, the second jury would have to "speculate as to the [first] jury's conclusions." *Id.* at 797 ("[w]e can speculate as to the [first] jury's conclusions based on the

---

damages … without understanding the precise basis the first jury had for finding that Plaintiffs proved 'by clear and convincing evidence that a Defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.'" Order (Dec. 13, 2023), Doc. 386, at 14. The Court reasoned that, "[d]uring the new trial, the new jury can be instructed that punitive damages are authorized in this action, and the new trial will necessarily include evidence about each Defendant's conduct in creating and maintaining the nuisance. … Such evidence should be sufficient for a jury to determine where on the reprehensibility scale … each Defendant's conduct falls." *Id.* at 14–15. But the first jury already did that in connection with its punitive-liability and specific-intent-to-cause-harm findings, albeit without saying what it found. Consequently, the second jury will have to re-examine those findings when making its reprehensibility determination.

[6]     Although *SEB* is unpublished, and thus not binding precedent under 11th Circuit Rule 36-2, *SEB* was favorably cited and quoted on this point in *Searcy*, which is a published opinion. *See* 902 F.3d at 1355; *see also id.* n.5 (noting that "few cases" "address the Reexamination Clause").

damages evidence presented by [the plaintiff during the first trial], but we cannot know for sure"). Accordingly, the issue of additional damages based on the new evidence was not "separate and distinct" from the issue of the damages awarded by the first jury. *Id.* at 797–98 n.14.

So too here. The second jury cannot determine, without speculation, whether the torts found by the jury in the first trial have ended or are continuing because the first jury "gave no indication of its method of [arriving at those verdicts]." *SEB*, 148 F. App'x at 796–97. Nor can the second jury determine, without speculation, whether the trespass found by the first jury was accompanied by physical injury, pecuniary harm, or malicious, willful, or wanton conduct because the first jury "gave no indication of its method of [arriving at its finding of trespass]." *Id.* And finally, the second jury cannot, without speculation, determine the amount of damages appropriate to punish and deter the conduct that the first jury found to warrant punitive damages because again the first jury "gave no indication of its method of [arriving at the punitive-liability verdict]." *Id.*

### III.    The Partial Retrial Would Violate Defendants' Rights Because The Second Jury Would Be Asked To Award Punitive Damages Based In Part On Events And Conduct That Were Not Considered By The First Jury.

The retrial contemplated by the Amended Scheduling Order will cover not only the events and conduct at issue in the first trial, but also new factual developments and conduct between the first and the second trials as well as new categories of evidence spanning both time periods related to the new emotional-distress damages. Defendants believe that evidence of events after the first trial will be favorable to them, but Plaintiffs have made clear their intention to argue that subsequent events justify a higher punitive award. At the end of trial, the second jury will be tasked with deciding the appropriate amount of punitive damages to punish and deter Defendants' conduct according to the proof during the second trial. And any subsequent review of the second jury's punitive award for excessiveness will consider the full scope of Defendants' conduct when analyzing the reprehensibility guidepost and Plaintiffs' compensatory damages, which will cover

the time period up to the second trial, when analyzing the ratio guidepost.

The second jury will not, however, be asked to decide whether the conduct proved during the second trial satisfies the criteria for punitive liability. That is because, according to the Amended Scheduling Order, the first jury's finding that "Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences" will be binding in the second trial. The fundamental problem is that the "actions" considered by the first jury in reaching that liability finding are not the same as the conduct that the second jury will consider when setting an amount of punitive damages. On the contrary, under this plan, punitive liability would be determined with reference to events and actions during one time period while punitive damages would be assessed based on events and actions over a different, broader, time period.

