IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| H & L FARMS, LLC; | * | |
| SHAUN HARRIS and AMIE HARRIS, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | CIVIL ACTION FILE |
| v. | * | |
| | * | NO. 4:21-CV-00134-CDL |
| SILICON RANCH CORPORATION; | * | |
| SR LUMPKIN, LLC; INFRASTRUCTURE | * | |
| AND ENERGY ALTERNATIVES, INC.; | * | |
| IEA CONSTRUCTORS, LLC; and, | * | |
| WESTWOOD PROFESSIONAL | * | |
| SERVICES, INC., | * | |
| | * | |
| Defendants. | * | |

## Plaintiffs' Third Status Report to the Court

Sadly, nothing has changed in terms of the ongoing pollution by Defendants of Plaintiffs' property. Since the Plaintiffs' last report (Second Status Report and Supplement thereto – Doc. 439-1 and Doc. 447) there have been no heavy rains. But just as has occurred every time there was any significant rain during the last 3 ½ years, whenever it rains muddy turbid water filled with silt and sediment washes down from the Silicon Ranch site onto Plaintiffs' property and into the stream, wetlands, and lake there.

Here is one example:

At 10:30 a.m. on December 9, 2024, Mr. Harris, anticipating the coming rain, filmed this video:

1

https://www.dropbox.com/scl/fi/ncapdk883xuy3knibrrmw/IMG_7944.MOV.-12-9-24-10_30am.mov?rlkey=xxv83oheei8c9u42l1axvywut&st=iai3fpfo&dl=0

The spring fed water in the stream on the Harris property flowed clear.

Then the rain came, totaling no more than 1.5 inches at the Harris office on their property, which is 1.4 miles 'as a crow flies' from the Plaintiffs' property line with Silicon Ranch Corporation.

At 4:30 p.m. on December 9, 2024, Mr. Harris filmed this video:

https://www.dropbox.com/scl/fi/e8vqzqz7z932ltrvkx9vs/IMG_7951.MOV-12-9-24-4_30-pm.mov?rlkey=wgj4hemavineqlbfj1bpdxah6&st=bn3gszay&dl=0

Already, the stream was filled with muddy water.

After the 1.5 inch rain was over, at 8:00 a.m. on December 10, 2024, Mr. Harris filmed this video:

https://www.dropbox.com/scl/fi/96boxll3x3lhst1k7iwl5/IMG_3248.mov-12-10-24-8_00-am.mov?rlkey=7sxty2fvha4f4namanqjhqe5e&st=bzwcpkwy&dl=0

A side by side photographic comparison:

December 9, 2024 8:00 a.m.:                    December 10, 2024 8:00 a.m.:



That was after only 1.5" of rain during the day and night of December 9, 2024.

By 3:45 p.m. on December 10, 2024, the lake – which had been relatively clear due to the absence of any significant rain since November 20, 2024 when 1.5 inches of rain fell—was turning to mud:



The same thing happened again on December 29, 2024, after a rain of 1.25 inches:



There is no doubt about the source of the pollution – this is a video of the stream as it empties out into Plaintiffs' lake, taken on December 29, 2024, after just 1.25 inches of rain:

https://www.dropbox.com/scl/fi/fiu7ihd4g3vu18k860uyv/MAX_0017.MP4?rlkey=k5m4ro3cevnyubmdxajyxrahg&st=25at396u&dl=0

Even a quarter inch of rain, as occurred on November 6, 2024 – the first rain in 38 days - is enough to turn the stream turbid:



Pollution from the Silicon Ranch site continues to flow through the stream to Plaintiffs' lake and discharge into Plaintiffs' lake. From photographs taken on November 6, 2024:





The most important part of this Court's Injunction Order (Doc. 318) is the requirement that no more sediment be discharged from the Silicon Ranch site post-development than was discharged pre-development:

> THE COURT: But it is a violation of the Court's Injunction Order ultimately if it's not demonstrated that the flow of sediment after the completion of your engineering fixes is not -- is substantially similar to the flow of sediment before you began building the project.

Doc. 443 (10/15/24 Hg. Tr.) at 15/17-21.[1]  Clearly, Defendants have not complied with the Injunction Order.