This means that there would be no jury verdict finding defendants liable for punitive damages based on the same scope of conduct and events for which any punitive award would be imposed. That is not a fair or just use of the device of a partial retrial—and there is no precedent for it of which Defendants are aware. Defendants have a right to a jury verdict on the issue of punitive liability that takes into account the entire scope of their conduct and all of the circumstances for which punitive damages are potentially being imposed. *Cf. Fury Imports, Inc. v. Shakespeare Co.*, 554 F.2d 1376, 1389 (5th Cir. 1977) ("[A]n award of punitive damages should rest on the jury's assessment of all the evidence in the case."); *Spence*, 806 F.2d at 1202 ("In order to prove that the defendants' conduct warranted punitive damages, plaintiff would have to present to the jury all the facts [underlying] defendants' [conduct]."). And the Supreme Court has clearly stated that "the Due Process Clause prohibits a State from punishing an individual without first providing that individual with 'an opportunity to present every available defense.'" *Williams*, 549

U.S. at 353 (quoting *Lindsey*, 405 U.S. at 66). The partial retrial here would violate these constitutional precepts.

A similar problem arises with respect to the applicability of Georgia's statutory cap on punitive damages. According to the Amended Scheduling Order, the first jury's finding that Defendants acted with a specific intent to cause harm will be binding. That means that Defendants would be denied the protections of Georgia's statutory cap on punitive damages for the punitive award returned by the second jury. But that punitive award will be based on more than a year of factual developments and conduct that were not before the first jury when it decided the question of specific intent to cause harm. In other words, Defendants would be denied the opportunity to argue that the jury should not find a specific intent to cause harm based on the full scope of events and the entire course of their conduct that will be before the jury imposing punitive damages. Again, Defendants have a right to a jury verdict on this critical issue that takes into account the full record on which punitive damages will be imposed.

We have not found any case law addressing a situation like this in which one jury's verdict on punitive liability was based on a review of evidence related to one time period yet was binding on a second jury that then awarded punitive damages based on a different time period, including factual developments and conduct that were not considered by the first jury. To our knowledge, this would be the first time that the scope of the conduct for which punitive damages were being assessed in a retrial would be different from the scope of the conduct that was found to warrant punitive damages in an initial trial.

**IV.     The Partial Retrial Would Violate Defendants' Rights Because The Issues Of Punitive Liability And Amount Are Inextricably Intertwined.**

The lack of precedent for the Court's "hybrid" approach can be at least partially explained by the fact that courts regularly require a retrial of both punitive liability and amount because those

issues are so closely intertwined that they generally must be decided by the same jury.[7] Liability for punitive damages requires a jury to examine the defendants' conduct to determine whether it amounts to "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. Setting an amount of punitive damages requires the jury to examine the same conduct and to analyze it using the same type of metrics: "[T]he most important indicium of the reasonableness of a punitive damages award [is] the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). In broad terms, deciding whether punitive damages are warranted and setting a particular amount of punitive damages both require the jury to analyze the same set of facts and to decide the same question: "how bad" was the defendant's conduct? Was it bad enough to warrant punishment? If so, how much punishment is appropriate given how bad the conduct was? These determinations are not "so distinct and separable from" each other that they can be tried separately by separate juries "without injustice." *Gasoline Prods.*, 283 U.S. at 500. On the contrary, punitive liability and punitive amount are "issues involving overlapping legal and factual questions," which makes a retrial on one without the other a violation of constitutional guarantees. *Blue Bird Body*, 573 F.2d at 318.

The Court previously rejected Defendants' argument that including the amount of punitive

---

[7]    In many cases, courts have held that punitive damages (both liability and amount) are too closely intertwined with the underlying tort to be tried separately. *See, e.g., Fury Imports*, 554 F.2d at 1387–88, 1389; *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1388 (8th Cir. 1983) (en banc); *Spence*, 806 F.2d at 1201–02; *Atl. Coast Line R.R. v. Bennett*, 251 F.2d 934, 938–39 (4th Cir. 1958); *DeForest v. Vlasic Foods, Inc.*, 156 F.3d 1236 (table), 1998 WL 483220, at *2 (9th Cir. 1998). Other courts have determined that, while punitive damages are separable from tort liability, in a retrial a second jury must decide both whether a plaintiff is ***entitled to*** punitive damages and the ***amount*** of punitive damages. *See, e.g., Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 599–600 (4th Cir. 1996); *Zender v. Vlasic Foods, Inc.*, 91 F.3d 158 (table), 1996 WL 406145, at *5 (9th Cir. 1996).