The result of Defendants' non-compliance has been severe.  Plaintiffs' sedimentation expert Craig Zeller, an Environmental Engineer employed with the Atlanta Office of the United States Environmental Protection Agency (EPA), conducted a Bathymetric Survey and Sediment Core Study of the subject lake and of the lower reaches of the stream leading to that lake in November 2021, again in November 2023, and again in December 2024.

In November 2021 (eight months after the damage started) Mr. Zeller found that:

- 355 cubic yards of sediment had been deposited in that lower part of the stream during the prior year
- 655 cubic yards of sediment had been deposited in the upper 500' of the lake during the prior year.

By December 2024, after 3 ½ years of continuing pollution, those numbers had increased dramatically.  Mr. Zeller found that the following amounts of sediment "can be attributed to the upgradient LDA [land disturbance activity] at the Lumpkin Solar facility":

---

[1] The evidence at trial was that pre-development no sediment was discharged from the tract that became the Silicon Ranch development.  That evidence remains undisputed; in fact, Defendants admit they have not come up with any other pre-development baseline for preexisting sediment discharge. *See e.g.,* Doc. 443 (10/15/24 Hg. Tr.) at 16/1-17/23, 47/15-48/2.

- 1088 cubic yards of sediment in "the lower 200 feet of source stream"
- 2,479 cubic yards of sediment in "the northern headwaters" of the lake

To state the obvious, that is a dramatic escalation in the pollution by Defendants since November 2021: from 355 cubic yards of sediment to 1,088 cubic yards in the lower part of the stream; from 655 cubic yards of sediment to 2,479 cubic yards in the upper part of the lake. That is three times as much sediment added to just the lower part of the stream, and 3.8 times as much sediment added to the upper part of the lake.

Defendants have not even complied with the requirement of the Injunction Order that Defendants obtain a Notice of Termination (NOT) from EPD by September 2024 – a deadline that was extended over Plaintiffs' objection until December 6, 2024. *Obviously, that requirement is far less important to Plaintiffs, because whatever EPD may someday say does not equal the end of pollution of Plaintiffs' property.* On December 5, 2024, Defendants admitted they would not meet that December 6 deadline, *and characteristically blamed someone else*, this time the EPD. Now, Defendants had implored the Special Master to give them another extension – for four months, until April 1, 2025, which not coincidentally would be the week before the scheduled second trial.

8

Notably, Defendants failed to comply with the NOT part of the Injunction Order by the extended deadline of December 6, despite assuring this Court at the Status Conference on October 15, 2024 that Defendants would do so. Doc. 443 (10/15/24 Hg. Tr.) at 23/11-15.[2]

The Defendants' continued failure to meet even the NOT part of the Injunction Order is proved by the Defendants' most recent monthly status report to the Special Master. The Injunction Order requires that discharges from the Silicon Ranch site are in "compliance with the General Permit's limits on allowable turbidity." Doc. 318 at 4, ¶ 1.f. However, the Defendants' most recent monthly status report shows that 20 of 21 sampled discharges at the SRC site in the month of December were above the permissible 50 NTU limit. In fact, some of those discharges are still 3 or 4 times the permissible limit (discharges of 202 NTU and 160 NTU on December 10, discharges of 141 NTU and 139 NTU on December 11, and discharges of 143 and 137 NTU on December 30).

---

[2] Defendants have also failed to comply with another requirement of both the law – which requires that Defendants stop the damage – and this Court's Injunction Order: there is zero chance Defendants will reduce the amount of runoff, turbid or not, to pre-development levels. *See e.g.,* Doc. 443 (10/15/24 Hg. Tr.) at 32/9-33/3. Defendants also admit they've done nothing to remove sediment from the SRC site that remains on the property of SRC so that it does not also run off on to Plaintiffs' property – which it obviously will do. *See e.g.,* Doc. 443 (10/15/24 Hg. Tr.) at 36/1-12.

Defendants' continued flippant attitude is demonstrated not merely by Defendants blaming EPD for their own failure to meet Defendants' own extended December 6, 2024 deadline.  Defendants *also deny* that the Injunction Order even requires them to discharge no more sediment post-development than pre-development.  *See e.g.,* Doc. 443 (10/15/24 Hg. Tr.) at 36/17-44/21.