damages but not punitive liability in a partial retrial violates their Seventh Amendment rights, citing the Eleventh Circuit's decision in *Searcy v. R.J. Reynolds Tobacco Co.,* 902 F.3d 1342 (11th Cir. 2018). Doc. 386, at 13–15. In fact, *Searcy* supports Defendants' position here. That "*Engle* progeny" case was part of a class action in which a jury in an issues-class trial made certain factual findings on behalf of all class members that then were binding in subsequent individual trials. *See Searcy,* 902 F.3d at 1346–48. In rejecting the defendants' constitutional challenge to this process, the court stated that "the Seventh Amendment could be violated when a second jury is called on to decide punitive damages arising out of a verdict of liability rendered by a previous jury," but "[i]n this case … we find no violation" because the second jury decided both punitive liability and amount of punitive damages. *Id.* at 1357–58. Specifically, the second jury was told that "the [*Engle*] findings established only what they expressly state" and was instructed "that punitive damages were warranted only if the jury found by clear and convincing evidence" that "Defendant['s] conduct in the case before it warranted punitive damages."[8] *Id.* (quoting standard punitive-liability jury instruction from the second, individual trial). Here, in contrast, the Amended Scheduling Order contemplates treating punitive liability as having been conclusively established by the first jury's verdict. *Searcy* thus undermines rather than supports the partial trial contemplated by the Amended Scheduling Order.

Because the issues of liability for, and amount of, punitive damages significantly overlap—factually and legally—they cannot be tried by separate juries without injustice. *See Blue Bird Body*, 573 F.2d at 318 ("[T]he Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact."). Moreover, in this case in particular,

---

[8]    Notably, the *Engle* findings did *not* include any finding that the requirements for punitive liability were satisfied. *See Searcy*, 902 F.3d at 1346 (listing the eight *Engle* findings).

trying punitive liability separately from amount would violate Defendants' rights because the second jury, in setting the amount of punitive damages, would consider over a year of new factual developments and new conduct that was not before the first jury. The verdicts on punitive liability and punitive amount (and the issue of specific intent to cause harm) should be based on the same course of conduct and the same set of events and therefore should be made by the same jury.

**V.      The Partial Retrial Contemplated By The Amended Scheduling Order Would Violate Defendants' Rights Because It Will Lead To Jury Confusion.**

For each of the reasons discussed above, the partial new trial contemplated by the Amended Scheduling Order would violate Defendants' rights. Moreover, when these issues are considered together, the result is a convoluted evidentiary, factual, and legal landscape that is certain to cause confusion for a jury of laypeople. As the old Fifth Circuit stated, a partial new trial is impermissible if the combination of binding results from the first trial and issues to be decided in the second trial "would lead to [the] confusion and uncertainty the Court in *Gasoline Products* was concerned with and which could result in the denial of a fair trial." *Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479, 481–82 (5th Cir. 1985) (cleaned up); *see also, e.g.*, *Blue Bird Body*, 573 F.2d at 318 ("[I]f separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent."). That plainly is the case here, even looking at the new trial at a high level of generality.

This retrial would involve two time periods. The second jury would be bound by the first jury's verdict on liability for some claims as they relate to the first time period, but would be charged with independently applying those aspects of the first jury's verdict to the second time period. But the second jury would not have any guidance as to the specific evidentiary bases of the first jury's liability verdicts or the criteria that the first jury employed. And for one of those claims, the second jury also would have to independently look at the evidence related to both time periods

and apply a new legal framework to determine questions related to a new category of damages. Meanwhile, the second jury would be bound by the first jury's determination—based on a record that included only the first time period—that "Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences," but would also be asked to independently look at the same evidence as the first jury as well as new evidence regarding the second time period to make its own independent determination about how much money (if any) is necessary to punish and deter the entire course of conduct. Moreover, on several issues, the second jury would be bound by aspects of the first jury's verdict that are very closely related to the standards that the second jury is supposed to be applying independently when deciding certain issues for itself.