Also, Defendants, who have frequently blamed too much rain for the damage they have done to Plaintiffs' property, now blame the absence of rain during the summer for the failure of grass and vegetation to grow on the Silicon Ranch site.  Obviously, in southwest Georgia if one is actually intent upon making any kind of vegetation grow, watering is necessary. Doc. 443 (10/15/24 Hg. Tr.) at 26/22-29/4. Characteristically, for that failure, Defendants blame the absence of a water supply.  *Id*. at 27/13-14 (Mr. Herford, "it's hard for us to find additional water supply.")  To state the obvious, ***the solution*** to both the discharge of sediment on to Plaintiffs' property and the supposed inadequate supply of water to irrigate the vegetation Defendants are required to make grow ***is the same thing***:  replicate what Defendants have made their real 'sediment pond' – Plaintiffs' 21 acre lake – ***on*** the Silicon Ranch site.   That would stop the pollution and provide the water.  To do that, however, would require that Silicon Ranch Corporation remove solar panels.  That would cut in to SRC's profits, and perhaps put them in violation of their commitment to provide a certain amount of electricity to Walton EMC.

For SRC, everything is profit centered. On December 6, 2024, SRC admitted it has done nothing to comply with the Court's Injunction Order, other than to tell IEA to fix things, and has spent no money on attempting to stop the pollution or comply with the Injunction Order. *See* Exh. 1 hereto – SRC's "Responses and Objections to Plaintiffs Fourth Interrogatories."

Rather than take control of its solar facility or take responsibility for the damage its project has done to Plaintiffs, SRC continues to try to disassociate itself from the development of the Lumpkin Solar Facility. This was Plaintiffs' Exhibit 45 at the first trial:



This is the sign that appears at the same location, now:



SRC's name and logo *has been removed* from the signage.

As for IEA, it and its counsel have now filed a "Notice of Apportionment of Nonparty Fault" claiming that Westwood is to blame (Doc. 452, 12/9/24), despite the fact the jury absolved Westwood of liability and rejected the accusations against Westwood made by SRC and IEA, "which judgment" this Court ordered "remains intact." Doc. 403.

Defendants' flippancy seems to know no limits. One thing they have done is to grade a deer-hunting field on the SRC property, adjacent to Plaintiffs' property, while taking no precautions at all to prevent erosion from flowing into the stream that enters Plaintiffs' property and flows into Plaintiffs' lake – not even erosion

fencing. This video is from December 29, 2024 – again, when the rain was only 1.25 inches:

https://www.dropbox.com/scl/fi/czfmvv2vlfwh8dyr7lwc5/MAX_0016.MP4?rlkey=kb4av9qxke7pqnfhx4yl8alqg&st=ba3c4vin&dl=0

Respectfully submitted this 6th day of January 2025.

/s/ James E. Butler, Jr.
JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 877765
dan@butlerprather.com
CAROLINE E. WALKER
Georgia Bar No. 511349
caroline@butlerprather.com
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
T: (706) 322-1990 F: (706) 323-2962

C. FREDERICK OVERBY
Georgia Bar No. 555845
Fredoverby@overbylaw.com
OVERBY LAW OFFICE, P.C.
Post Office Box 1975
Columbus, Ga 31902
T: (706) 327-0300 F: (706) 320-0053

C. COOPER KNOWLES
Georgia Bar No. 426699
cknowles@cckfirm.com

LAW OFFICE OF C. COOPER
KNOWLES, LLC
750 Hammond Drive
Building 12, Suite 200
Sandy Springs, GA 30328
T: (770) 668-2081

Michael B. Terry
Georgia Bar No. 702582
terry@bmelaw.com
Frank M. Lowrey
Georgia Bar No. 410310
lowrey@bmelaw.com
BONDURANT MIXSON & ELMORE
1201 W. Peachtree Street NW, Suite 3900
Atlanta, GA 30309

***Attorneys for Plaintiffs***

## CERTFICATE OF SERVICE

I hereby certify that on January 6, 2025, I electronically filed the foregoing Status Report with the Clerk of Court using the Court's CM/ECF system, which will automatically send a notice of electronic filing to the attorneys of record.

This 6th day of January, 2025.

/s/ *James E. Butler, Jr.*
JAMES E. BUTLER, JR.
Georgia Bar No. 099625