Such a retrial poses serious risks of jury confusion and uncertainty as well as inconsistent verdicts based on two juries' assessment of overlapping evidence using overlapping legal standards. This is not a situation in which one set of issues from a trial is so clearly distinct and separable that a retrial on only that set of issues can be conducted cleanly and fairly. On the contrary, this retrial would result in an interconnected, convoluted mishmash of evidence and issues across two trials, two time periods, and two complaints. Indeed, the Court's description of Georgia law on emotional-distress damages in the context of property torts is apt here as well: This "hybrid" retrial will "require[] a double-take by even the most sophisticated lawyer. Asking a lay jury to make [these] distinction[s] [would] be a bridge too far." Order, Doc. 371, at 27. This contemplated "hybrid" retrial cannot be conducted without injustice.

## CONCLUSION

The Court should order a new trial on all issues or, failing that, a retrial that includes all issues related to punitive damages.

Respectfully submitted this 24th day of April, 2024.

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ Charles E. Peeler*
Charles E. Peeler, Georgia Bar No. 570399
Jill C. Kuhn, Georgia Bar No. 648990
Mark L. Bailey, Georgia Bar No. 702912
600 Peachtree Street, NE, Suite 3000
Atlanta, Georgia 30308
Telephone:    (404) 885-3000
Facsimile:    (404) 885-3900
charles.peeler@troutman.com
jill.kuhn@troutman.com
mark.bailey@troutman.com

**SMITH, CURRIE & HANCOCK LLP**

*/s/ Charles E. Rogers*
Charles E. Rogers, Georgia Bar No. 612175
Steven J. Stuart, Georgia Bar No. 471741
Sarah K. Carpenter, *Pro Hac Vice*
Suite 2700, Marquis One Tower
245 Peachtree Center Avenue N.E.
Atlanta, Georgia 30303-1227
Telephone: 404-521-3800
Facsimile: 404-688-0671
cerogers@smithcurrie.com
sjstuart@smithcurrie.com
skcarpenter@smithcurrie.com

*Attorneys for Defendants Infrastructure and Energy Alternatives, Inc. and IEA Constructors, LLC*

**KING & SPALDING LLP**

*/s/ Andrew T. Bayman*
Andrew T. Bayman,
Georgia Bar No. 043342
1180 Peachtree Street N.E., Suite 1600
Atlanta, GA 30309
(404) 572-3583

**COZEN O'CONNOR**
Alycen A. Moss, Georgia Bar No. 002598
Danielle C. Le Jeune,
Georgia Bar No. 134222
The Promenade, Suite 400
1230 Peachtree Street N.E.
Atlanta, GA 30309
Telephone: (404) 572-2052
Facsimile: (877) 728-1396
Email: amoss@cozen.com
dlejeune@cozen.com

*Attorneys for Defendants Silicon Ranch Corporation and SR Lumpkin, LLC*

**N THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| H & L FARMS, LLC; | ) | |
| SHAUN HARRIS and AMIE HARRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| SILICON RANCH CORPORATION; | ) | NO. 4:21-CV-00134-CDL |
| SR LUMPKIN, LLC; INFRASTRUCTURE | ) | |
| AND ENERGY ALTERNATIVES, INC.; | ) | |
| IEA CONSTRUCTORS, LLC; and, | ) | |
| WESTWOOD PROFESSIONAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2024, I electronically filed the foregoing ***Defendants' Brief in Support of Their Position that the Scope of the Partial Retrial Violates Their Constitutional Rights*** with the Clerk of Court using the CM/ECF system, which automatically send e-mail notification of such filing to any attorneys of record.

*/s/ Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399